**FILED**

OCT 0 8 2003

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  HAROLD J. ROSENTHAL (SBN 68380)
   THERESA A. GIBBONS (SBN 191633)
2  ROSENTHAL & GIBBONS
   523 Octavia Street
3  San Francisco, CA 94102
   Telephone: (415) 431-3472
4
   DENNIS P. RIORDAN (SBN 69320)
5  DONALD M. HORGAN (SBN 121547)
   RIORDAN & HORGAN
6  523 Octavia Street
   San Francisco, CA 94102
7  Telephone: (415) 431-3472

8  Attorneys for Defendant
   PAVEL LAZARENKO
9

10

11                **UNITED STATES DISTRICT COURT**

12           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13

14  UNITED STATES OF AMERICA,          )    No.    CR-00-0284 MJJ
                                       )
15            Plaintiff,               )
                                       )
16                                     )    **DEFENDANT'S OBJECTIONS**
              vs.                      )    **TO UKRAINIAN DEPOSITIONS**
17                                     )    **OF MAY-JUNE 2003**
                                       )
18  PAVEL IVANOVICH LAZARENKO,         )
                                       )
19            Defendant.               )
                                       )
20  _____)

21  **I.    OBJECTION DUE TO IMPROPER USE OF GPOU AS CENTRAL AUTHORITY**

22        Because the depositions were carried out at the Prosecutor General's Office, the testimony

23  taken must be excluded. While this may seem like an extreme remedy, it flows from the

24  requirement that the deposition be taken "according to law." Rule 15 expressly incorporates the

25  requirements of Rule 28 and 31 of the Federal Rules of Criminal Procedure. As stated in Rule

26  15(e): "**Manner of Taking**. Unless these rules or a court order provides otherwise, a deposition

27  must be taken and filed in the same manner as a deposition in a civil action, except that:

28  In so doing, Rule 15 incorporates Rules 28 and 31 of the Federal Rules of Civil Procedure." See

                                      1

ORIGINAL

1 | United States v. Salim, 855 F.2d 944, 950 (9th Cir. 1988).

2 | Rule 28(b) provides:

3 | (b) In Foreign Countries. Depositions may be taken in a foreign country (1) pursuant to any applicable treaty or convention, or (2)
4 | pursuant to a letter of request (whether or not captioned a letter rogatory), or (3) on notice before a person authorized to administer
5 | oaths in the place where the examination is held, either by the law thereof or by the law of the United States, or (4) before a person
6 | commissioned by the court, and a person so commissioned shall have the power by virtue of the commission to administer any
7 | necessary oath and take testimony. A commission or a letter of request shall be issued on application and notice and on terms that
8 | are just and appropriate. It is not requisite to the issuance of a commission or a letter of request that the taking of the deposition
9 | in any other manner is impracticable or inconvenient; and both a commission and a letter of request may be issued in proper cases.
10 | A notice or commission may designate the person before whom the deposition is to be taken either by name or descriptive title. A
11 | letter of request may be addressed "To the Appropriate Authority in [here name the country]." When a letter of request or any other
12 | device is used pursuant to any applicable treaty or convention, it shall be captioned in the form prescribed by that treaty or
13 | convention. Evidence obtained in response to a letter of request need not be excluded merely because it is not a verbatim transcript,
14 | because the testimony was not taken under oath, or because of any similar departure from the requirements for depositions taken
15 | within the United States under these rules.

16 | The government here claims that the depositions were taken pursuant to treaty and are therefore

17 | lawful. However, the testimony here was not taken pursuant to treaty, because the treaty

18 | provides that the testimony taken at a deposition conducted pursuant to MLAT request be taken

19 | in a manner similar to that in which testimony would be taken in a similar proceeding in the

20 | receiving country. Article V, Section 3 of the Mutual Legal Assistance Treaty between Ukraine

21 | and the U.S. provides, "Requests shall be executed in accordance with the laws of the Requested

22 | State except to the extent that this Treaty provides otherwise. However, the method of execution

23 | specified in the request shall be followed except insofar as it is prohibited by the laws of the

24 | Requested State." Pursuant to Ukrainian law, when a proceeding has moved beyond the

25 | investigative phase, testimony is taken before a judicial officer. While the matter is still in the

26 | investigative phase, testimony is taken in interrogations and is conducted by prosecutors, without

27

28

2

1  the presence of a judge.[1]

2  Accordingly, Ukraine has named two agencies as the central authority pursuant to its
3  Mutual Legal Assistance Treaty with the United States: the General Prosecutor's Office (GPO or
4  GPOU), and the Ministry of Justice. This symmetry corresponds to the two different phases
5  above; at times, while a case is still being investigated, United States law enforcement may seek
6  Ukrainian assistance, and when it does so, the investigation continues in Ukraine as would the
7  investigation of a crime occurring in that country -- that is, under the prosecutor's supervision.
8  However, when the matter has moved beyond the investigative phase and there are pending court
9  proceedings, any request for assistance in those proceedings should be implemented as it would
10  in Ukraine -- before a neutral and detached judge.

11  Notwithstanding this logic, Ukraine's officials have insisted upon providing assistance in
12  the manner appropriate to cases still in the investigative phase, that is, under the auspices of a
13  prosecutor, and not a judge. Despite representations as to the manner in which these proceedings
14  would be conducted, the depositions that ultimately transpired were depositions in which a the
15  ultimate arbiter was a prosecutor and member of the very office that had marshaled the evidence
16  against Mr. Lazarenko that was produced for the United States.[2] Of course, nobody would
17  dispute the propriety of having a prosecutor present during an *interrogation* -- but this was not an
18  interrogation. Not even in Ukraine are any part of post-accusation or trial proceedings presided
19  over by a prosecutor. The rules do not envision such inconsistent treatment for participants in
20  American trials.

21  Application of these rules resulted in procedures fundamentally different not only from
22  analogous American trial proceedings, but Ukrainian trial proceedings as well. Because the rules

---

24  [1] Defendant will introduce an expert's declaration to support this factual assertion.

25  [2] As stated by the GPO representative: "This is where I have to remind all those in
26  attendance that this deposition is conducted under the Ukrainian legislation and concerning the
    scope of information or the correctness of the answer, to decide whether it's acceptable or not
27  will be the obligation -- will be the decision -- up to the decision of the Ukrainian investigator."
    Vorona, 5/21/03, 35:5-17

3

pertaining to interrogations were applied, all proceedings were secret and not open to the public. Of course, the use of leading questions during an interrogation could cause testimony to be unfairly and inaccurately elicited, and because of this, Ukraine's rule that leading questions cannot be posed to a person being interrogated makes good sense. However, what makes good sense in one context only serves to make it more difficult to pin down evasion and untruth, and in the depositions that were conducted here, defense counsel was stopped during questioning by the GPO representative because of his leading questions.[3] Now, if Ukraine had a rule that leading questions were not allowed during trial testimony, then there would exist an argument that an American trial defendant should be entitled to do no more than his Ukrainian analogue. However, that is not the case, and instead defendant Lazarenko will be judged based upon a process that would never have been utilized in similar circumstances in Ukraine.

Additionally, all of the witnesses were instructed that the proceedings in which they were participating were secret proceedings, and could not be disclosed to anyone.[4] The right to a public trial is a fundamental feature of our system. It protects a defendant not only by allowing him to observe first hand the manner in which his fate is decided, but also because the public nature of the testimony promotes truth-telling on the part of witnesses. In Ukraine, post-investigative proceedings are public as well.

---

[3] The government was treated differently. In many occasions the GPO representative chastized defense counsel for trying to get a witness to answer with a yes or no. Apparently attempting to elicit such an answer is one of the cardinal sins of Ukrainian jurisprudence -- when the lawyer defending a politically ostracized former Prime Minister does it. The government fared better: compare Karpovtsev, 64:9-13 (MR. AXELROD: Okay. Well, let me -- what -- did you raise the issue with Mr. Shkd n -- and this just requires a yes or no answer. Did you raise the issue of Mr. Shkd n talking to Mr. Pustovoytenko yourself. A. Yes.) with Karpovtsev, 5/29/03., 155:6-10 (GPO REPRESENTATIVE UKRAINETS: The witness is having the right to answer in the way he or she prefers. This is the right of the witness guaranteed by the law. And it is illegal to insist upon just yes or no answers. That is why I am asking you to word your questions.)

[4] After his initial protests, defense counsel attempted to mitigate the effect of the GPO representative admonishment not to discuss these events by a qualification that this injunction did not apply to defense counsel and his agents. However, this qualification, announced by an American lawyer, could hardly have the weight of the pronouncement of an organization that functioned as the supreme prosecutorial arm of a dictatorship for more than seventy years.

4

1    That is, except in this case.

2    Rather than conduct these proceedings according to Ukrainian law, the GPO instead
3    chose to proceed in the manner that allowed it the greatest advantage in furthering its prosecution
4    of Mr. Lazarenko -- without a judge, with the prosecutor as the ultimate arbiter, behind closed
5    lock doors, and under a shroud of secrecy. While an argument can be made that an American
6    court should defer to Ukraine on issues of Ukrainian law, it should be unavailing here, where
7    normal procedures and the plain meaning of the law have been subverted selectively to punish
8    the chief political opponent of a country's leader. Whatever interest Ukraine has in interpreting
9    its own laws is outweighed by the American interest in protecting the integrity of these
10   proceedings and the credibility of the court.

11   It is defendant's contention that this indeed is a matter in which "the manner of
12   examination required by the . . . host nation is so incompatible with our fundamental principles
13   of fairness or so prone to inaccuracy or bias as to render the testimony inherently unreliable."
14   United States v. Salim, 855 F.2d 943, 945. However, the determination of this question depends
15   upon resolution of issues of fact such as whether the prosecution here was a joint prosecution of
16   both Ukraine and the U.S. If this were a joint prosecution, then the notion that testimony should
17   be taken before one of the prosecution's partners is particularly antithetical to fundamental
18   principles of fairness. If the GPO is indeed the political tool of Mr. Lazarenko's enemies, then
19   proceedings over which it presides can hardly be counted upon to reveal the truth. If the GPO is
20   part of a joint prosecution, then the GPO should have been disqualified pursuant to Rule 28(c)[5]
21   because the GPO is counsel for one of the parties to the action.

22   Thus, after an evidentiary hearing, if this court finds that because of Ukraine's flagrant
23   attempt to ignore its own laws to ensure that depositions are conducted in the manner most likely
24   to produce evidence incriminating Mr. Lazarenko, then these depositions were not conducted as
25   provided for by law, and testimony obtained in the course of these depositions should be

27   [5] (c) Disqualification for Interest. No deposition shall be taken before a person who is a
28   relative or employee or attorney or counsel of any of the parties, or is a relative or employee of
     such attorney or counsel, or is financially interested in the action.

5

excluded.

## II. ALL COLLOQUY AND OBJECTIONS OF COUNSEL, INCLUDING THE GPO REPRESENTATIVE, SHOULD BE REDACTED

## III. SPECIFIC OBJECTIONS RE SHKIDUN

### 1. Objection, secrecy of proceedings: Shkidun 35:3-15

The witness was instructed that this must not be disclosed at pain of criminal penalties.

### 2. Objection, facts not within the witness' knowledge. Shkidun 58:13-24

The question calls for facts not within the witness' knowledge – that is, Mr.

Pologhentzev's state of mind.

### 3. Objection, argumentative; assumes facts not in evidence. Shkidun 58:25-59:6

The witness had not testified that he sought out other offers, so it was improper to ask him what he had done to do so. Additionally, it is argumentative insofar as it suggests that the witness *should* have sought out other offers, and there is no suggestion that he was obligated to do so under the procedures in place at the time.

### 4. Objection, hearsay. Shkidun 72:17-73:5

Even though the declarant of the out of court statement – that is, what the witness told Vorona about the contract – is the witness testifying, the statement is an out of court statement. Additionally the question is argumentative insofar as it suggests that the witness discussed Mr. Lazarenko's supposed involvement in the transaction. Additionally, the second question simply assumes facts not in evidence – that is, that he said something about Mr. Lazarenko's involvement.

