1 | KEVIN V. RYAN (CSBN 118321)
United States Attorney

2

3 | ROSS W. NADEL (CSBN 87940)
Chief, Criminal Division

**FILED**

4 | MARTHA BOERSCH (CSBN 126569)
JONATHAN R. HOWDEN (CSBN 97022)

JAN 3 0 2004

5 | PETER AXELROD (CSBN 190843)
Assistant United States Attorneys

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

7 | HALLIE A. MITCHELL (CSBN 210020)
Trial Attorney, U.S. Department of Justice

8 | 450 Golden Gate Avenue, Box 36055
San Francisco, California 94102

9 | Telephone: (415) 436-7200

10 | Attorneys for Plaintiff

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

SAN FRANCISCO DIVISION

14

15

UNITED STATES OF AMERICA,               )        No. CR 00-0284 MJJ

16                                       )

      Plaintiff,                         )        MOTION IN LIMINE TO ADMIT

17                                       )        STATEMENTS OF YULIA

      v.                                 )        TYMOSHENKO AS CO-CONSPIRATOR

18                                       )        STATEMENTS

PAVEL LAZARENKO,                         )

19                                       )        Date: February 6, 2004

      Defendant.                         )        Time: 9:30 am

20 _____      )        Courtroom: Hon. Martin J. Jenkins

21 | The United States hereby moves in limine to admit statements made by Yulia

22 | Tymoshenko, an un-indicted co-conspirator, during the course of and in the furtherance of the

23 | conspiracy and the scheme to defraud.

24 | //

25 | //

26 | //

27 | //

28 | //

   | //

1

ARGUMENT

2

I. THE STATEMENTS OF YULIA TYMOSHENKO, A NON-TESTIFYING CO-
CONSPIRATOR, ARE ADMISSIBLE IN EVIDENCE UNDER FED. R. EVID. 801(d)(2)

3

A.    Legal Authority

4

Under Fed. R. Evid. 801(d)(2)(E), "a statement by a coconspirator of a party during the

5

course of and in furtherance of the conspiracy" is not hearsay. United States v. Crespo de Llano,

6

838 F. 2d 1006, 1017 (9th Cir. 1987). To admit statements of a coconspirator against a

7

defendant, there the government need only establish by a preponderance of the evidence that (1)

8

the declarant and the defendant were members of a conspiracy; and (2) the statements were made

9

during and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175

10

(1987). Once a conspiracy is shown, the prosecution need only present slight evidence

11

connecting the defendant to the conspiracy. United States v. Mason,  658 F. 2d 1263, 1269 (9th

12

Cir. 1981). Under Bourjaily, the requirements of Rule 801(d)(2)(E) and the confrontation clause

13

of the Sixth Amendment are identical. 483 U.S. at 182-84.

14

A conspiracy need not be charged in order to allow the introduction of a co-conspirator's

15

statement under the rule. United States v. Portac, Inc., 869 F. 2d 1288, 1294 (9th Cir. 1989).

16

Participation as an aider and abettor is sufficient, as a concert of action creates a conspiracy for

17

purposes of the evidentiary rule. Id. See also, United States v. LeFever, 798 F. 2d 977, 983

18

(7th Cir. 1986); United States v. Reynolds, 919 F. 2d 435, 439 (7th Cir. 1990); and United States

19

v. Blankenship, 954 F. 2d 1224, 1231 (6th Cir. 1992). Moreover, evidence against one

20

defendant in a conspiracy can properly be considered against another defendant given evidence

21

linking each to the conspiracy. United States v. Nixon,  918 F. 2d 895, 906 (11th Cir. 1990).

22

In determining whether a statement was made "in furtherance of" a conspiracy, the focus

23

is not on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in

24

making the statement. United States v. Zavala-Sierra,  853 F.2d 1512, 1516 (9th Cir. 1988).

25

Thus,

26

When a declarant seek[s] to induce [the listener] to deal with the conspirators or
in any other way to cooperate or assist in achieving the conspirator's common
objective, the declaration may be admissible [as a co-conspirator statement].

27

28

UNITED STATES MOTION IN LIMINE
TO ADMIT COCONSPIRATOR STATEMENTS
[CR 00-0284-MJJ]                              2

Statements concerning activities of the conspiracy, including future plans, also may become admissible when made with such intent.

