1  DORON WEINBERG (SBN 46131)
   WEINBERG & WILDER
2  523 Octavia Street
   San Francisco, CA 94102
3  Telephone: (415) 431-3472

4  DENNIS P. RIORDAN (SBN 69320)
   DONALD M. HORGAN (SBN 121547)
5  RIORDAN & HORGAN
   523 Octavia Street
6  San Francisco, CA 94102
   Telephone: (415) 431-3472
7
   DANIEL A. HOROWITZ (SBN 92400)
8  Attorney at Law
   120 - 11th Street, 2nd Floor
9  Oakland, CA 94607
   Telephone: (510) 444-4888
10
   Attorneys for Defendant PAVEL I. LAZARENKO
11

12                  **UNITED STATES DISTRICT COURT**

13              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14

| UNITED STATES OF AMERICA, | ) | No. CR-00-0284 MJJ |
|---|---|---|
| Plaintiff, | ) | **DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT STATEMENTS OF YULIA TYMOSHENKO AS CO-CONSPIRATOR STATEMENTS** |
| vs. | ) | |
| PAVEL IVANOVICH LAZARENKO, | ) | Date: February 11, 2004 |
| Defendant. | ) | Time: 10:00 a.m. |
| | ) | Court: The Honorable Martin J. Jenkins |

   In its Motion in Limine to Admit Statements of Yulia Tymoshenko as co-conspirator statements, the government continues its pattern of treating the Indictment like a Rorschach test in which it can discern anything it chooses in the undefined shapes, and all descriptions, even conflicting ones, are permitted.

   A few examples: in its Opposition to Defendant's Statement of Unavailability and Materiality of Additional Rule 15 Witnesses, filed on or about July 25, 2003, the government opposed as irrelevant defendant's request to obtain evidence regarding issues which it asserted

Defendant's Opposition to Government's Motion In Limine
To Admit Statements of Yulia Tymoshenko as Co-Conspirator
Statements                                                1

1 were not alleged or contemplated in the Indictment. Thus, in its Opposition, the government
2 chastised the defense for claiming that "the government's 'theory is that Mr. Lazarenko
3 intervened in order to benefit UESU.'" The government lectured the defense for
4 misunderstanding and misconstruing the charges, and asserted that in contrast to the proof of a
5 "quid pro quo" arrangement, the government alleged and the evidence would show only that the
6 defendant "took official action that in fact benefitted UESU" while failing to disclose income
7 received from the company. So informed, the Court denied significant discovery requests.

8 Now, in its motion in limine, the government asks to be permitted to introduce Ms.
9 Tymoshenko's statements to Anatoliy Kleshnya and Anatoly Shostak which were in furtherance
10 of the conspiracy because they advanced the common goal of the conspiracy: "to *use* the
11 defendant's official position to garner *benefits* for UESU, *in exchange* for which the defendant
12 received a portion of UESU's profits." (Motion, p.8, lls.15-18 (Emphasis supplied)).

13 So too in its July 25, 2003 Opposition, the government derided defendant for claiming
14 "that the government will attempt to prove that 'Mr. Lazarenko initiated the restructuring of the
15 Ukrainian national gas market,'" asserting that "nowhere in the indictment does the government
16 allege that the defendant *initiated* the restructuring of the energy market. . . ." (Opp. Motion, p.4,
17 lls.13-19 (Original emphasis)). Again, the government opposed defendant's attempt to obtain
18 evidence "that the restructuring of the energy market was 'not accomplished by the defendant'
19 and that it 'resulted from legitimate policy considerations.'" (Ibid.).

20 Now, the government comes forward and seeks to introduce the testimony of Vitaly
21 Garber and Marika Jurach regarding statements in which Tymoshenko "explained to Garber that
22 UESU was participating in a new gas distribution system *set up by Lazarenko* . . . ." (Motion,
23 p.6, lls.4-5 (Emphasis supplied)).

24 Similarly, the government opposed defendant's discovery request in which he sought "to
25 call a number of witnesses who, he claims, will demonstrate either that UESU was not in debt to
26 RAO Gazprom or that any debt was a fiction, and therefore there was no scheme to defraud
27 related to the UESU transactions." Defendant should be denied this discovery, the government
28

Defendant's Opposition to Government's Motion In Limine
To Admit Statements of Yulia Tymoshenko as Co-Conspirator
Statements                2

pronounced, because "whether at the end of the day UESU owed a debt to RAO Gazprom is irrelevant." (Oppo. Motion, p.11, ll.9).