### 5. Objection, assumes facts not in evidence. Shkidun 73:15-16

Assumes that Mr. Lazarenko had involvement in the GHP Corporation at that time. It is also argumentative, as it suggests that he was actively involved in the corporation and the transaction. It is compound, as it references two separate items, his involvement in GHP, and his role.

### 6. Objection, assumes facts not in evidence. Shkidun 76:4-7

Assumes that the witness sent Exhibit 995 to Mr. Lazarenko. It is also leading, as it

6

1  suggest that the witness' answer should be that he sent the document to Mr. Lazarenko.

2  **7. Objection, Counsel's Statement. Shkidun 79:20-21**

3  Objection to counsel's statement to the witness that he is "not responding to the question."

4  **8. Objection, GPO Admonition. Shkidun 81:4-6**

5  Objection to Mr. Ukrainets admonition to the witness not to touch any other documents

6  based upon it not relating to any factual issue.

7  **9. Objection, GPO Admonition. Shkidun 81:17-18**

8  Objection to Mr. Ukrainet's admonishment to the witness. This should not be read to the

9  jury and it is not evidence of anything.

10  **10. Objection, calls for hearsay. Shkidun 82:2**

11  Mr. Vorona's alleged reservations about the contract are hearsay.

12  **11. Objection, leading. Shkidun 90:8-11**

13  The question is a statement, suggesting that he never obtained written approval from the

14  Ministry of Trade.

15  **12. Objection, hearsay. Shkidun 117:2-6**

16  The witness' statements about every government employee taking an oath, and his

17  recitation of what was contained in that oath – "not to meddle in commercial affairs," are

18  hearsay. The portion about the oath is also nonresponsive to the question.

19  **13. Objection, calls for speculation. Shkidun 117:14-15**

20  The questions – what he would have done had he known about Mr. Lazarenko's interests

21  – call for speculation.

22  **IV. SPECIFIC OBJECTIONS REGARDING WITNESS VORONA**

23  **1.** All Ukrainets' comments should be edited out, as should colloquy of counsel and

24  objections.

25  **2. Objection, defendant unable to participate due to sleep deprivation**

26  While it has been held that the failure of the government to produce a defendant at

27  deposition does not necessarily warrant the exclusion of testimony, the cases are consistent in

28  their description of alternatives used to mitigate the impact both practically and constitutionally.

7

1   Here, the government attempted to make arrangements for teleconferenced depositions.
2   However all of these arrangements came to nothing because of the government's insistence upon
3   adhering to a schedule that guaranteed that Mr. Lazarenko would soon be too exhausted to
4   meaningfully participate in the depositions.

5   The deposition of witness Vorona began on the third day of depositions, May 21, 2003.
6   In Kiev, the time was approximately 9:45 am. At the Federal Building in San Francisco it was
7   about half-past midnight, and Mr. Lazarenko had slept only two of the last sixty-five hours.
8   Vorona, 5/21/03, Volume 1, 6:22-25. As the deposition progressed it was consistently noted that
9   he was asleep on the floor of the room from which he should have been listening. (Vorona
10  5/21/03 22:17-18; 30:21-23; 69:8-12; 262:23-25) On the third day of depositions, which
11  commenced at 8:41 a.m. Kiev time, and 11:41 p.m. for Mr. Lazarenko, Mr. Lazarenko was
12  suffering critical sleep deprivation, and had not slept since the conclusion of the deposition the
13  day before. He was "sick and barely awake." Vorona, Volume III, 247:14-19; see also
14  Declaration of Pavel Lazarenko RE Sleep Deprivation and Health May-June 2003 (hereafter
15  "Declaration"), attached as Exhibit A.

16  Mr. Lazarenko's inability to participate meaningfully in the proceedings was particularly
17  troubling here because the witness' testimony related to subject matter with which Mr. Lazarenko
18  was peculiarly familiar: the administrative structure of the Cabinet of Ministers. Much of
19  Vorona's testimony consisted of repeated assertions that proper procedures were not being
20  followed; having worked within the Cabinet of Ministers as both a Deputy Prime Minister and
21  Prime Minister, Mr. Lazarenko's knowledge was an important asset to his defense. Mr.
22  Lazarenko was prepared to assist counsel in testing Vorona's assertions about institutional
23  procedures. However, because Mr. Lazarenko had adhered to a grueling schedule in order to
24  realize as fully as possible his constitutional rights to be present, assist counsel, and confront
25  witnesses, he was asleep, and he could not do so.

26  **3. Objection Based Upon Informing the Deponent That The Deponent Could Not**
27  **Discuss These Proceedings Without Risking Criminal Prosecution.**

28  Defendant likewise objected to an instruction from the GPOU representative that the

8

1 witnesses were not to discuss the proceeding with anyone. Vorona, 5/21/03, 17:9-21:22. As

2 mentioned above, one of the attributes of the American evidence gathering process is that it is

3 public. All can attend, and the bright light of public interest is intended to protect against

4 surreptitious attempts to intimidate. If one is under pressure to testify falsely, the fact that the

5 testimony will be secret makes the falsehood all the more likely in several respects. Here, the

6 witness was expressly told that he could not discuss the matter with anyone without risking

7 criminal prosecution. This injunction is particularly frightening when considered in the context

8 of Ukraine's history, in which the GPO was the legal arm of the KGB and the repressive portions

9 of the Communist government. Although Communism has fallen, the GPO remains. Indeed,

10 later in the testimony, the witness himself cited this admonition from earlier interrogations as

11 supporting his claim that he had not talked to anyone about this matter of great public interest.

12 **Vorona, Volume II, 177:11-14.** The admonition thus hardly promotes the candor necessary for

13 a meaningful examination of potential biases affecting a witness' testimony.

14 **4. Objection, nonresponsive. Vorona 33:20-34:8.**

15 While on the transcript counsel appears a little quick on the draw with his objections,

16 review of the videotapes reveals that the witness was attempting to begin a lengthy,

17 nonresponsive narrative answer to counsel's question.

18 **5. Objection, nonresponsive. Vorona 34:11-19**

19 While the first part of the witness' answer appears responsive, at the conclusion he

20 interjects a statement regarding Mr. Shkidun asking him to sign the contract which does not

21 respond to the original, simple question of whether he reviewed the contract.

22 **6. Objection, hearsay. Vorona 35:24-36:10**

23 Hearsay: Shkidun's (the declarant's) statement to Vorona (the witness) that Lazarenko has

24 given instructions that the contract be signed (out of court statement offered for proof of the

25 matter asserted).

26 **7. Objection, nonresponsive. Vorona 40:12-24**

27 The question calls for the explanation that Shkidun gave to the witness Vorona at the time

28 that he requested Vorona's signature on the contract. Vorona's answer contains not just a

9

1  response to this question, but also volunteered information that he has already given this

2  information to representatives of the prosecutor general's office and American representatives.

3  **8. Objection, nonresponsive, contains impermissible conclusion and opinions, lack**

4  **of foundation, hearsay. Vorona 41:18-42:2**

5  The answer here is simply volunteered by the witness, and does not respond to any

6  pending question. Additionally, the answer includes the witness' conclusions and opinions that

7  "a contract like that" – the GHP contract – could not be entered into without the consent of the

8  Prime Minister. The basis for this last statement – did someone tell him this? was he relying

9  upon a statute or rule? is this just his conclusion, or is he applying some rule with which he is

10  familiar? -- is never established. This is likewise true of the witness' statement that "budgetary

11  revenues were well below what should be provided, and the state budgetary revenues were not

12  fulfilled in this goal that it was required." We do not know how the witness came to this

13  information – information from a third party, review of official records, a newspaper article?

14  Thus the evidence appears to be without a foundation and/or hearsay.

15  **9. Objection, hearsay. Vorona 42:16-20**

16  Testimony by Vorona (the witness) that Shkidun said that Lazarenko gave the order that

17  Vorona sign the contract (out of court statement containing the matter asserted).

18  **10. Objection, hearsay. Vorona 43:4-10**

19  Same as above. Again he relates the out of court statement that the order is from the

20  Prime Minister.

21  **11. Objection, nonresponsive. Vorona 43:20-44:2**

22  As can be seen on the video, the witness is eager to get his story out as quickly as

23  possible. He is asked what happened at that point, and his initial response that Shkidun

24  threatened him is responsive. However, he then gets into nonresponsive matter that should be

25  stricken, that is, the submission on January 27 of the contract to the accounting department for

26  payment.

27  **12. Objection, nonresponsive. Vorona 44:6-15**

28  Initially, the witness responds to the question, which asks for a description of the threat

10

against him. While not apparent from the transcript, the tape reveals that after answering, during a pause, the witness simply volunteers an additional statement from Mr. Shkidun, that is, that it would not be possible for Shkidun and Vorona to keep working in this manner.

**13. Objection, nonresponsive. Vorona 44:21-45:5**

The question inquires as to the number of meetings between the witness and Mr. Shkidun. After stating that there was more than one meetii.g, the witness then goes on to state that Shkidun insisted that he execute payment, and also goes on to recount that several other employees had signed the contract as well.

**14. Objection, nonresponsive. Vorona 45:8-15**

The question merely seeks confirmation that the witness was summoned to Mr. Shkidun's office on January 27. He then continues nonresponsively to describe how after that meeting he brought a written explanation to Mr. Shkidun refusing to sign the contract.

**15. Objection, leading, assumes facts not in evidence. Vorona 46:10-19**

The witness had mentioned that he had provided a written explanation to Mr. Shkidun on some undetermined date However, he had not mentioned the date, nor said it was in letter form. Both the date and the letter were suggested to him by the leading question. This also provides an example of one of many times that the GPO representative applied the injunction against leading questions unevenly, never forbidding the prosecution from doing so, while regularly interrupting defense counsel ostensibly because of leading questions.

**16. Defendant objects because he was not provided with the original of documents for his examination.**

There existed serious issues regarding the authenticity of the documents which the GPO and our government relied upon to support their theory witi. respect to the Pacific Modern Homes issues. Mr. Shkidun, the first witness, claimed that certain documents had been fabricated, altered or falsified, including the contract for the prefabricated homes (Government's Exhibit 972), a payment order on which Vorona claimed that he informed Mr. Shkidun of the problems with the house (Government's Exhibit 973A) and a memorandum from Mr. Shkidun (Government's Exhibit 1001). Additionally, the original of the contract was missing. Thus it

11

1  was imperative the defendant have access to the originals of the documents in order to examine

2  witnesses. As of the morning of the first day of the deposition defendant still had not been

3  provided with the originals. **Vorona, 5/22/03, 52:11-14.** That continued as the deposition

4  proceeded. **Vorona, 5/21/03, 63:5-13.** The GPO stated that the documents would be made

5  available to the defense prior to cross examination. **Vorona, 5/21/03, 87:15-23.**

6  Despite counsel's repeated attempts to obtain some sort of meaningful access to the

7  documents, Counsel was given access to *some* of the documents that evening, but he was granted

8  this access under severe restrictions. The documents that were made available to him were

9  available only at the end of the day, that is after the session ended at 5:35 p.m., and defendant

10  was told that even though the proceeding had begun at 8:00 a.m. that morning, if he wanted to

11  review these documents he would have to remain until he was finished. The Court had just

12  granted counsel's request that the depositions adjourn at 5:00 p.m. so as to avoid 8:00 a.m. to

13  8:00 p.m. workdays originally suggested by the GPO, and this requirement effectively

14  countermanded that ruling, forcing counsel to remain at the GPO until 8:00 p.m. and not return

15  home until 9:00 p.m. Defense counsel requested that the depositions commence somewhat later

16  than 8:00 a.m. the next morning, but his request was refused. **Vorona, 5/21/03, 129:25-138:15.**

17  As it turned out, the depositions did not commence until almost 11:00 a.m. the next morning

18  because of problems with the teleconferencing equipment.[6]

19  Even then, there remained documents which were not produced, and the deposition

20  concluded without at least one important document being made available to the defense.