United States v. Foster, 711 F. 2d 871, 880 (9th Cir. 1983). A statement is "in furtherance" of a conspiracy if it furthers the common objectives of the conspiracy or sets in motion transactions that are an integral part of the conspiracy. United States v. Layton, 720 F. 2d 548, 556-57 (9th Cir.1983), cert. denied, 465 U.S. 1069; 104 S. Ct. 1423; 79 L.Ed. 2d 748 (1984). Statements made to induce enlistment or further participation in the group's activities are considered to be "in furtherance" of the conspiracy. United States v. Dorn, 561 F. 2d 1252, 1256-57 (7th Cir. 1977) (per curiam), overruled on other grounds, United States v. Read, 658 F.2d 1225, 1236, n. 6 (7th Cir. 1981). Likewise, statements made to prompt further action on the part of conspirators are admissible under 801(d)(2)(E), United States v. Dendall, 665 F.2d 126, 133 (7th Cir. 1981), cert. denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed. 2d 140 (1982), as are those made to "reassure" members of a conspiracy's continued existence. United States v. Mason, 658 F.2d 1263, 1270 (9th Cir. 1981). Statements made to allay a co-conspirator's fears are admissible. Eubanks, 591 F.2d at 521, n. 7. Most importantly, statements made to keep co-conspirators abreast of an ongoing conspiracy's activities satisfy the "in furtherance of" requirement. United States v. Eaglin, 571 F.2d 1069, 1083 (9th Cir. 1977), cert. denied, 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978); United States v. Moody, 778 F.2d at 1382 (statements made to "higher ups" of the group are "in furtherance"); see also, Crespo de Llano, 830 F.2d at 1543: (Statements are in furtherance of the conspiracy if they are made to keep a person abreast of the conspirator's activities, to induce continued participation in the conspiracy, or to allay fears.)

A trial court has discretion to vary the order of proof in admitting a co-conspirator's statement; the statement may be admitted prior to the presentation of independent evidence of the conspiracy. United States v. Loya, 807 F. 2d 1483, 1490 (9th Cir. 1987) and United States v. Arbelaez, 719 F. 2d, 1453, 1460 (9th Cir. 1983).

B.    The Charged Conspiracy and the Scheme to Defraud

Count One of the Second Superseding Indictment alleges a conspiracy to launder money

1   among the defendant, Peter Kiritchenko, and others between January 1992 and June 1999. The

2   indictment generally alleges that the defendant and others conspired to launder the proceeds of

3   extortion and fraud through various bank accounts, including accounts in the United States. The

4   indictment alleges conspiracy that as part of the conspiracy Lazarenko, as a government official

5   in Ukraine, would engage in various acts of extortion and fraud, and would receive funds that

6   had been stolen, converted and taken by fraud, and would transfer the proceeds of this activity

7   into bank accounts in Switzerland, Antigua, Poland, the United States, and elsewhere, and that he

8   induced Kiritchenko to assist Lazarenko to open bank accounts in Switzerland, Antigua, Poland,

9   and the United States, and to transfer the proceeds of fraud and extortion into and out of these

10  bank accounts in an effort to conceal and disguise the nature, location, source, ownership, and

11  control of the proceeds of the specified unlawful activity. The conspiracy count incorporates the

12  wire fraud scheme to defraud, which more specifically alleges that the defendant received money

13  and property from individuals and businesses on behalf of whom he was exercising his official

    authority.

14      In particular, with respect to Ms. Tymoshenko, the indictment alleges that in

15  approximately September 1995, Lazarenko, as First Vice Prime Minister of Ukraine, became

16  responsible for the energy section in the Ukrainian government, and that in approximately

17  December 1995, a Ukrainian company called United Energy Systems of Ukraine ("UESU"),

18  which was created on November 20, 1995 by Yulia Tymoshenko, an associate of Lazarenko's,

19  was designated by the Ukrainian government as one of several companies to supply natural gas to

20  Ukraine. UESU was given the authority to distribute natural gas to the Dnepropetrovsk region of

21  Ukraine. From approximately December 1995 until sometime in 1997, UESU received

22  deliveries of natural gas from RAO Gazprom pursuant to contracts entered on December 29,

23  1995 and December 31, 1996 between RAO Gazprom, UESU, and others. Beginning in

24  approximately January 1996, UESU fraudulently conveyed title to the imported natural gas to

25  United Energy International, Ltd. ("UEIL"), an 85% shareholder of UESU that was created on

26  October 17, 1995, in London, England by a Turkish national named Ercument Aksoy, at the

27  direction of Yulia Tymoshenko, and fraudulently diverted to foreign bank accounts belonging to

    UEIL the payments from Ukrainian customers for the natural gas delivered by UESU.