In its current motion, however, the government seeks to introduce the statements allegedly made by Tymoshenko to Andrei Vavilov, the Russian Deputy Minister of Finance regarding a contract pursuant to which "UESU agreed to deliver goods to the Russian Ministry of Defense *to extinguish its debt to RAO Gazprom* for prior deliveries of gas to Ukraine. Vavilov met with Tymoshenko in Moscow, and during the meeting she explained *the debt* to Vavilov and the reasons why they wanted to execute the agreement." (Motion, p.7, lls.22-27 (Emphasis supplied)).

Even more strikingly, the government's request for permission to use Yulia Tymoshenko's statements is fundamentally inconsistent with the position taken in another of its pleadings, the Opposition to Defendant's Discovery Requests Regarding UESU, filed on or about July 18, 2003. In this pleading, which again opposed defendant's discovery requests because of his supposed misunderstanding of the breadth of the Indictment, the government argued that defendant's request for documents and evidence regarding Tymoshenko should be denied because her testimony would not be available for trial in light of her refusal to testify at deposition. As the government said "[S]ince she refuses to testify, the documents have no relevance." (At p.10, n.9). Now, of course, the government seeks to take advantage of Tymoshenko's absence by using her hearsay statements when defendant no longer has a reasonable opportunity to prepare to meet them.

Comparing these and other pleadings, it is clear that the government's theory of prosecution shifts in whatever direction appears necessary to circumvent the Court's rulings and to answer defendant's challenges in order to get its prejudicial evidence before the jury and to block defendant's exculpatory evidence.

As we have demonstrated, in July 2003 the government took the position that this was a simple conflict of interest charge, without quid pro quo, without the exercise of undue influence and without monetary loss. But once the Court ruled that Ukrainian law violations would have to

Defendant's Opposition to Government's Motion In Limine
To Admit Statements of Yulia Tymoshenko as Co-Conspirator
Statements                                          3

be proved, the government asserted that in fact defendant committed such violations, now arguing that defendant was not guilty of a simple conflict of interest, but had received bribes to induce him to take official action. Under this theory, then, defendant and UESU were independent of each other, and the bribery was required to obtain defendant's favorable action on behalf of UESU. Now, however, when the government wishes to introduce Tymoshenko's hearsay statements, we have a new characterization. "She told [Vitaly] Garber she wanted to assist Lazarenko's political career and that part of what UESU was hiring Garber to do, was to get favorable publicity for Lazarenko." (Motion, p.6, lls.5-7). So in this present version, UESU and defendant are confederates working together for a common goal -- the advancement of Lazarenko's political career, and Tymoshenko is Lazarenko's political ally and fervent supporter.

The government also indicates that it wishes to use the testimony of Neil Flieger and Eric Hoffman, whose Washington D.C. public relations firm was hired by Garber on behalf of Tymoshenko, about statements made by Tymoshenko regarding "the work that they were doing for Lazarenko, which UESU was paying for." These statements are alleged to be in furtherance of the conspiracy and were intended "to insure that the defendant could maintain his political position so that he could continue to *render official assistance* to UESU *in exchange* for the money and financial assistance he was getting from UESU." (Opp. Motion, p.6).

While the government's cynical manipulation of the facts and the charges is reason enough to deny the motion in limine, and indeed for greater evidentiary sanctions, the motion must fail on its own terms because the evidence it seeks to admit does not fall within the parameters of the Fed.R.Evid. 801(d)(2)(E) as statements "by a co-conspirator of a party during the course of and in furtherance of the conspiracy."

Under Fed.R.Evid. 801(d)(2)(E), to admit a declarant's statements—whether that declarant is an indicted or unindicted conspirator—the proponent of the statement must demonstrate with some evidence independent of the proffered statement itself (a) the existence of a conspiracy, (b) that the statement was in furtherance of that conspiracy, and (c) the participation in the scheme *both of the party against whom the statement is offered and the declarant*. While a

Defendant's Opposition to Government's Motion In Limine
To Admit Statements of Yulia Tymoshenko as Co-Conspirator
Statements

4

court may rely in part on the statement itself in considering whether the foundational requirements for its admission have been met (*Bourjaily v. United States*, 483 U.S. 171, 180-81 (1987)), there must also be independent evidence of the existence of the conspiracy and the *defendant's and the declarant's* involvement therein. See, e.g., *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir.1988)

As the Ninth Circuit has held, an alleged co-conspirator's statement implicating the defendant in an alleged conspiracy "must be corroborated by *fairly incriminating evidence.*" *United States v. Silverman*, 861 F.2d 571, 578 (9th Cir.1988)(emphasis added). In *Silverman*, the Court noted that, because co-conspirator statements are presumptively unreliable, they should be admitted *only* when the government can overcome that presumption with independent evidence.