21  **17. Objection, hearsay. Vorona 56:5-11.**

22  To that portion of the answer which states "that was the direct instruction of the Prime

23  Minister of the Ukraine. . ."

24

25

26  [6] Notwithstanding assurances that all the documents would be brought to that day's session, the GPO still had not produced all of the documents. Then, the teleconferencing equipment did not work and the proceedings could not be heard in San Francisco, but the government attempted to go forward anyway, relenting only after repeated, emphatic requests by counsel.

27

28

12

1     **18. Objection, vague as to time. Vorona 56:5-11.** The witness describes two meetings

2 at which the witness stated that he was directed to proceed with payment: one on January 27 and

3 one thereafter (Testimony, Vorona, 5/21/2003, 55:19-56:3). The question does not establish

4 which meeting it references.

5     **19. Objection, hearsay. Vorona 57:18-58:4.**

6     Objection, hearsay, to that portion of the answer that states that there was an instruction

7 from the Prime Minister of Ukraine.

8     **20. Objection, misstates the testimony. Vorona 58:5-11**

9     The meeting was with Karpovtsev and Shkidun, not Shkidun alone, as the question

10 suggests. (This problem can be remedied by rephrasing and recording over the question.)

11     **21. Objection, nonresponsive, lack of foundation, impermissible opinion and**

12 **conclusion. Vorona 58:15-59:5**

13     After being asked what his role was in ensuring payment on the contract, the witness

14 answers by setting forth not only responsive material, but an account of further threats to the

15 future of his children, and a legal opinion about the binding nature of the contract not supported

16 by the appropriate foundational showing.

17     **22. Objection, nonresponsive. Vorona 58:19-60:3**

18     The question posed by the government calls for a description of the witness'

19 responsibilities in ensuring payment on contracts in general. His response, however, describes

20 the preparation of a payment order in this matter.

21     **23. Objection, nonresponsive. Vorona 62:4-21**

22     The questions posed by the government inquire as to how the two-signature requirement

23 for payment was followed in this case. The answer begins responsively describing a visit to Mr.

24 Shkidun for his signature, but then the witness once again interjects nonresponsive material about

25 alleged threats against his family (" . . . and after that, I would like to emphasize that he said,

26 'Think about your children. They still have to live.'")

27

28

13

**24. Objection, hearsay, lack of foundation, impermissible conclusion or foundation**.
**Vorona 88:21-25**

The witness, asked whether he has received an invoice, answers the question, and then goes on to explain his reasons for not signing the invoice, including a supposed requirement of an expert opinion from the Ministry of Trade and Foreign Economic relations in a contract such as the GHP-CMU contract. There is no foundation laid as to his opinion or conclusion that such a requirement exists, and it appears to be hearsay.

**25. Objection, hearsay. Vorona 90:2-7**

Responding to a question as to whether he sees handwriting on an item marked for identification, the witness instead recites the contents of an expert opinion from the Minister of Trade and Economic Relations. This testimony is hearsay – the Ministry of Economic Trade is the declarant and the statement is the assertion that the "purchase of the houses . . . cannot be fulfilled and payment cannot be effected."

**26. Objection, hearsay and that isn't the witness talking. Vorona 92:9-16**

Although indicated as the witness' answer, the video indicates that this in fact is the interpreter talking and paraphrasing the witness' statement to him. Additionally, as the transcript indicates, this statement is not responsive to any question posed by the examiner.

**27. Objection, hearsay. Vorona 95:6-25**

The witness is asked to describe a document which he neither authored nor signed. His testimony about that document, Exhibit 975, is hearsay.

**28. Objection, hearsay, impermissible conclusion or opinion, lack of foundation.**
**Vorona 97:9-12**

The testimony references the witness' out of court statement of his opinion that the contract was "a problem." The basis for this opinion, and the foundation for this testimony has not been established. This objection may be susceptible to a limiting instruction regarding this testimony.

14

1  **29. Objection, hearsay, impermissible conclusion or opinion, lack of foundation.**
2  **Vorona 97:13-18**

3      The testimony references the witness' out of court expression of his opinion that the
4  contract was "a problem." He further opines that there is something "fishy" about the contract.
5  He also states that the contract "contradicts . . . the current Ukrainian legislation." The bases for
6  these opinions, and the foundation for this testimony has not been established. This objection
7  may be susceptible to a limiting instruction regarding this testimony.

8      **30. Objection, nonresponsive. Vorona 106:24-107:23**

9      The question attempts to elicit information as to the absence of the signatures of Shkidun
10  and Vorona from Exhibit 976, which apparently is similar in all other respects tp 976A; the
11  response does not address the question, and merely claims that the documents are identical in
12  fact.

13      **31. Objection, nonresponsive, lack of foundation. Vorona 110:5-13**

14      The question calls for the witness to identify documents contained in Exhibit 1002. The
15  witnesses goes on to identify the documents, and then goes on to volunteer the following
16  nonresponsive information which should be stricken: "GHP Corporation was thought -- was
17  thought to be located in Geneva, but here we have the address -- the address is quite different.
18  It's written that it's located in Kiev." The witness also states that "we" – apparently his colleagues
19  at work – thought that the company was located in Geneva when in fact it was located in Kiev,
20  but no foundation is laid as to why he believed this or he understood that his colleagues believed
21  this.

22      **32. Objection, lack of foundation, impermissible conclusion or opinion, hearsay.**
23  **Vorona 110:21-25**

24      The witness' statement that the contract was not being carried out "according to standard
25  procedures," and that he "had suspicions that there something wrong with this contract (sic)" are
26  opinions and conclusions not supported by any foundation. Whether he believed this because he
27  was familiar with any formal rules, or because someone told him, or it was simply a matter of
28  personal opinion, is unclear. As it stands, the source appears to be hearsay. This objection may

15

1  possibly be resolved through the use of a limiting instruction.

2  **33. Objection, impermissible opinion and conclusion, lack of foundation, hearsay.**
3  **Vorona 111:2-21**

4  The witness' initial response to the question of why he had suspicions regarding the

5  contract contained the conclusory statements that there were "constant pressure, threats, and no

6  transparency." When queried as to the meaning this testimony that there was "no transparency,"

7  the witness replied with further statements of opinion – that "everything related to the contract

8  was made in a very narrow circle of people . . . . [a]nd in accordance with instructions from then

9  Prime Minister Lazarenko." The statement as to Lazarenko is hearsay – the two men had no

10  personal contact.

11  **34. Objection, nonresponsive. Vorona 111:24-112:15**

12  The witness volunteers, with no question pending, "And the question remains then not

13  how to preserve the commercial interest, to keep the commercial secret." He then continues to

14  volunteer: "But not to keep the commercial secret, but to do the payments as quick as possible.

15  As quickly as possible."

16  **35. Objection, lack of foundation, impermissible conclusion and opinion. Vorona**
17  **113:7-12**

18  The witness' responses about Mr. Pustovoitenko are impermissible conclusions and

19  opinions and character evidence. This may be susceptible to a limiting instruction.

20  **36. Objection, hearsay. Vorona 113:16**

21  The witness' statement that Mr. Pustovoitenko agreed with him and supported his

22  intention to give the documents to law enforcement is hearsay.

23  **37. Objection, lack of foundation, hearsay. Vorona 114:17-116:3**

24  All testimony reciting the contents of Exhibit 983, which this witness did not prepare,

25  author, or sign, is hearsay. The witness attributes certain statements in the document to Mr.

26  Shkidun, but there is not indication of the reason why he does so.

27  **38. Objection, lack of foundation. Vorona 116:14-117:7**

28  The witness identifies Exhibit 979 as an invoice that was attached to a letter sent by Mr.

16

1  Shkidun to Customs. However, the basis in personal knowledge for the witness' statement that

2  Mr. Shkidun sent a letter to Customs and this item was attached to it is not demonstrated.

3  **39. Objection, lack of foundation. Vorona 117:23-118:7**

4  The witness characterizes Exhibit 979 as "the invoice sent by Mr. Shkidun to Customs."

5  However, the basis in personal knowledge for the witness' statement that Mr. Shkidun sent a

6  letter to Customs and this item was attached to it is not demonstrated.

7  **40. Objection, nonresponsive, impermissible conclusion and opinion. Vorona**

8  **118:23-119:5**

9  The witness is asked to identify a document, and after doing so adds his opinion that the

10  item "raises suspicions and doubts."

11  **41. Objection, nonresponsive, impermissible conclusion and opinion. Vorona**

12  **119:13-17**

13  The questioner asks whether the witness can clarify to which of two documents he is

14  referring. His response, that "the letter from Pacific Modern Homes does not look – does not

15  look an authentic letter (sic)," does not answer that question, and contains impermissible

16  conclusion and opinion.

17  **42. Objection, lack of foundation. Vorona 121:13-18**

18  There is no evidence that the witness had personal knowledge of the submission to

19  customs authorities.

20  **43. Objection, hearsay. Vorona 122:2-8**

21  The witness states that the homes cleared customs, but knows this only because of

22  documents he received from customs. His recitation of what Customs documents say is hearsay.

23  **44. Objection, hearsay, irrelevant. Vorona 122:9-124:3**

24  This memo contains statements regarding the quality of the homes and the merits of the

25  GHP deal, both matters ruled immaterial during resolution of discovery issues by this Court.

26  Evidence therefore should not be introduced about these issues. A realistic alternative might be

27  to redact the document. *Hearsay*: while the witness could have testified to the contents of the

28  memo and perhaps laid the predicate for its admission pursuant to an exception to the hearsay

17

1 rule, the witness did not do so. The memo's statements are hearsay.

2 **45. Objection, lack of foundation, hearsay, nonresponsive. Vorona 124:4-125:6**

3 Asked *whether* there were additional expenses incurred, the witness proceeds to not only
4 answer yes, but goes on to say that the costs of construction connected to the purchase from PMH
5 were incurred by Ukraine. The government attempts to lay a foundation of personal knowledge
6 in the questions posed at 124:13-127:17, Vorona Deposition, 2/21/03, Volume 1, but the witness'
7 responses are inadequate, and he then veers off into a discussion of how unfit the homes were for
8 use in Ukraine, matters that have been ruled not relevant to these proceedings, and in any event
9 matters that should be excluded pursuant to FRE 403. There is no foundation that he has
10 personal knowledge of these facts, and he does not in fact have such knowledge.

11 **46. Objection, vague, calls for a conclusion or an opinion, lack of foundation,**
12 **nonresponsive. Vorona 127:18-128:5**

13 The term "role" is vague, particularly when we remember that the term has to be
14 translated into another language. Counsel does not know if there is an equivalent term in
15 Russian or Ukrainian, and will defer to Ms. Boersch on that matter. However, even translated
16 literally, its meaning is unclear. That may be the reason why the witness failed to respond to this
17 question, instead positing his own theory of guilt by circumstantial evidence. Statements such as
18 "[a]t the time . . . such sums of money . . . we never paid without a Prime Minister's consent,"
19 and "the urgency of the payments of customs clearance [was] not possible if the Prime Minister
20 hasn't given his consent," both are clearly expressions of opinion. Even if such assertions were
21 permissible, no foundation has been laid as to this witness' knowledge.

22 **VORONA VOLUME II, 5/22/03**

23 **47. Defendant's cross-examination regarding the role of the GPO and the witness'**
24 **state of mind regarding his government was foreclosed by the GPO.**

25 Because Ukraine insisted on having the depositions conducted by the General
26 Prosecutor's Office (GPO), cross examination regarding the witness' attitude regarding the GPO,
27 as well as the other "coercive structures" (as they are called in Ukraine) was permissible. One of
28 defendant's contentions is that the witnesses here have testified falsely because they believe that

18

1   their failure to do so will result in their government causing them some type of harm, since their

2   government is not a democracy and uses its legal system to consolidate the political hold of the

3   rulers of the country. Even the beginnings of this line of cross-examination did not fare well

4   with the GPO representative.

5           Q.     Is this a democracy?

6               MR. AXELROD: Objection. Beyond the scope.

7               INVESTIGATOR UKRAINETS: Mr. Rosenthal, are you questioning the

8               public organization of Ukraine?