28

UNITED STATES MOTION IN LIMINE
TO ADMIT COCONSPIRATOR STATEMENTS
[CR 00-0284-MJJ]                                    4

The indictment further alleges that between April 8, 1996 and December 31, 1996, rather than pay RAO Gazprom for the delivered gas with the money that had been transferred to UEIL, UEIL transferred approximately $140,000,000 to Somolli Enterprises, a Cypriot company that was registered in Cyprus on October 8, 1992, and was controlled by Yulia Tymoshenko and others. Between April 1996 and June 1997, Somolli Enterprises and UESU transferred a total of approximately $97,000,000 into accounts that were controlled by Kiritchenko in Switzerland, Poland, and the United States, including transfers totaling approximately $13,000,000 to bank accounts in the Northern District of California. Between February of 1996 and September of 1997, the money from Somolli, along with other funds, totaling more than $120,000,000 was transferred from Kiritchenko's accounts into accounts controlled by Lazarenko in Switzerland and Antigua. Thereafter, the indictment alleges, Lazarenko transferred portions of these funds from Switzerland into bank accounts in the Northern District of California, including two transfers of $14,000,000 each on August 1, 1997.

Finally, part of the conspiracy includes the scheme to defraud alleged in Paragraphs 32 to 38 of the indictment, which allege that the defendant, while a government official in Ukraine, exercised his official authority and influence in favor of, and to induce the grant of certain government benefits and privileges to Yulia Tymoshenko's businesses, among others, by taking certain official action, that between 1993 and 1997 he received over $200,000,000 from various companies, including Yulia Tymoshenko's businesses Somolli Enterprises ($84,000,000), UEIL ($65,000,000), and UESU ($13,000,000). The indictment alleges that as a result of these actions, the people and government of Ukraine were deprived of money and of the defendant's right to honest services.

C.     Tymoshenko's Statements and Background

The United States will seek to admit as coconspirator statements under Fed. R. 801(d)(2) the following statements of Yulia Tymoshenko, and reserves the right to offer additional statements if the evidence warrants:

1.     Tymoshenko statements to Neil Flieger, Eric Hoffman, Marika Jurach, and Vitaly Garber

Vitaly Garber and Marika Jurach work for a company called Garber International

UNITED STATES MOTION IN LIMINE
TO ADMIT COCONSPIRATOR STATEMENTS
[CR 00-0284-MJJ]                                                    5

1  Associates. In late 1996 their company was retained by UESU to "assist UESU in combatting

2  allegations in the Western press that it was tied through corruption with politicians in Ukraine,

3  principally to Pavel Ivanovich Lazarenko, the then-Prime Minister of Ukraine." See Garber 302,

4  X000088. Yulia Tymoshenko was his principal contact at UESU, and she explained to Garber

5  that UESU was participating in a new gas distribution system set up by Lazarenko and. Id. She

6  told Garber she wanted to assist Lazarenko's political career and that part of what UESU was

7  hiring Garber to do was to get favorable publicity for Lazarenko.

8  Garber then hired Edelman Public relations in Washington, D.C. to represent UESU.

9  Neil Flieger and Eric Hoffman worked for Edelman and had numerous meetings with Yulia

10  Tymoshenko. Flieger and Hoffman will testify about statements she made to them about the

11  work they were doing for Lazarenko, which UESU was paying for.

12  These statements are in furtherance of the conspiracy because they were made "to induce

13  [the listener] to deal with the conspirators or in any other way to cooperate or assist in achieving

14  the conspirator's common objective," Foster, 711 F. 2d at 880, which in this case was to ensure

15  that the defendant could maintain his political position so that he could continue to render official

16  assistance to UESU in exchange for the money and financial assistance he was getting from

17  UESU.

18  2.    Tymoshenko Statements to Serif Ercument Aksoy, Gravets

19  Tymoshenko also made a number of statements to Serif Ercument Aksoy and Oleksander

20  Gravets that the United States will seek to introduce as co-conspirator statements. Serif

21  Ercument Aksoy was the nominal head of United Energy International ("UEIL") and worked

22  with Tymoshenko in that business. Oleksandr Gravets was one of the founding members of