> In determining whether the proponent has made a showing sufficient to permit the introduction into evidence of the co-conspirator's statement, the district court must bear in mind that out-of-court statements are presumptively unreliable. See Bourjaily, 107 S.Ct. at 2781. *When the out-of-court statement is one made by a co-conspirator purporting to implicate others in an unlawful conspiracy, its reliability is doubly suspect.*

861 F.2d at 578 (emphasis added).

Here, it is entirely unclear which conspiracy Yulia Tymoshenko is alleged to be a member of. The money laundering conspiracy alleged in Count 1 is an overarching conspiracy allegedly carried on jointly by defendant Lazarenko and Peter Kiritchenko, starting as early as 1992, to bring into the United States the proceeds of a number of different frauds and extortions. Nowhere in any of the discovery is there the slightest hint that Yulia Tymoshenko had any role in the transfer of funds that defendant received from UESU from the offshore banks in which it was initially deposited to banks in the United States.[1] And the scheme to defraud the people of Ukraine of Lazarenko's honest services, as described in paragraphs 32-38, which the government

---

[1] The small amount that was earmarked for public relations work in the United States does not change this estimate, since it is not shown to be in any way connected to an overall plan to bring other monies into this country.

Defendant's Opposition to Government's Motion In Limine
To Admit Statements of Yulia Tymoshenko as Co-Conspirator
Statements   5

apparently intended, but failed to incorporate in Count 1,[2] charges Lazarenko alone with having devised the scheme and nowhere suggests that anyone other than Lazarenko was involved, either as a principal or an aider and abettor.

The government attempts to avoid the limitations of its own pleading by arguing that a conspiracy need not be charged in order to allow the introduction of a co-conspirator statement under Rule 801(d)(2)(E). The government cites *United States v. Portac, Inc.*, 869 F.2d 1288, 1294 (9th Cir. 1989) for the proposition that participation as an aider and abettor is sufficient to support the admission of a co-conspirator's statement. But the government seriously misrepresents the *Portac* holding.

In *Portac* the defendant, a saw mill company, was charged with aiding and abetting the formation of a conspiracy in violation of the Sherman Anti-Trust Act. On appeal after conviction, the company challenged the admission of the statements of one of the co-conspirators on the ground that Portac was not a part of the conspiracy. The Court rejected this challenge on the grounds that, inasmuch as the statement was made by one of the co-conspirators, and Portac was charged as having aided and abetted that conspiracy, its participation as an aider and abettor was sufficient to justify admission.

---

[2] Paragraph 24 states that it was further part of the money laundering conspiracy that Lazarenko engaged in a scheme to defraud of honest services "as more fully set forth below in Paragraphs Thirty Two through Thirty Eight." That language is insufficient to include within the Count One conspiracy the allegations of Paragraphs Thirty Two through Thirty Eight.

" 'Each count in an indictment is regarded as if it was a separate indictment.' " *United States v. Winter*, 663 F.2d 1120, 1138 (1st Cir.1981) (quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190-91, 76 L.Ed. 356 (1932)); 1 Charles A. Wright, *Federal Practice and Procedure: Crim.2d (Federal Practice and Procedure )* § 123 at 349 (1982). Thus, *each count must be sufficient without reference to other counts unless the allegations of those counts expressly are incorporated. Winter*, 663 F.2d at 1138 (quoting *United States v. Fulcher*, 626 F.2d 985, 988 (D.C.Cir.1980)); 1 *Federal Practice and Procedure* § 123 at 349.

*United States v. Yefsky*, 994 F.2d 885, 894 (1st Cir. 1993) (emphasis added); *see also United States v. Hooker*, 841 F.2d 1225 (4th Cir. 1988).