9   **VORONA, VOLUME II, 172:6-9.**

10       The prosecutor then went on to foreclose this line of examination. **Vorona, Volume II,**

11   **172:11-174:3. Also see 180:11-18.**

12   **VORONA VOLUME III, 5/23/03**

13       **48. Defendant Objects To The GPO Cutting Off His Cross Examination**

14       On May 23, the GPO representative interrupted defense counsel in the middle of his cross

15   examination and said that he was ending the examination. Defense counsel had earlier asked the

16   GPO representative directly whether he intended to interrupt his cross examination. The GPO

17   representative evaded the question and created the impression that he would not do so.

18       Prior to May 23 there had been discussion regarding the scheduling of the next witness,

19   but no indication by the GPO that it would simply pull the testifying witness off the stand when

20   the next witness was scheduled to begin, or that it was going to impose any time limit.[7] The first

21   mention of a time limit came from the government, which apparently had been having private

22   discussions with the GPO,[8] when counsel stated that it was his understanding that Mr. Vorona's

23

24   [7] Time limits operate fairly only if the litigants are given notice of what those time limits are.
25   Had the GPO representative informed counsel that he would have to conclude at a certain time,
26   counsel would have examined differently and covered at least some of the areas, discussed
    below, that were omitted.

27   [8] This illustrates another difficulty resulting from using the GPO as the Central Authority. The
28   taking of testimony is a critical stage in the proceedings, and as such it is important that whoever

1 deposition would conclude at noon. Counsel then placed on the record that this had never been

2 said before, and expressly stated, "I don't want you to get an idea from anything [counsel] said

3 that this deposition is supposed to end at 12 o'clock." Vorona Deposition, 5/23/03, 294:19-

4 295:2. The GPO representative then inquired:

5
> INVESTIGATOR UKRAINETS: Mr. Rosenthal, so you think we have to
> continue afternoon?

6
7
> MR. ROSENTHAL: Yes. My understanding is we're going to do this until we're
> done. Or at least until afternoon.

8
> INVESTIGATOR UKRAINETS: Okay. We'll make a 15 minute break and then
> continue.

9
10
> MR. ROSENTHAL: Okay. Thank you.

Thus, when first raised the GPO did nothing to caution defendant that he had a time limit.

11
Still uncomfortable that the GPP intended to simply suspend his cross examination,

12
counsel raised the issue again shortly:

13
14
> MR. ROSENTHAL: Okay. I just want the understanding to be clear on the
> record that at least at this point the understanding is I'm going to get to continue
> the questioning of this witness until I'm concluded. Or he --

15
> INVESTIGATOR UKRAINETS: Please put your questions to the witness.

16
Thus, neither the government nor the GPO disputed that defendant would be permitted a chance

17
to complete his cross examination. Nevertheless, the GPO representative went on to summarily

18
terminate Vorona's examination on about five minutes notice, leaving defense counsel frantically

19
trying to salvage the cross examination. **Vorona 5/23/03/ 331:10.**

20
Unfortunately, counsel was not successful in doing so, and the cross examination of Mr.

21
Vorona omitted some crucial elements. First and foremost, Vorona was never asked on cross

22
examination whether he had any contact with Mr. Lazarenko; had he been asked, the answer

23

24 presides over the taking of testimony be neutral, detached, and with no interest in the subject

25 matter. If this does not occur, then there exists a risk that one party will enjoy greater access to

the presiding party than the other and thus gain an unfair advantage. That is precisely what

26 happened here. As the Court know, it is defendant Lazarenko's position that this was a joint

27 prosecution and that Mr. Ukrainets was one of the United States government's prosecutorial

partners; thus it was no more appropriate that he preside over these proceedings than it would be

28 if a member of Ms. Boersch's office did so.

20

1  would have been no. This point alone would significantly erode the position that Vorona was
2  somehow pressured by Lazarenko. Additionally, Vorona would have been cross-examined on
3  the fact that he had never seen Mr. Lazarenko with any of his co-workers who likewise claimed
4  pressure.

5      The cross examination also was ended before counsel could cover the documents marked
6  by the government during direct. Shkidun should have been confronted with his multiple
7  signatures on 973A1, 973-1, 973B1,976, and 976A. Cross examination would also have taken
8  place on 975, which the witness attributed to Shkidun. A line by line examination would have
9  established that the areas discussed were in fact in Vorona's area, and he was the likely author of
10 the document; this would further belie his claim of opposition. Additionally, 983 is a customs
11 document which the witness claimed he received in a shipment of goods. However, cross
12 examination would have established that he had in fact surreptitiously removed this document
13 from Mr. Shkidun's office, and that he was the person from whom law enforcement retrieved the
14 documents after he had an opportunity to destroy those that contradicted his testimony.

15      Vorona is a crucial witness against Mr. Lazarenko. He is perhaps the most damaging
16 (and certainly the most enthusiastic) of the witnesses to testify about the GHP-Pacific Modern
17 Homes deal. It was crucial that Mr. Lazarenko be able to impeach him to the fullest extent
18 possible. If a time limit upon cross examination limit was going to be imposed, that should have
19 been clearly stated, and the cut-off time expressly noted. This is not what would have happened
20 at trial: counsel has yet to hear of a trial in which an attorney was subjected to an undetermined
21 time limitation that was imposed so as to cut off cross examination. As such, the procedure here
22 violated Rule 15's injunction that "[t]he scope and manner of the deposition examination and
23 cross-examination must be the same as would be allowed during trial." Because this did not
24 happen, Mr. Lazarenko risks being tried on a cross-examination so circumscribed that it omitted
25 many important lines of inquiry.

26 **V. SPECIFIC OBJECTIONS REGARDING THE WITNESS PETROV-KOZMIN**

27      **1. Objection Based Upon Lack of Sleep**

28      This deposition commenced following the conclusion of the Vorona deposition on May

21

1   23. At the beginning of that day as of 8:41 a.m. Kiev time, and 11:41 p.m. San Francisco, as a

2   result of continuing sleep deprivation, Mr. Lazarenko was "sick and barely awake." Vorona,

3   Volume III, 247:14-19; see also Declaration, attached, at 2. His condition only worsened as the

4   day progressed.

5   **2. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

6   **Proceedings Without Risking Criminal Prosecution. Petrov-Kozmin 15:14-16:2.**

7   At the beginning of Mr. Petrov-Kozmin's deposition he was admonished that:

> In accordance with Article 121 of the Criminal Procedural Code of Ukraine, I'm explaining to you, to interpreters, and to all those in attendance that information on the pretrial investigation can be disclosed only at the consent of the investigator or prosecutor and in the scope which they consider to be possible. And in accordance with the above mentioned, I would like to warn you and all those present about the liability on the disclosure of information. Those found guilty in disclosure of the information relevant to the pretrial investigation shall be liable in accordance with Article 387 of the Criminal Code of Ukraine.

Thus, prior to the beginning of the proceeding the witness was informed that his

testimony was going to be part of a secret proceeding, and that his testimony could not be

revealed by any of the participants, only by the GPOU. This warning seems to be associated with

the use of investigatory procedures to take these trial depositions, which defendant has previously

argued is not appropriate for a case in which judicial proceedings have commenced. In an

investigation it makes good sense to preserve confidentiality in order to prevent the leaking of

information to targets and the obstruction of the investigation. However, it is quite another thing

when one considers the operation of these secrecy provisions in the trial context.

The public trial guaranteed to a defendant by our constitution serves several purposes.

One of those purposes is promoting truthful testimony. Witnesses who testify in public have less

to fear than those forced to give evidence in closed proceedings. If the witness' testimony is

damaging to either side, the very public act of testifying results in such scrutiny as would deter

retaliation by any party dissatisfied with testimony. A witness who testifies in secret is alone and

unable to share his dilemma. This isolation can only produce fear, which is inimical to truthful

testimony.

The above admonition not only informs the witness that he is alone, but also informs him

22

1  that he is subject to prosecutorial power. It is up to the prosecutor to decide with whom the
2  witness can discuss his testimony, and if the witness acts inconsistently with the prosecutor's
3  wishes, he will be convicted of a crime and presumably punished. The emphasis on the power of
4  one of the parties to a dispute to impose sanctions upon a witness can only serve to intimidate
5  that witness.

6  With subsequent witnesses defense counsel was allowed to supplement the above
7  admonition with comments of his own stressing that the witness was free to discuss the matter
8  with the defense if contacted. However, counsel's comments could not cure the chilling effect of
9  the original comments by the GPOU representative. A few words by an American lawyer whom
10  the witness knows will be on a plane and out of the country in a short time carry little weight
11  when juxtaposed with a pronouncement by a representative of an old, established "coercive
12  structure" such as the GPO. In some ways, counsel's admonition only highlighted the disparity in
13  power between the witness and the prosecutors. Moreover, the impact of this admonition must
14  be assessed in the context in which it occurred -- a country with a profound history of repression,
15  much of it inflicted with the assistance of the GPO.

16  It is hardly consistent with our system of justice to have testimony premised upon an
17  instruction to a witness that he is participating in a secret proceeding which must remain secret if
18  he wishes to avoid prosecution himself. This is not the manner in which testimony is taken in an
19  American trial, and its use as trial evidence would again violate Rule 15(e)'s injunction that the
20  manner in which testimony is taken must be the same as would occur at a trial. While exclusion
21  of testimony may be a harsh remedy, it is but a consequence of the stubborn insistence of
22  utilizing the GPO and investigative procedures in a matter that had long ago progressed beyond
23  the investigative stage.

24  **PETROV-KOZMIN VOLUME 2, 5/26/03**

25  **3. Objection, nonresponsive, hearsay. Petrov-Kozmin 70:3-5.**

26  Initially, the witness is asked whether looking at a document refreshes his recollection.
27  Rather than respond to the question, he comments on the document with which the government
28  proposes to refresh his recollection.

23

1    **4. Objection, argumentative. Petrov-Kozmin 91:17-22**.

2    The question calls for the witness not to give evidence about something he observed, but

3    rather to perform a mathematical operation upon a piece of prosecution evidence in order to

4    highlight for the jury the discrepancy between invoices.

5    **VI. SPECIFIC OBJECTIONS REGARDING THE WITNESS RYBALKO**

6    **RYBALKO VOLUME I, 5/26/03**

7    **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

8    **Proceedings Without Risking Criminal Prosecution. Rybalko 5:11-6:14**

9    Defendant incorporates by reference the argument on this issue made with respect to

10   witness Petrov-Kozmin. This is an instance in which defense counsel attempted to blunt the

11   impact of the GPO representative's comments by making a statement:

12         I don't mean to interrupt, but I see you look to me as we have discussed this. Mr.
           Rybalko, it's my understanding that the language that has just been read by Mr.
13         Ukrainets does not apply to conversations between you and Mr. Lazarenko's
           defense team. So if at some time in the future we should try to contact you, there
14         will be nothing illegal about your speaking with us. You don't have to speak with
           us. It's strictly up to you whether you do or you don't. And I don't even know if
15         we're going to be contacting you, but if we do, I just wanted to make that clear.

16   Rybalko, 5/26/03, 6:2-14.

17   For the reasons set forth in the argument referenced above, these comments could not

18   remedy the damage done by the original admonition. Notably, the comments are neither

19   endorsed nor incorporated into the GPO admonition. The message can only be that whatever

20   reassurance counsel's comments might offer, that reassurance was faint.

21   **2. Objection, nonresponsive. Rybalko 25:15-25**.

22   The witness is asked what he told Mr. Shkidun and he responds. However, the last part

23   of his answer in which he says that he did not fully realize the essence of the problem is

24   nonresponsive.

25   **RYBALKO VOLUME II, 5/27/03**

26   **1. Objection, based upon lack of sleep. Rybalko 47:8-14**.