23  UESU and worked with Tymoshenko in that business. These statements primarily concern the

24  business operations of and relations between UEIL, UESU, and Somolli Enterprises during the

25  course of the conspiracy. Some of the statements concern the defendant's relationship to UESU

26  and his role in the Ukrainian gas market. These statements are in furtherance of the conspiracy

27  and the scheme to defraud because they further the common objectives of the conspiracy and

28

UNITED STATES MOTION IN LIMINE
TO ADMIT COCONSPIRATOR STATEMENTS
[CR 00-0284-MJJ]                                  6

1   scheme and sets in motion transactions that were an integral part of the conspiracy, that is, they
2   were made to further the goal of concealing and disguising the source, location, ownership and
3   control of the funds that were paid to the defendant, and they were made to further the scheme to
4   defraud by enlisting Aksoy and Gravets in that scheme and prompting further action on their part.
5   Layton, 720 F. 2d at 556-57; Dendall, 665 F.2d at 133.

6       The United States also seeks to introduce Tymoshenko's explanation to Gravets in Israel
7   about the payments made to the defendant. These statements were in furtherance of the
8   conspiracy because they were made to reassure Gravets, Mason, 658 F.2d at 170, and to allay his
9   fears. Eubanks, 591 F.2d at 521, n. 7. Furthermore, the statements wer made to induce Aksoy
10  and Gravets to deal with Tymoshenko and to cooperate or assist in achieving the conspiracy's
11  common objective, Foster, 711 F. 2d at 880,

12          3.      Tymoshenko Statements to Andreas Petrou

13      Andreas Petrou was a nominal director of Somolli Enterprises, and it was through Petrou
14  that Tymoshenko, Gravets, and Oleksandr Tymoshenko set up Somolli Enterprises in Cyprus.
15  The United States seeks to introduce Tymoshenko's statements to Petrou as co-conspirator
16  statements made to further the common goals of the conspiracy, that is to set up a corporate
17  structure designed to conceal and disguise the location, source, and ownership of funds paid to
18  the defendant. See Layton, 720 F. 2d at 556-57. Furthermore, the statements were made to
19  induce Petrou to deal with Tymoshenko and to cooperate or assist in achieving the conspiracy's
20  common objective. Foster, 711 F. 2d at 880.

21          4.      Tymoshenko Statements to Andrei Vavilov and other Russian Witnesses

22      Andrei Vavilov was the Russian Deputy Minister of Finance in 1996 and he was a
23  signatory on a contract between the Russian Ministry of Finance, the Russian Ministry of
24  Defense, RAO Gazprom, UESU, and UEIL, pursuant to which UESU agreed to deliver goods to
25  the Russian Ministry of Defense to extinguish its debt to RAO Gazprom for prior deliveries of
26  gas to Ukraine. Vavilov met with Tymoshenko in Moscow, and during that meeting she
27  explained the debt to Vavilov and the reasons why they wanted to execute the agreement.

28

UNITED STATES MOTION IN LIMINE
TO ADMIT COCONSPIRATOR STATEMENTS
[CR 00-0284-MJJ]                                    7

1 Tymoshenko's statements to Vavilov are in furtherance of the conspiracy because the statements
2 were made to induce Vavilov into action that would further the common objectives of the
3 conspiracy, that is, to conceal and disguise the source of the funds that had been paid to the
4 defendant and to advance the common goal of the conspiracy, which was to ensure that in
5 exchange for his official actions, the defendant would receive funds from Tymoshenko and her
6 companies and that his receipt of funds would not be discovered.

7      5.     Tymoshenko Statements to Kleshnya and Shostak

8      Anatoliy Kleshnya and Anatoly Shostak worked at the State Committee for Material
9 Resources of Ukraine. Each testified that the defendant instructed them to enter a contract with
10 UESU for UESU to sell material goods to the government of Ukraine for its reserves. Each will
11 testify about conversations they had with Yulia Tymoshenko regarding the pricing of the goods
12 and the attempts to negotiate a contract. Ultimately no contract was entered because they
13 believed that UESU was overcharging the government for the goods.