Defendant's Opposition to Government's Motion In Limine
To Admit Statements of Yulia Tymoshenko as Co-Conspirator
Statements

6

Plainly, this has nothing to do with the facts of the instant case, where Tymoshenko is neither charged nor reasonably identified in the Indictment as a co-conspirator or an aider and abettor.[3]

And, of course, any present contention by the government that Tymoshenko was a co-conspirator or aider and abettor of defendant Lazarenko would have to withstand the scrutiny demanded by the numerous contrary positions that the government has offered, or explicitly taken. In this connection it should be noted that the government has not only proffered the three alternative views previously noted of the relationship between Tymoshenko and Lazarenko (Tymoshenko as aider and abettor to Lazarenko's conflict of interest; Tymoshenko as the briber and Lazarenko as the bribee and Tymoshenko and Lazarenko as political soul-mates working for a common goal), but it also proffered in the discovery a fourth and even more contradictory view. In a statement made to the FBI, Peter Kiritchenko purported that Tymoshenko was, like himself, a victim of Lazarenko's extortion. It is not surprising that the government has not adverted to this description in its current motion, since that view of Tymoshenko is wholly inconsistent with the fundamental rationale of the co-conspirator hearsay exception, as articulated by the Supreme Court in *Anderson v. United States*, 417 U.S. 211, 218, n.6 (1975) ("The rationale for both the hearsay-conspiracy exception and its limitations is the notion that conspirators are partners in crime.").

Surely given these inconsistent, indeed conflicting views, the government will have a difficult time pinpointing exactly which conspiracy Tymoshenko was a part of and what its objectives were for the purpose of admitting her statements.

At the very least, this Court must carefully examine the prima facie showing of the existence of a conspiracy before admitting any of the hearsay statements. See, *Bourjaily v.*

---

[3] Indeed, a claim by the government that Tymoshenko was part of the money laundering conspiracy or the wire fraud scheme would simply underscore the probability that the indictment incorrectly charges as one conspiracy and one scheme transactions which in fact comprise multiple smaller agreements, and would thus be subject to dismissal pursuant to *Kotteakos v. United States*, 328 U.S. 750 (1946) if, as appears likely, the proof at trial establishes this variance.

Defendant's Opposition to Government's Motion In Limine
To Admit Statements of Yulia Tymoshenko as Co-Conspirator
Statements                                              7

*United States*, 43 U.S. 171 (1987); *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979); see also, *United States v. Pena-Espinoza*, 47 F.3d 356, 360-61 (9th Cir. 1995).

Defendant submits that the proffered evidence cannot withstand such examination for the reason that the government cannot establish the foundational facts that Tymoshenko was a member of any charged conspiracy and that she made statements in furtherance of any charged conspiracy.

But, the proffer must fail for an even more elementary reason: the Court cannot make the necessary preliminary determinations as to whether the proffered statements are admissible as co-conspirator hearsay declarations because the government has not provided the text of any statement it wishes to make. Rather, it has provided only its characterization of what it contends the statements purport and the context in which they are given. By presenting the matter in this way, the government has arrogated to itself the task of determining whether statements are part of a conspiracy and made in furtherance thereof, and provided the Court with no independent basis on which to review the government's determination.

For this and all of the foregoing reasons, the Government's Motion in Limine to Admit Statements of Yulia Tymoshenko as Co-Conspirator Statements must be denied.

Respectfully submitted,

DORON WEINBERG
WEINBERG & WILDER

DENNIS P. RIORDAN
DONALD M. HORGAN
RIORDAN & HORGAN

DANIEL A. HOROWITZ
LAW OFFICE OF DANIEL A. HOROWITZ

Dated: February 4, 2004    By: _____
                                DORON WEINBERG

Attorneys for Defendant
PAVEL I. LAZARENKO

Defendant's Opposition to Government's Motion In Limine
To Admit Statements of Yulia Tymoshenko as Co-Conspirator
Statements                            8

## CERTIFICATE OF SERVICE

I am a citizen of the United States; my business address is 523 Octavia Street, San Francisco, California 94102. I am employed in the City and County of San Francisco, where this mailing occurs; I am over the age of eighteen years and not a party to the within cause. I served the within:

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT STTEMENTS OF YULIA TYMOSHENKO AS CO-CONSPIRATOR STATEMENTS**

on the following person(s) on the date set forth below, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post Office mail box at San Francisco, California, addressed as follows and additionally, by faxing a copy of the same to (415) 436-7234:

Martha Boersch
Peter Axelrod
Jonathan Howden
Assistant U.S. Attorneys
450 Golden Gate Avenue, 11th Floor
San Francisco, CA 94102

I certify or declare under penalty of perjury that the foregoing is true and correct. Executed on February 5, 2004 at San Francisco, California.

_____
Grace Aguirre