27   Again we have another instance of defendant participation in the deposition thwarted by

28   lack of sleep, an inevitable consequence of the inadequate provisions made to accommodate the

24

1  defendant while he was still in custody. Here, the defendant had not slept for forty-one hours at

2  the commencement of the second day of Mr. Rybalko's deposition. As a result of this, he was not

3  able to provide meaningful assistance to counsel with regard to subject matter peculiarly within

4  his knowledge -- that is, the witness' testimony about the procedures used in a Ukrainian

5  governmental agency.

## VII. SPECIFIC OBJECTIONS REGARDING THE WITNESS KARPOVTSEV
## KARPOVTSEV VOLUME I, 5/27/03

### 1. Objection based upon the witness' refusal to be sworn. Karpovtsev 8:6.

9      As did several of the witnesses to testify later, Mr. Karpovtsev refused to be sworn. The

10  requirement that a witness be sworn ensures that there exists a meaningful sanction should the

11  witness give false testimony. A witness who testifies falsely under oath is subject to criminal

12  prosecution for perjury. Such a sanction is a crucial mechanism in ensuring that testimony is

13  truthful and the fact-finding process accurate.

14      If there were a reasonable substitute for the oath -- a sanction that could be applied

15  through the law of Ukraine that would serve the same purpose -- then the absence of the oath

16  might not be a concern. However, the admonition to the witness by the GPO representative that

17  false testimony may result in criminal prosecution was inadequate. Defendant is prepared to

18  demonstrate at an evidentiary hearing that this sanction has never been applied in Ukraine, and

19  that no reasonable witness could anticipate that the very same Ukrainian government that

20  ostracized Mr. Lazarenko would prosecute anyone for false testimony if that testimony damaged

21  Mr. Lazarenko.

22      The witnesses here who refused to be sworn did so out of fear of prosecution by the

23  United States, the only sovereign that would prosecute a liar in the Lazarenko case without

24  reference to whether the testimony in question in fact helped or harmed Mr. Lazarenko. As

25  things stand in Ukraine, the unsworn witnesses were free to lie, as long as their lies served the

26  present regime's political agenda. In fact, the only testimony that might be sanctioned in this case

27  was testimony that favored the defendant.

28

25

1  **2. Objection, nonresponsive, hearsay, irrelevant, calls for a narrative. Karpovtsev**
2  **13:12-25.**

3  Asked at the outset of the deposition a boilerplate question posed to all witnesses
4  regarding the witness' knowledge regarding this matter, Mr. Karpovtsev responded with a
5  description of Mr. Lazarenko's alleged "personal and very persistent" effort to push through the
6  GHP-PMH deal. This answer not only failed to respond to the initial question, but was based
7  upon hearsay. As his testimony established, Karpovtsev never discussed this transaction with
8  Mr. Lazarenko, and has no personal knowledge of any effort by Mr. Lazarenko regarding this
9  agreement.

10  Additionally, what is "known" to a witness in general about a particular matter is
11  irrelevant. Any marginal relevance is likewise outweighed by its prejudicial effect, and should
12  be excluded pursuant to FRE 403.

13  **3. Objection, based upon lack of sleep. Karpovtsev 17:14-17.**

14  Again we have another instance of defendant participation in the deposition thwarted by
15  lack of sleep. Mr. Lazarenko had not slept for forty-seven hours when Mr. Karpovtsev's
16  testimony commenced. Were this a trial and the defendant unable to sleep because of the
17  conditions of his confinement, it is doubtful that the court would proceed until the defendant had
18  gotten at least some rest so as to be able to participate in a meaningful manner. There is no
19  reason why we should treat this testimony, which is the functional equivalent of trial testimony,
20  in a different manner. Again, the subject matter was peculiarly within Mr. Lazarenko's
21  knowledge -- that is, the witness' testimony about the procedures used in a Ukrainian
22  governmental agency.

23  **4. Objection, nonresponsive. Karpovtsev 15:21-16:25.**

24  Simply put, the witness does not even come close to answering the questions posed,
25  instead volunteering evidence that he apparently believes is damaging to Mr. Lazarenko.
26  / / /
27  / / /
28  / / /

26

1    **5. Objection, nonresponsive. Karpovtsev 17:4-15.**

2    **6. Objection, nonresponsive. Karpovtsev 19:6-15.**

3    **7. Objection, nonresponsive, hearsay. Karpovtsev 22:3-17.**

4    The witness is asked what Mr. Shkidun told him; that part of his answer that is responsive
5    contains the hearsay statement that Shkidun told him that Mr. Lazarenko was urging that he
6    proceed immediately. After that, the balance of the answer is nonresponsive insofar as it
7    concerns not what Mr. Shkidun told him, but what he told Mr. Shkidun.

8    **8. Objection, nonresponsive, lack of foundation, contains impermissible conclusion**
9    **or opinion. Karpovtsev 22:24-23:4**.

10    This answer is likewise volunteered by the witness and does not respond to any question.
11    Its assertion that agency approval is required appears to be nothing more than a personal opinion,
12    and its basis in the witness' knowledge of the rule and procedures applicable to this type of
13    transaction does not appear in the evidence.

14    **9. Objection, nonresponsive, lack of foundation, contains impermissible conclusion**
15    **or opinion. Karpovtsev 23:9-20.**

16    The witness describes the subject matter of the contract, as called for by the question.
17    However, he then goes on to opine, without a basis in evidence, on the reasonableness of the
18    price set by the contract, and the need for Foreign Trade Ministry approval.

19    **10. Objection, nonresponsive. Karpovtsev 27:3-21.**

20    The witness is asked about his job responsibilities, and after explaining, again detours off
21    into attempting to inset damaging evidence into the record that has nothing to do with these
22    responsibilities.

23    **11. Objection, nonresponsive. Karpovtsev 29:24-30:12.**

24    **12. Objection, nonresponsive. Karpovtsev 30:21-32:2**.

25    **13. Objection, hearsay. Karpovtsev 33:5-22.**

26    The statements attributed to Shkidun regarding Mr. Lazarenko instructing him that the
27    contract was confidential are hearsay.

28

27

1    **14. Objection, hearsay. Karpovtsev 34:6-9.**

2        The question is leading and suggests what the witness ultimately testified to -- that he was

3    told that the contract could not be discussed at all.

4    **15. Objection, nonresponsive. Karpovtsev 34:11-17.**

5        The witness is queried as to his response to a statement. He did not respond; however his

6    answer goes on to offer opinions and reactions on his part that were not part of any response.

7    **16. Objection, vague, assumes facts not in evidence. Karpovtsev 34:21-35:3.**

8        The question refers to a single conversation in which the witness, Mr. Shkidun, and Mr.

9    Pologhentsev participated. The evidence, however, is that there was a separate conversation with

10   each of these individuals.

11   **17. Objection, nonresponsive. Karpovtsev 38:25-39:11.**

12       The witness is asked what Mr. Shkidun told him to wait for; his response does not

13   address this issue, but rather Mr. Pologhnetsev's impatience.

14   **18. Objection, leading, argumentative, contain impermissible conclusion and**

15   **opinion. Karpovtsev 39-13-18.**

16       That the witness and his colleagues concluded as a matter of opinion that Mr.

17   Pologhentsev reported to Mr. Lazarenko is suggested by the question. The conclusion is based

18   upon speculation, and is just a matter of opinion.

19   **19. Objection, nonresponsive, calls for impermissible conclusion and opinion,**

20   **speculation, irrelevant, prejudicial effect outweighs probative value under FRE 403.**

21   **Karpovtsev 39:22-41:3.**

22   **20. Objection, hearsay, nonresponsive. Karpovtsev 42:91-8.**

23       The question calls for information regarding the context in which a statement was made.

24   The response does not address that issue, and instead contain Mr. Shkidun's hearsay statements

25   about the latter's conversation with Mr. Lazarenko.

26   **21. Objection, leading. Karpovtsev 41:21-43:2.**

27       The questions clearly suggest to the witness that he was sitting in Mr. Shkidun's office at

28   the time of the telephone conversation and Mr. Shkidun informed him of its contents

28

1  immediately. This witness is so obviously eager to offer incriminating evidence that the risks
2  attendant to leading are particularly significant.

3  **22. Objection, nonresponsive, hearsay. Karpovtsev 43:13-44:7.**

4  The witness is asked to describe Mr. Shkidun's appearance during the telephone call. He
5  does so, but then goes on to recount Mr. Shkidun's hearsay statements made during a subsequent
6  confrontation with the witness.

7  **23. Objection, nonresponsive, hearsay. Karpovtsev 44:9-21**

8  The witness is asked to describe Mr. Shkidun's appearance. He does so, but then
9  nonresponsively goes on to describe hearsay statements made by him to Mr. Shkidun.

10  **24. Objection, nonresponsive, hearsay, lack of foundation. Karpovtsev 45:20-46:6.**

11  The witness is asked whether his conversation with Mr. Shkidun continued. He responds,
12  but then goes on to recount threats at a later time. Additionally, he does not establish that he had
13  personal knowledge of these threats.

14  **24. Objection, nonresponsive, hearsay. Karpovtsev 48:20-49:7.**

15  Asked merely whether he had additional conversations with Mr. Shkidun, the witness
16  instead attempt to nonresponsively introduce further testimony about threats.

17  **25. Objection, nonresponsive. Karpovtsev 49:19-50:6.**

18  The witness is asked whether anyone else was present during the conversation he
19  describes with Mr. Shkidun. He replies that there was not, but then goes on to volunteer that he
20  was present when Mr. Shkidun threatened Mr. Vorona.

21  **26. Objection, leading. Karpovtsev 50:11-25.**

22  **27. Objection, nonresponsive. Karpovtsev 51:13-16.**

23  The question calls for information regarding the location of a conversation; the answer
24  contains information regarding the witness' reasons for supplying his testimony.

25  **28. Objection, nonresponsive, hearsay, lack of foundation. Karpovtsev 53:14-24.**

26  The question calls for whether there were additional conversations with Mr. Shkidun.
27  The answer includes statements attributed to Mr. Shkidun urging Vorona to sign based upon
28  Karpovtsev's signature. It does not appear that Mr. Karpovtsev had personal knowledge of these

29

1  statements, and they were probably recounted to him by Mr. Vorona or someone else.

2  **29. Objection, nonresponsive. Karpovtsev 61:8-13.**

3  Asked whether he ever told Mr. Shkidun of the approval by the Ministry of Foreign
4  Trade, he does not respond, and instead questions and argues with the questioner regarding why
5  he has concluded there was such approval.

6  **30. Objection, impermissible conclusion or opinion, lack of foundation, hearsay,**
7  **nonresponsive. Karpovtsev 64:20-65:10.**

8  Asked whether he ever discussed with Shkidun the 'atter raising this issue with Mr.
9  Pustovoitenko, he says that he did, but then nonresponsively goes on to offer his opinion as to
10 why Mr. Shkidun did not do so, his conclusion that Mr. Shkidun was closely communicating
11 with Mr. Lazarenko, and his conclusion that Mr. Shkidun routinely ignored Mr. Pustovoitenko.

12 **31. Objection, nonresponsive, impermissible conclusion and opinion. Karpovtsev**
13 **64:20-65:12.**

14 In response to the question why he suggested Mr. Shkidun talk with Mr. Pustovoitenko,
15 the witness at first states that he did so to prevent the signing of the contract. However, he
16 nonresponsively adds that Mr. Shkidun was exceeding the sphere of his authority in approving
17 the contract.

18 **32. Objection, nonresponsive, impermissible conclusion and opinion. Karpovtsev**
19 **65:13-66:3**

20 The witness offers his opinion regarding the relative responsibilities of Mr.
21 Pustovoitenko, Mr. Lazarenko and Mr. Shkidun, without a foundation as to the basis for this
22 opinion -- that is, whether he reached the opinion based upon the formal rules, or had come to
23 believe this only as a matter of personal opinion. Additionally, if there is any slight probative
24 value, it is outweighed by the prejudicial effect of Mr. Karpovtsev's testimony.

25 **33. Objection, nonresponsive. Karpovtsev 67:5-11.**

26 The witness is asked for Mr. Pustovoitenko's proper role in a contract such as the contract
27 for the prefabricated home, and instead responds that Mr. Pustovoitenko was unaware of this
28 specific contract, and that the "axis" was Mr. Lazarenko and Mr. Shkidun.