14      The government will introduce these statements either as co-conspirator statements or as
15 non-hearsay because they are not admitted for the truth of the matter. These statements were in
16 furtherance of the conspiracy because they advanced a common goal of the conspiracy – to use
17 the defendant's official position to garner benefits for UESU, in exchange for which the
18 defendant received a portion of UESU's profits. Furthermore, the statements are not hearsay,
19 because they are not admitted for the truth of the matter asserted.

20      6.     Other Tymoshenko Statements

21      There may be other statements of Tymoshenko that the United States will seek to admit if
22 they are in furtherance of the conspiracy.

23      D.     The Evidence of a Conspiracy

24      Besides the statements themselves, which, of course, the Court can consider as evidence
25 of the conspiracy, the United States will also introduce a variety of documents and other witness
26 testimony that will demonstrate the existence of a conspiracy and Yulia Tymoshenko's
27 participation in that conspiracy. These records will include bank records from Switzerland, the

28

UNITED STATES MOTION IN LIMINE
TO ADMIT COCONSPIRATOR STATEMENTS
[CR 00-0284-MJJ]         8

1    United States, England, Cyprus and other locations that demonstrate the payment of hundreds of

2    millions of dollars to the defendant by companies controlled by Tymoshenko. It will also include

3    documents from Cyprus, England and Ukraine demonstrating the formation and establishment of

4    bank accounts for of Somolli Enterprises, UESU, and UEIL. The evidence will also include

5    statements of other witnesses describing the relationship between the defendant and UESU and

6    UEIL, testimony of the Swiss bankers about what the defendant told them about money he was

7    receiving from UESU (that it was "commissions"), and Peter Kiritchenko's statements about the

8    defendant's relationship to Tymoshenko and payments that were made by Tymoshenko to the

9    defendant. The evidence will also include official records from Ukraine showing the official

10   action the defendant took for the benefit of UESU or companies controlled by Tymoshenko, such

11   as Directive 100 and the \$200,000,000 guarantee. Finally, it will also include evidence of

12   correspondence between RAO Gazprom and the defendant, and Tymoshenko and RAO

13   Gazprom, regarding UESU's debts for the gas delivered in 1996.

14                                         CONCLUSION

15        For the foregoing reasons and based on the record herein, the United States respectfully

16   moves to admit statements of Yulia Tymoshenko made in furtherance of the conspiracy and

17   scheme to defraud.

18   DATED: January 30, 2004              Respectfully submitted,

19                                        KEVIN V. RYAN
                                          United States Attorney
20

21

22                                        MARTHA BOERSCH
                                          JONATHAN HOWDEN
23                                        PETER AXELROD
                                          Assistant United States Attorneys
24
                                          HALLIE MITCHELL
25                                        Trial Attorney, U.S. Department of Justice

26

27

28

     UNITED STATES MOTION IN LIMINE
     TO ADMIT COCONSPIRATOR STATEMENTS
     [CR 00-0284-MJJ]                          9

1                          CERTIFICATE OF SERVICE

2       The undersigned hereby certifies that she is an employee of the Office of the United States

3 Attorney for the Northern District of California and is a person of such age and discretion to be

4 competent to serve papers. The undersigned further certifies that she caused a copy of:

5       **MOTION IN LIMINE TO ADMIT STATEMENTS OF YULIA TYMOSHENKO**
       **AS CO-CONSPIRATOR STATEMENTS**

6 in the case United States v. Pavel Lazarenko, No. CR 00-0284 MJJ to be served on the party(ies)

7 in this action, address as follow which is the last known address:

8
     DANIEL A. HOROWITZ
9     Attorney At Law
     120-11th Street, 2nd Floor
10    Oakland, CA 94607
     Fax: (510) 893-4451
11
     DENNIS RIORDAN
12    Attorney At Law
     523 Octavia Street
13    San Francisco, CA 94102
     Tele: (415) 431-3472
14    Fax: (415) 552-2703

15    DORON WEINBERG
     Weinberg & Wilder
16    Attorney At Law
     523 Octavia Street
17    San Francisco, CA 94102
     Tele: (415) 431-3472
18    Fax: (415) 552-2703

19    X (By Facsimile), I caused each such document to be sent by Facsimile to the person or
        office of each addressee(s) above.
20
      I declare under penalty of perjury under the laws of the State of California that the
21
foregoing is true and correct.
22
Dated: January 30, 2004
23
                             Pony J. Tu
24                            Legal Assistant (Immigration)
                           U.S. Attorney's Office
25

26

27

28