30

1  **34. Objection, nonresponsive, impermissible conclusion and opinion, speculation,**
2  **lack of foundation. Karpovtsev 67:20-68:7.**

3  Asked again about Mr. Pustovoitenko's role, the witness responds that it "could" have
4  been his direct responsibility, then opines that even if Pustovitenko had been asked to approve
5  the contract, he would have done so rather than contradict Mr. Lazarenko.

6  **35. Objection, leading and argumentative. Irrelevant. Lack of foundation in**
7  **personal knowledge, hearsay. Probative value outweighed by prejudicial effect.**
8  **Karpovtsev 68:12-69:7.**

9  After leading the witness into restating his opinion that as a citizen he was against the
10  contract, the questioner then elicits his opinion as to why this is the case. He offers his opinion
11  as to the price, then as to the quality of the homes for the geographical region occupied by
12  Ukraine, and then talks about subsequent expenses. As to the expenses, there is no foundation
13  laid as to why he believes the expenses were as stated. This is similarly true of his opinion
14  regarding the climate fitness of the homes and price. The "as a citizen" language is
15  argumentative. Finally, particularly in light of this court's ruling regarding discovery, the quality
16  of the homes or the merits of the contract are not issues here and are not relevant. If they in fact
17  have some relevance, it is marginal, and outweighed by the prejudicial effect and time
18  consumption of placing this issue before the jury.

19  **36. Objection, hearsay, nonresponsive. Karpovtsev 69:16-25.**

20  The statements attributed to Mr. Shkidun regarding the contract being the business of
21  Pavel Lazarenko are hearsay. Additionally, the question calls for Mr. Karpovtsev's words to Mr.
22  Shkidun, and not for Mr. Shkidun's response.

23  **37. Objection, hearsay, asked and answered. Karpovtsev 70:11-15.**

24  The statements attributed to Mr. Shkidun regarding the contract being the "sphere of Mr.
25  Lazarenko" are hearsay. If the last response comes in, then this has been asked and answered.

26  **38. Objection, vague, assumes facts not in evidence, impermissible conclusion and**
27  **opinion, nonresponsive. Karpovtsev 71:4-15.**

28  The question calls for the witness to assess Mr. Lazarenko's "role" in the contract. The

31

1   term "role" is vague. In light of the witness' prior testimony which established that the witness

2   had no contact with Mr. Lazarenko and heard about his involvement, if at all, from Mr. Shkidun,

3   this is nothing more than an invitation for the witness to give his opinion regarding Mr.

4   Lazarenko's guilt. The witness then responds with his speculation as to what he believed Mr.

5   Lazarenko expected his profits to be from this contract.

6      **39. Objection, nonresponsive, lack of foundation. hearsay, impermissible conclusion**

7   **and opinion. Karpovtsev 71:17-24.**

8      The witness is asked about what he personally knows about Mr. Lazarenko's role in the

9   contract. From his prior testimony it is clear he has no personal knowledge of this, and this

10  response confirms that. All he can offer are his conclusions regarding what Mr. Lazarenko may

11  have done. As the witness says, "What else do I know about that?"

12     **40. Objection, irrelevant, speculation, prejudicial value outweighs probative effect,**

13  **nonresponsive. Karpovtsev 73:24-75:4.**

14     Asked about contact with the defense, the witness nonresponsively details an instance in

15  which the Prosecutor General of Ukraine revealed the witness' cooperation in a speech in

16  Parliament, states his negative reaction to that, and speculates that "those who used to rob our

17  country" might cause him physical harm. There are no fact referenced to support this opinion.

18  **KARPOVTSEV VOLUME 2, 5/29/03**

19     **41. Move to strike as nonresponsive. Karpovtsev 88:2-8.**

20     The witness' remarks regarding "wasting our time" are nonresponsive.

21     **42. Move to strike as nonresponsive. Karpovtsev 91:23-92:13.**

22     Both the witness' comments regarding his failure to see the reasons for the inquiry and the

23  GPO representative's instruction to leave the area of politics should be stricken. The political

24  system, the witness' attitudes and experiences with authority and the exercise of state power, and

25  any perception that he might have that adverse testimony could provoke adverse consequences

26  from an aribtrary governmental authority are all fair game for cross-examination, particularly in

27  light of the decision to conduct these depositions using the GPO.

28

32

1    **43. Objection to restriction of cross-examination and interference by the GPO**

2    **representative. Karpovtsev 101:6-14; 104:2-106:10.**

3    Counsel sought to elicit the witness' life experience with dictatorial government and the

4    imposition of sanctions against those who have opposed such governments. The witness,

5    resisting this, stating that politics had nothing to do with this case. While the witness was being

6    nonresponsive, the GPO representative encouraged him in this course and obstructed counsel's

7    questioning, stating, after counsel attempt to elicit a yes or no answer after repeated

8    nonresponsive answers on direct and cross examination:

9
10
11
12
> I remind you once again that the witness -- the witness says -- the witness only gives the information he thinks reasonable and relevant. And you are not -- you may not force the witness to give certain answers, because he'd been warned about criminal liability for perjury, and he -- and this forcing the witness is not in line, contradicts the Ukrainian legislation.

13    **Karpovtsev, 5/29/03, 101:6-14.**

14    Shortly thereafter the GPO representative called a recess and then spoke with counsel and

15    explained a witness' obligations under Ukrainian law (at least in his estimation):

16
17
18
19
20
21
> The witness made a statement and you heard the statement. He said that he did not want to answer such questions. He has the right not to answer the questions that have nothing to do with the case. If the deposition continues like this, the situation could change -- could change drastically. The witness might stop the deposition and go. In this case, I will have no legal grounds for returning him and making him testify. If we are to avoid this situation, you have to . . . word your question in accordance with the topic of this deposition. This is the reason I made this break. I made this break to notify you about this.

22    **Karpovtsev, 5/29/03, 105:21-106:10.**

23    Thus, according to Mr. Ukrainets, if a witness deems a question to be irrelevant during an

24    interrogation, he may simply refuse to answer it, and then leave, and the interrogator cannot

25    arrest him. This is hardly the type of proceeding in which examination is done in a manner in

26    which it would be conducted at trial.

27    Rather than attempt to secure a trial-type cross-examination, the government expressed to

28    the following:

1       I'm going to state for the record that the government objects to this
        whole line of questioning as way beyond the scope of the direct
2       examination and totally irrelevant. So I think we are wasting time
        on it.

3
**Karpovtsev, 5/29/03, 11:22-25.**
4
        Even worse, the United States endorsed the Ukrainian idea (which was never clearly
5
stated until the cross had begun) of not having the witness called back and having all cross
6
examination end by 2:30 p.m. Karpovtsev, 5/29/03/ 111:1C-20. Thus, even if the witness
7
continued to stonewall and go on nonresponsively for much of the remaining time, cross was
8
going to end. Even then, the GPO representative refused to commit himself to a cut off time.
9
**Karpovtsev, 5/29/03, 111:13-25.**
10
        The witness rose to the bait after he returned to the room:[9]
11
                If it is allowed, I would like to make a statement. . . . This is the
12              statement for Mr. Ukrainets. I am not going to answer these
                irrelevant questions and please don't ask me such kind of
13              questions.

14      The GPO responded:

15              Mr. Rosenthal, I'm asking you to ask questions that are relevant to
                the case within the framework of which we are doing this
16              deposition.

17  Counsel was then foreclosed from further questioning. **Karpovtsev, 5/29/03, 114:5-116:16.**[10]

18

19      [9] Apparently forgetting that there were two sets of comments on the issue, government
20  counsel stated incorrectly that the witness had not been in the room when Mr. Ukrainets made his
    original statement regarding a witness' obligation. **Karpovtsev, 5/29/03, 112:2-9.**
21

22      [10] Counsel's final question to Mr. Karpovtsev was asked with a good faith belief that it
    would yield relevant evidence. As Mr. Karpovtsev noted during his direct examination, he had
23  met with counsel previously. In fact, they had spent several hours together, and because Mr.
    Karpovtsev did not want to talk about the case specifically, they talked about several other topics.
24  Had counsel been able to question Mr. Karpovtsev, he possesses a good faith belief that he would
    have been able to establish that Mr. Karpovtsev's real nationality was Jewish, that in fact he had
25  lost family members in genocide, that as a Jew living in the Soviet Union he had learned to
26  negotiate his way around the repressive arm of the state and attain a position of prominence
    despite being of a nationality that hampered his ability to be a Party member. (See Karpovtsev,
27  5/29/03, 97:2-98:14: " . . . I was the only one on the State Planning Committee, and there are
28  about 800 people employed in that committee at that time. . . . The fact that I was the only one

34

1      The pattern continued throughout the examination. At one point defense counsel sought

2 to cross examine Mr. Karpovtsev about a statement he had made on direct that at a confrontation

3 between Shkidun and the witness, Shkidun had admitted that Mr. Lazarenko called and

4 threatened him. **Karpovtsev, 5/27/03, 39:22-43:17.** Counsel attempted to impeach the witness

5 with the protocol from the confrontation in which Shkidun stated that he had gotten a telephone

6 call from Mr. Lazarenko, but said nothing about it being threatening. **Karpovtsev, 5/29/03,**

7 **152:7-154:16.** The GPO representative referred to counsel's questioning on this subject as

8 "indecent" and stated again, all in the presence of the witness: "The witness is having the right to

9 answer in a way he or she prefers."[11] The GPO representa.ive castigated counsel when he

10 attempted to stop the witness from volunteering nonresponsive statements. **Karpovtsev,**

11 **5/29/03, 187:13-25.**

12      About one half hour before the next witness was to be called the GPO interrupted defense

13 counsel and asked how much more time he had. Counsel replied that it was at least thirty

14 minutes, and detailed some of the areas on which he had not yet examined. The GPO then

15 terminated the cross-examination. **Karpovtsev, 5/29/03, 223:5.**

16      **42. Move to strike as nonresponsive. Karpovtsev, 5/29/03, 116:3-16.**

17      **43. Move to strike as nonresponsive. Karpovtsev, 5/29/03, 164:9-165:8.**

18      **44. Move to strike as nonresponsive. Karpovtsev, 5/29/03, 191:18-23.**

19      **45. Move to strike as nonresponsive. Karpovtsev, 5/29/03, 193:18-192:2.**

20      **46. Move to strike as nonresponsive. Karpovtsev, 5/29/03, 202:18-25.**

21

22 _____

23 amongst 800 people means that being a member of the Communist Party was a real important
thing at that time. . . . Of course, they had to obtain an approval from the Communist Party in
24 order to appoint me. But I was a good expert. That's it."

25     [11] Contrary to the GPO's characterization, this was not a disagreement about whether the
witness could be compelled to answer with a simple yes or no. Counsel did not ask for such a
26 response during this interchange. Rather, it was Karpotsev that brought it up, stating, "That's
what I used to do. I used to make sure that the . . . party that is questioning me not to receive just
27 yes or no questions, but to receive the detailed and profound answer." **Karpovtsev, 5/29/03,**
28 **154:6-9.**

35

1    **47. Move to strike as nonresponsive. Karpovtsev, 5/29/03, 211:23- 212:4.**

2    **48. Move to strike as nonresponsive. Karpovtsev, 5/29/03, 212:22-213:8.**

3    **49. Objection, leading. Karpovtsev, 5/29/03, 231:13-16.**

4    **50. Objection to being compelled to conclude cross examination without the original**

5    **of letter 54-77.**

6    Argument on this point is found at the end of **Minchenko, 5/30/03, at 164:23-166:23.**

7    **VIII. SPECIFIC OBJECTIONS REGARDING THE WITNESS MINCHENKO**

8    **MINCHENKO VOLUME I, 5/29/03**

9    **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

10    **Proceedings Without Risking Criminal Prosecution. Minchenko, 5/29/03, 6:3-21.**

11    Defendant incorporates by reference his argument previously made.

12    **2. Objection based upon the witness' refusal to be sworn. Minchenko, 5/29/03, 8:12-**

13    **10:9.**

14    Defendant incorporates by reference his argument previously made.

15    **3. Objection, leading, nonresponsive. Minchenko, 5/29/03, 26:23-27:13**

16    Government counsel asks a classic leading question as to whether the witness'

17    recollection was fresher at the time he gave a statement contained in a protocol. The witness

18    does not respond to the question, and instead makes a general statement that he confirms

19    everything he stated in the protocol.

20    **4. Objection, leading, nonresponsive. Minchenko, 5/29/03, 37:21-38:17.**

21    **VOLUME 2, 5/30/03**

22    **5. Objection, leading. Minchenko, 5/30/03, 60:13-20.**

23    **6. Objection to GPO representative providing answers to the witness. Minchenko,**

24    **5/30/03, 69:14-70:10.**

25    This should be considered in the context of defendant's general objection to GPO

26    participation.

27    / / /

28    / / /

1  **7. Objection, argumentative, leading, calling for an opinion and conclusion.**
2  **Minchenko, 5/30/03, 92:24-93:24.**

3  The questioner knows that the answer will be no, and this is but a way to argue that Mr.
4  Lazarenko was not entitled to receive money connected to UESU, rather than a question intended
5  to elicit proof. Whether Mr. Lazarenko had a "right" to receive money from UESU is a matter of
6  opinion and not a matter of fact.

7  **8. Objection, calling for an opinion and conclusion.  Minchenko, 5/30/03, 92:24-**
8  **93:24.**

9  Mr. Minchenko's opinion as to whether or not certain conduct was proper is not properly
10  admitted.

11  **9. Objection, vague. Minchenko, 5/30/03, 156:13-17.**

12  **10. Objection, argumentative, assumes facts not in evidence. Minchenko, 5/30/03,**
13  **156:19-157:20.**

14  It is not proper for counsel to select particularly provocative facts which in isolation seem
15  to support her case and then posit them to a witness who counsel knows knows nothing of such
16  facts.

17  **IX. SPECIFIC OBJECTIONS REGARDING THE WITNESS KLESHNYA**

18  **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**
19  **Proceedings Without Risking Criminal Prosecution. Kleshnya, 7:4-18.**

20  Defendant incorporates by reference his argument previously made.

21  **2. Objection based upon the witness' refusal to be sworn. Kleshnya, 9:13-21.**

22  Defendant incorporates by reference his argument previously made.

23  **3. Objection, hearsay. Kleshnya, 28:12-22.**

24  The witness recounts the report he received from his experts regarding a proposed deal to
25  replenish the State Reserve. Their statement to him that the prices are too high is hearsay.

26  **4. Objection, nonresponsive, leading. Kleshnya, 33: 12-18.**

27  The question is: "Who is Julya Tymoshenko?" The witness answered by saying at first
28  that Mr. Lazarenko insisted on his meeting with her.

37

1  **5. Objection, hearsay. Kleshnya, 36:19-24.**

2  The witness "heard" that Mr. Lazarenko was "not very glad."

3  **6. Objection, narrative. Kleshnya, 36:19-37:19.**

4  **7. Objection, nonresponsive. Kleshnya, 43:13-44:15.**

5  The question is whether Ob'ednannya performed under the contract. The witness

6  answers, then nonresponds about regularly informing the defendant about this, and recounts the

7  defendant's responses to this information. His response then veers off into expressions of

8  opinion as to certain officials based upon facts for which a foundation has not been laid, and a

9  description of a plan that he had for punishing those responsible.

10  **8. Objection to interference by the GPO in his examination and being foreclosed**

11  **from examining the witness regarding his support for President Kuchma, defendant's**

12  **political enemy. Motion to strike witness' testimony. Kleshnya, 100:11-102:24.**

13  This line of inquiry is clearly appropriate given the facts of this case and the defendant's

14  history. However, the GPO representative actively interfered in defense counsel's examination,

15  and forcefully told defense counsel to ask "questions relevant to the case."

16  **9. Objection to additional foreclosure of cross examination regarding awards**

17  **received from the witness, Kleshnya, 112:19-113:8. Motion to strike witness' testimony.**

18  This line of questioning would establish to the jury the witness bias as a long time

19  supporter and member of Ukraine's "coercive structures."

20  **10. Objection, nonresponsive. Kleshnya, 119:3-11.**

21  **11. Objection to additional foreclosure of cross examination regarding awards**

22  **received from the witness, Kleshnya, 125:7-22. Motion to strike witness' testimony.**

23  Defense counsel attempted to cross examine on a subject that went directly to bias: the

24  witness' fear of the GPO. Counsel had barely gotten a question out when he was met by an

25  objection from the government, and the following comment from Mr. Ukrainets: "Mr.

26  Rosenthal, please ask questions that are substantive to the case. If you don't have any questions,

27  please let us know." **At the end of the examination, the GPO representative threatened to**

28  **make it impossible for counsel to continue to participate in the depositions. Kleshnya, 138:**

38

1  12-23.

2  **12. Objection to the GPO's summary termination of cross examination. Kleshnya,**
3  **125:7-22. Motion to strike witness' testimony.**

4  Defendant had received numerous additional protocols the day before and was denied a
5  motion for a continuance. With cross examination cut off summarily, he had no opportunity to
6  question the witness regarding these protocols or discuss them with his client. Additionally, at
7  Kleshnya, 151:12-158:5, counsel detailed the specific ways in which the late provision of these
8  documents and the failure to grant him adequate time to cross examine and consult with his
9  client impacted the defense.

10  **X. SPECIFIC OBJECTIONS REGARDING THE WITNESS SHOSTAK**

11  **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**
12  **Proceedings Without Risking Criminal Prosecution. Shostak, 25:14-22.**

13  See arguments made above.

14  **2. Objection based upon the witness' refusal to be sworn. Shostak, 28:11-13.**

15  Defendant incorporates by reference his argument previously made.

16  **3. Objection, compound. Shostak, 50:25-51: 14.**

17  The reference to a single set of prices is confusing, because in fact, there were two sets:
18  the prices that will be paid for goods in the reserve, and the prices that are going to be paid for
19  the goods that will replenish the reserves. It is not clear to which the question refers.

20  **4. Objection, misstates the witness' testimony. Shostak, 57:13-17.**

21  **5. Objection, misstates the witness' testimony. Shostak, 59:9-13.**

22  **6. Objection, leading, misstates the evidence, argumentative. Shostak, 59:9-13.**

23  **7. Objection, argumentative. Shostak, 72:12-13.**

24  **8. Objection, leading, asked and answered, argumentative. Shostak, 72:20-73:4.**

25  **9. Objections Based Upon Lack of Sleep, Shostak, 84:25-86:10.**

26  At the beginning of the deposition the defendant had not slept for forty two hours.  A
27  large quantity of new discovery was furnished only the night before, and there was no chance to
28  review this discovery with the defendant.

1 **XI. SPECIFIC OBJECTIONS REGARDING THE WITNESS DOVZHOK**

2 **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

3 **Proceedings Without Risking Criminal Prosecution. Dovzhok, 5:24-6:8.**

4 See arguments made above.

5 **XII. SPECIFIC OBJECTIONS REGARDING THE WITNESS DUBININ**

6 **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

7 **Proceedings Without Risking Criminal Prosecution. Dubinin, 20:16-21:5.**

8 See arguments made above.

9 **2. Objection based upon the witness' refusal to be sworn. Dubinin, 22:3-18.**

10 See arguments made above.

11 **3. Objection based upon lack of opportunity to conduct meaningful cross**

12 **examination and refusal to allow defendant sufficient time to review newly furnished**

13 **documents.**

14 At the point that witness Dubinin was deposed, two serious problem areas that had

15 presented themselves consistently in the prior days peaked and coalesced to create an untenable

16 situation. Had this occurred with any witness, it would have been unfortunate. However,

17 Dubinin was a particularly poor witness to be at the center of a due process meltdown.

18 A review of the previous thirty pages reveals that the following issues arose repeatedly

19 during the depositions: sleep, or the lack thereof; discovery, and either the absence or abundance

20 of the same at inopportune times. The previous weeks had been nothing if not bizarre: that our

21 system of justice had devolved to the point that the defendant's participation in important legal

22 proceedings in a case of great personal importance occurred while he was deeply fatigued and

23 had repeatedly been awake for periods far longer than twenty-four hours at a time. Documentary

24 discovery, which would otherwise have been available to any defendant for weeks to read

25 carefully and discuss with counsel prior to examining each prosecution witness, was either

26 unavailable or was furnished so late to a defendant so fatigued that meaningful review and

27 discussion was impossible. Hundreds of pages of new statements were being furnished each

28 day, and the defendant was singularly unsuccessful in buying additional time from the GPO and

40

1   the government to allow effective use of that material.

2   If Mr. Lazarenko's participation was critical for any witness, it was Dubinin. Prior to

3   Dubinin, all of the witnesses called either had met Mr. Lazarenko only a few times or had never

4   met him at all. Dubinin, on the other hand, was Mr. Lazarenko's right hand man in

5   Dnepropetrovsk, his home city and *oblast*, and had spent virtually every day with him for years.

6   He was alleged to have been involved, probably unwittingly, in several of the schemes alleged in

7   the Second Superseding Indictment. For example, he had allegedly given word to Nikopol Metal

8   Plant to send to the Van der Ploeg dollar account $2.4 million to buy wheat.

9   On the other hand, Mr. Dubinin was a source of much favorable information about Mr.

10  Lazarenko and the nature of his relationship with Dityatovsky and Kiritchenko, as well as with

11  Agofonov. There was plenty of exculpatory information to mine, given the opportunity.

12  Nevertheless, his proximity to Mr. Lazarenko also made him a high risk witness, because any

13  negative testimony from him would be taken quite seriously by a fact finder. The cross-

14  examination of Dubinin had to be an act of precision.

15  Unfortunately, it was not possible to do such a task under the conditions presented. There

16  were numerous statements and documents in Russian and Ukrainian that arrived in the days

17  before Mr. Dubinin took the stand, and they could not be translated and reviewed and transported

18  back to the United States. Between the time zone differences and Mr. Lazarenko's hyper-

19  exhaustion, it was not possible for him to participate in the kind of lawyer-client cooperation that

20  is critical to the examination of a witness who is close to a defendant.

21  In the end, defendant had no choice but to decline cross examination. It could not be

22  done in a competent manner. The circumstances did not provide a meaningful opportunity for

23  cross examination, and none was waived by the decision not to question at that time. The

24  government is compelled to bring Dubinin back if it wishes to introduce his testimony.

25  Defendant's arguments and the facts in support thereof are set forth at **Dubinin, 5:11-**

26  **18:8.**

27  **XIII. SPECIFIC OBJECTIONS REGARDING THE WITNESS GEIKO**

28  Defendant has not located the transcript of Ms. Geiko's testimony. He will obtain one

41

1 | immediately and file those objections shortly thereafter.

2 | **XIV. SPECIFIC OBJECTIONS REGARDING THE WITNESS LAZAROVICH**

3 | **1. Objection Based Upon Informing the Deponert That She Could Not Discuss**

4 | **These Proceedings Without Risking Criminal Prosecution. Lazarovich, 6:17-17:23.**

5 | See arguments made above.

6 | Additionally, as argued previously, notwithstanding their silence, it is difficult to believe

7 | that the Ukrainian witnesses were too reassured by defense counsel's comments that routinely

8 | followed the GPO admonition. While silence could not be taken as acceptance of counsel's

9 | comments, this witness actually articulated the doubts that counsel suspects others harbored.

10 | DEFENSE COUNSEL: . . . Whatever Mr. Ukrainets may say about your having to ask permission to talk with other people about this does not apply to us.

11 | THE DEPONENT: But, again, I have to make aware the law enforcement of Ukraine, or shall I not?

12 | MR. ROSENTHAL: You don't have to. It's up to you. You don't have to ask his permission. You don't have to tell him that I have talked with you, that is Mr.

13 | Ukrainets. . . . .
THE DEPONENT: I would like to know the opinion of the Ukrainian party.

14 |

The GPO's answer was quite telling, and hardly a ringing endorsement of counsel's remarks:

15 |

16 | INVESTIGATOR UKRAINETS: In fact, what I just warned you about, that admonition does not restrict you in any way to talk to anybody. At the same time you are not supposed to disclose the information you have learned here within this

17 | premises. Still, Mr. Rosenthal is also present here.

18 | Lazarovich, 7:20-9:16.

19 | **2. Defendant objects to the taking of the deposition of a witness who has not been**

20 | **scheduled.**

21 | The government and the GPO decided to call witness Lazarovich three days before she

22 | was scheduled to testify, and without prior notice to the defense. The facts and arguments

23 | regarding this matter are set forth at **Lazarovich, 10:22-11:12; 57:5-63:9.**

24 | **XV. SPECIFIC OBJECTIONS REGARDING THE WITNESS BABIY**

25 | **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

26 | **Proceedings Without Risking Criminal Prosecution. Babiy, 6:23-7:15.**

27 | **2. Objection based upon the witness' refusal to be sworn. Babiy, 8:22-24**

28 | See arguments made above.

1      **3. Objection, argumentative, irrelevant, prejudicial impact outweighs probative**

2      **value. Babiy, 92:21-93:8**.

3      The questioner asks the witness what he knows about the relationship, "if any," between

4      Mr. Lazarenko and UESU, UEI. These questions are not asked on the good faith belief that the

5      witness might know of these things, but rather as an argumentative device for the jury.

6      **XVI. SPECIFIC OBJECTIONS REGARDING THE WITNESS KLYUK**

7      **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

8      **Proceedings Without Risking Criminal Prosecution. Klyuk, 6:23-7:12.**

9      See arguments made above.

10     **XVII. SPECIFIC OBJECTIONS REGARDING THE WITNESS ANDREISHYN**

11     **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

12     **Proceedings Without Risking Criminal Prosecution. Andreishyn, 6:19-7:8.**

13     See arguments made above.

14     **2. Objection based upon the witness' refusal to be sworn. Andreishyn, 6:19-7:8..**

15     See arguments made above.

16     **3. Objection, lack of foundation, hearsay, impermissible conclusion and opinion.**

17     **Andreishyn, 35:19-36:7.**

18     **XVIII. SPECIFIC OBJECTIONS REGARDING THE WITNESS BUZHEYAN**

19     **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

20     **Proceedings Without Risking Criminal Prosecution. Buzheyan, 7:7-20.**

21     See arguments made above.

22     **2. Objection based upon the witness' refusal to be sworn. Buzheyan, 11:18-20.**

23     See arguments made above.

24     **XIX. SPECIFIC OBJECTIONS REGARDING THE WITNESS PAVLYUKOVA**

25     **1.      1. Objection Based Upon Informing the Deponent That She Could Not**

26     **Discuss These Proceedings Without Risking Criminal Prosecution. Pavlyukova, 6:14-7:3.**

27     See arguments above.

28

43

1    **2. Objection based upon the witness' refusal to be sworn. Pavlyukova, 8:22.**

2    See arguments made above.

3    **XX. SPECIFIC OBJECTIONS REGARDING THE WITNESS VELYCHKO**

4    **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

5    **Proceedings Without Risking Criminal Prosecution. Velychko, 7:7-20**

6    See arguments above.

7    **2. Objection based upon the witness' refusal to be sworn. Velychko, 8:22.**

8    See arguments made above.

9    **3. Objection, irrelevant, lack of foundation, hearsay, prejudicial impact outweighs**

10   **probative value. Velychko, 12:10-17.**

11   **4. Objection, nonresponsive, impermissible conclusion, prejudicial value outweighs**

12   **probative effect. Velychko, 43:5-11.**

13   The witness responds to a question regarding whether his factory entered into an

14   agreement with Naukovy Farms by saying yes, and then nonresponsively and conclusorily that it

15   was "under pressure." In fact, this characterization is misleading in light of the totality of the

16   witness' testimony.

17   **5. Objection, argumentative, lack of foundation, contains conclusions and opinions.**

18   **Probative value outweighed by prejudicial effect. Velychko, 47:20-24.**

19   The question only elicits the witness' conclusion that he was under pressure without

20   establishing precisely what the term means. As such, the answer contains an opinion and

21   conclusion, rather than a fact.

22   **6. Objection, nonresponsive, lack of foundation, impermissible conclusion and**

23   **opinion. Velychko, 48:12-50:8.**

24   **7. Objection, nonresponsive, lack of foundation, hearsay. Velychko, 50:10-51:6.**

25   **8. Objection, nonresponsive, argumentative, assumes facts not in evidence, leading.**

26   **Velychko, 48:12-50:8.**

27   The "question" -- "I am not sure I understand what the problem with the quotas was" -- is

28   but an invitation to say that there was a problem, something to which the witness did not

44

1 │ previously testify.

2 │ **9. Objection, leading, nonresponsive. Velychko, 51:25-52:6.**

3 │ **10. Objection, misstates the evidence, prejudicial impact outweighs probative value,**
4 │ **impermissible conclusion and opinion. Velychko, 52:7-22.**

5 │ The question speaks in terms of the witness being "forced" when the witness testified that
6 │ he felt pressured. The witness' answer contains only his conclusions, rather than facts
7 │ recounting the acts that he felt applied the pressure. The reference to being "buried" may be
8 │ misleading, because it implies physical harm, something notably absent from the balance of Mr.
9 │ Velychko's testimony.

10 │ **11. Objection, irrelevant, prejudicial impact outweighs probative value. Velychko,**
11 │ **56:18-21.**

12 │ Whether Mr. Velychko knows what happened to the silicomanganese supplied does not
13 │ go to any disputed issue.

14 │ **12. Objection, leading, assumes facts not in evidence, contain impermissible**
15 │ **conclusions and opinions, nonresponsive. Velychko, 57:18-58:10.**

16 │ The witness did not previously testify that Dubinin was speaking on behalf of Lazarenko.
17 │ It is not clear what he is referring to when he uses the word "mainframe." The portion that states
18 │ that this became one of most urgent issues, the idea was good, and "where is the money" are
19 │ nonresponsive.

20 │ **13. Objection, nonresponsive, impermissible conclusion and opinion, lack of**
21 │ **foundation, calls for facts not within the witness' knowledge. Velychko, 58:17-59:15.**

22 │ This witness cannot give his opinion of the reasons for someone else's "interest" in a
23 │ subject. The portion about Agofonov enjoying the trust of Mr. Lazarenko is all conclusion and
24 │ nonresponsive, and not the result of personal experience, but rather of his conclusions from Mr.
25 │ Agofonov's behavior.

26 │ **14. Objection, lack of foundation, vague, leading, impermissible conclusion and**
27 │ **opinion, nonresponsive. Velychko, 59:24-60:19.**

28 │ The witness again is called upon to divine the state of mind of another person. When he

45

1  does so, he speaks about conduct by Agofonov that he did not personally observe.

2  **15. Objection based upon the GPO foreclosing the defendant from being able to**
3  **contact attorney by telephone, one of the bases upon which these depositions were ordered.**
4  **95:22-25.**

5      The cell phone supplied by the government so the defendant could contact his counsel
6  rang during this deposition. This was not the first time that a cellular phone rang; the
7  government's phones rang on several occasions. However, here, for the first time, the GPO
8  representative ordered counsel to turn off his phone, despite the fact that counsel was the only
9  person who was supposed to have a live cellular telephone. This resulted in witness examination
10  in which the client could not alert or contact counsel, and it was contrary to the deposition
11  arrangements that were supposed to be in place. As such, this deposition did not occur as
12  provided for by law, and its results cannot be admitted. See argument at **Velychko, 116:22-**
13  **120:16.** Most disturbing is the government's refusal to remind the GPO that the use of the cell
14  phone was permitted under these arrangements.

15  **XXI. SPECIFIC OBJECTIONS REGARDING THE WITNESS ZHMURENKO**

16  **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**
17  **Proceedings Without Risking Criminal Prosecution. Zhmurenko, 5:21-6:10.**

18      See arguments above.

19  **2. Objection based upon the witness' refusal to be sworn. Zhmurenko, 8:12.**

20      See arguments made above.

21  **3. Objection, leading.  Zhmurenko, 29:3-12.**

22      When the witness declines to identify Agofonov's signature, the questioner suggests that
23  he may recognize it because he has seen it before, at which point the witness says the signatures
24  are similar.

25  **4. Objection, assumes facts not in evidence.  Zhmurenko, 34:9-14.**

26  **5. Objection, assume facts not in evidence.  Zhmurenko, 43:3-9.**

27      The question refers to responses to interrogations by the GPO as testimony. This is
28  misleading insofar as it suggests that the interrogations were judicial proceedings.

46



1     **6. Objection based upon the GPO foreclosing the defendant from being able to**

2 **contact attorney by telephone, one of the bases upon which these depositions were ordered.**

3 **Zhmurenko, 127:11-19.**

4     This was compounded by the fact that the GPO representative did not allow counsel to

5 call his client before terminating the examination.

6 **XXII. SPECIFIC OBJECTIONS REGARDING THE WITNESS ANTONOV**

7     **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

8 **Proceedings Without Risking Criminal Prosecution. Antonov, 26:9-23**.

9     See argument above.

10     **2. Objection based upon the witness' refusal to be sworn. Antonov, 28:15-20.**

11     See arguments made above.

12     **3. Objection, nonresponsive. Antonov, 47:21-48:18.**

13     The witness is asked whether the defendant had the authority to approve or disapprove

14 the issuance of quotas; his answer evades the subject, instead giving a vague characterization of

15 Mr. Lazarenko's responsibilities. He does not answer the question of whether the defendant

16 could issue orders to the committee, again speaking off the subject.

17     **4. Move to strike as nonresponsive. Antonov, 82:24-83:10.**

18     The witness' statements regarding counsel should be stricken.

19 **XXIII. SPECIFIC OBJECTIONS REGARDING THE WITNESS MIKHANEV**

20     **1. Objection Based Upon Informing the Deponent That He Could Not Discuss These**

21 **Proceedings Without Risking Criminal Prosecution. Mikhanev, 5:15-21**

22     See argument above.

23     **2. Objection based upon the witness' refusal to be sworn. Mikhanev, 7:22-24.**

24     See arguments made above.

25     **3. Objection, irrelevant, nonresponsive, prejudicial impact outweighs probative**

26 **value. Mikhanev, 19-24.**

27     The witness' assertion of his right not to answer should not be placed before the jury.

28

47



1  **XXIV. SPECIFIC OBJECTIONS REGARDING THE WITNESS MARTINOVSKY**

2      Defendant has not yet received a transcript of Mr. Martinovsky's testimony. He will

3  obtain one immediately and file those objections shortly thereafter.

4  **XXV. SPECIFIC OBJECTIONS REGARDING THE WITNESS HALEULINA**

5      **1. Objection Based Upon Informing the Deponent That She Could Not Discuss**

6  **These Proceedings Without Risking Criminal Prosecution. Haleulina, 5:15-21.**

7      See argument above.

8      **2. Objection based upon the witness' refusal to be sworn. Haleulina, 7:9-16**

9      See arguments made above.

10     **3. Objection, argumentative, improper impeachment. Haleulina, 32:25-38:22**.

11     The witness is asked a series of questions about a transaction she does not remember and

12 counsel then has her testify to a prior statement in which she also states she does not remember.

13 The questioning regarding the statement is argumentative. The questioning about the prior

14 statements is improper impeachment, insofar as there is no inconsistency between the prior

15 statements and the witness' testimony.

16     **4. Objection, argumentative, calls for speculation. Haleulina, 102:25-103:5.**

17 Dated: September 26, 2003           Respectfully submitted,

18                               HAROLD J. ROSENTHAL
                                 DENNIS P. RIORDAN

19

20

21

22                               BY: HAROLD J. ROSENTHAL

23                               Attorneys for Defendant
                                 PAVEL LAZARENKO

24

25

26

27

28