1  KEVIN V. RYAN (CSBN 118321)
   United States Attorney
2
   ROSS W. NADEL (CSBN 87940)
3  Chief, Criminal Division

4  MARTHA BOERSCH (CSBN 126569)
   JONATHAN R. HOWDEN (CSBN 97022)
5  PETER AXELROD (CSBN 190843)
   Assistant United States Attorneys
6
   HALLIE A. MITCHELL (CSBN 210020)
7  Trial Attorney, U.S. Department of Justice

8    450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102
9    Telephone: (415) 436-7200

10 Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> PAVEL LAZARENKO, <br> Defendant. | No. CR 00-0284 MJJ <br><br> UNITED STATES REPLY TO DEFENDANT'S OPPOSITION TO MOTION IN LIMINE TO ADMIT STATEMENTS OF YULIA TYMOSHENKO AS CO-CONSPIRATOR STATEMENTS <br><br> Date: February 26, 2004 <br> Time: 9:30 am <br> Courtroom: Hon. Martin J. Jenkins |

The defendant opposes the government's in limine motion to admit the statement of Yulia Tymoshenko primarily on the grounds that, in the defendant's view, the government has disavowed any notion that UESU received favorable treatment from the defendant, and because, in the defendant's view, neither the indictment not the evidence at trial could support a finding that Tymoshenko is a co-conspirator. The defendant is incorrect.

//

//

//

## ARGUMENT

### I. THE DEFENDANT'S CLAIMS THAT THE GOVERNMENT HAS DISAVOWED THE RELEVANCE OF TYMOSHENKO'S STATEMENTS IS WITHOUT BASIS IN THE RECORD

The defendant continues to take the government's responses to very particular, usually overbroad discovery requests, to claim that the government has somehow disavowed its theory of the case and to suggest that the Court can suppress the government's evidence or deem proffered evidence as irrelevant based upon a few lines in a pleading filed in response to hundreds, if not thousands, of defense discovery requests. However, the government has not disavowed its theory of the case, and the defendant has been on notice of that theory since the indictment was filed, and certainly since November 6, 2000, after discovery had been provided and the government had filed a Bill of Particulars, and the statements of Tymoshenko are relevant to that theory.

The indictment alleges that "when he was the First Vice Prime Minister in charge of the energy sector, Lazarenko exercised his official authority to advance the business interests of UESU so that UESU obtained the right to sell and distribute natural gas to certain commercial and state enterprises in the Dnepropetrovsk region of Ukraine." The government did not disavow this theory and in fact relied upon this language when responding to the defendant's discovery requests. Furthermore, the Bill of Particulars filed on November 6, 2000, states that the defendant "as a government official in Ukraine, would seek, demand, and receive payment from individuals and entities as a condition of doing business in Ukraine." See Bill of Particulars ¶ 2.a., attached hereto as Exhibit 1. The government further specified that the defendant "received money from companies owned or controlled by Ukrainian business woman Yulia Tymoshenko, including United Energy Systems of Ukraine ("UESU") and Somolli Enterprises, Inc., in exchange for which Lazarenko exercised his official authority in favor of Tymoshenko's companies." Bill of Particulars ¶ 2.d.

Of course, despite this information the defendant received, as well as the discovery and a witness list, the defendant waited three years to make his hundreds of discovery requests and for three years failed to seek to obtain the discovery he later claim was essential. While the

defendant suggests that the government's responses to his belated discovery requests somehow mislead him, he fails to point to any specific discovery request that was improperly denied, or in response to the motion in limine, to explain how that denied discovery request relates to the statements of Yulia Tymoshenko. For instance, the government seeks to introduce the testimony of Andrei Vavilov, whom the defense identified as a defense witness, who would testify about a conversation he had with Tymoshenko in 1996 regarding the debt of UESU at that time. The defense claims that the government has disavowed any claim that there was a debt in 1996 based on its responses to the defendant's discovery requests. However, the government did no such thing. Instead, the government was responding to the specific defense claim that the government alleged in the indictment that "the Ukranian government paid off UESU's debt to Gazprom." See Defendant's Discovery request regarding UESU at 2.[1] To rebut this supposed allegation in the indictment, the defense sought documents from the year 2000 and later, well after the events charged in the indictment, and with no showing that these later documents had any relevance to the debt in 1996. See, e.g., Defense Request 102 (UESU notice from June 2000); Defense Request 105 (UESU agreement dated April 2000); Defense Requests 106-107 (same); Defense requests 109-111 (seeking documents from 2000-2002).

Furthermore, although the defense now claims that it was denied discovery on this topic, the defense fails to point to specific discovery requests that were denied, and in fact, the defense was allowed discovery related to this issue. The defendant was granted the right to take the depositions of various witnesses who would provide the testimony the defendant now claims was improperly denied him, and in its order the Court noted that "Lazarenko is charged with having used his government position in 1995 to put UESU in a position to distribute natural gas in Ukraine" and that the government had "unambiguously" alleged that "Lazarenko exercised his official authority to advance the business interests of UESU." Order on Defendant's Requests for Additional Rule 15 Witnesses (August 22, 2003) at 7, 13. Thus, the Court granted the

---

[1] Of course, implicit in this statement by the defense is their recognition that the government contended that there was a debt of UESU to Gazprom.

UNITED STATES REPLY TO DEFENDANT'S OPPOSITION
TO MOTION IN LIMINE TO ADMIT
COCONSPIRATOR STATEMENTS
[CR 00-0284-MJJ]                    3

defendant's request for the deposition of Mykola Sivulsky, Volodomyr Taktai, and Volodomyr Lopatin, who were to testify about the legitimate policy reasons for the restructuring and the absence of debt, and the defense has not identified any other specific witnesses who would have testimony on this topic and whose testimony was denied. Thus, the defendant was not denied any discovery from witnesses on these topics. The only requests related to UESU and its legitimacy that were denied were denied without prejudice to the defense making a further showing of materiality, which the defense never did, or because the requests were overbroad and lacked a specific showing of relevance to the charges in the indictment. See Order on Defendant's Further Document Requests (August 22, 2003) at 14-16 ("it is up to the defense to establish the materiality" and the defense had failed to show how the requested document related to the charges in the indictment); Order Granting in Part and Denying in Part Defendant's Motions for Discovery Pursuant to Rule 16 and Rule 17.

Indeed, the Court granted all the defendant's requests for documents if he had made a showing that the requested documents were relevant to: 1) the transfer of title to the natural gas from UESU to UEIL, 2) the transfer of money from UEIL to Somolli and the related payment obligations to RAO Gazprom; 3) the Ukrainian government's conferral of the right to export natural gas from the Ukraine to UESU and other companies; 4) UESU's obtaining of the right to distribute natural gas in the Dnepropetrovsk region of Ukraine; 5) Ukraine's execution of the $200,000,000 guarantee; and 6) the payment of money to defendant by Somolli, UEIL, Itera, and UESU. See Order Granting in Part and Denying in Part Defendant's Motions for Discovery Pursuant to Rule 16 and Rule 17 at 8. Specific requests were denied only because the defendant failed to show that the requested documents related to these topics, not because the topics themselves were irrelevant, or because the topics had been abandoned by the government. Id. ("of the approximately 123 document requests, very few of them relate to these specific areas, and of those, even fewer satisfy the requirements of Rule 16 – that there be more than general descriptions of documents and conclusory allegations of materiality."); id. at 12 (granting the defendant's request for the Minutes of the cabinet of Ministers on June 12, 1996, at which

UESU's debt to RAO Gazprom was discussed); id. at 13 (granting request for "all reports, analyses, accountings and correspondence used by the government of Ukraine to calculate the outstanding debt to RAO Gazprom owed by UESU/UEIL for the period January 1995 through October 2001" to the extent that these relate to the debt that gave rise to the $200,000,000 guarantee); Id. (granting request for accounting of payments between RAO Gazprom and UESU on completion of Agreement #3-GU-97 as of January 1, 1999" for payments in 1997); id. (granting request for comparison accountings for "goods delivered between Central Department of Material Financial and external Relations of the Ministry of Defense of Russia and UESU Corporation" related to the agreement between the Russian Ministry of Defense and UESU that arose from the debt of UESU) id. at 27 (granting request for documents relating to negotiations between Ukraine and RAO Gazprom about the $200,000,000 guarantee); id. at 29 (granting request for minutes of negotiations between Ukraine and RAO Gazprom regarding gas deliveries for 1996); id. at 31 (granting request for a document that would allegedly show "the complete financial and administrative activity of UESU for 1996 and the first half of 1997).

## II. THE STATEMENTS OF TYMOSHENKO ARE ADMISSIBLE AS COCONSPIRATOR STATEMENTS

The statements of Yulia Tymoshenko will be admissible as co-conspirator statements. Tymoshenko was both a co-conspirator of the money laundering conspiracy charged in Count 1, and a participant in the scheme to defraud.[2] The actions of Tymoshenko and her companies are specifically pled in the indictment and, although she has not been charged as a conspirator, the government will introduce sufficient evidence to demonstrate that she was a participant in the conspiracy and that her statements should be admitted as coconspirator statements. The defendant fails to address any of the government's proffered evidence, and instead objects that

---

[2] The defendant drops a footnote to make the claim that the money laundering conspiracy alleged in Count One does not incorporate the wire fraud scheme. Paragraph 24 of the Second Superseding Indictment explicitly refers to and includes as part of the conspiracy the scheme to defraud alleged in Paragraphs 32 through 38 of the indictment. While the defendant appears to claim that the mere lack of the word "incorporate" in this paragraph is legally significant, he cites to no authority to support this claim.

UNITED STATES REPLY TO DEFENDANT'S OPPOSITION
TO MOTION IN LIMINE TO ADMIT
COCONSPIRATOR STATEMENTS
[CR 00-0284-MJJ]     5

1. the statements are inadmissible because Tymoshenko is not explicitly charged as a co-
2. conspirator. This objection is not well-taken. See United States v. Williams, 989 F.2d 1061,
3. 1067 (9th Cir. 1993) (individual need not be indicted to be considered a coconspirator for
4. purposes of Rule 801(d)(2)E)). The defendant's assertion that Tymoshenko cannot be a co-
5. conspirator of the money laundering charge if she was a victim of the defendant's extortion is
6. similarly incorrect, because money laundering is a separate offense from the underlying extortion
7. and the defendant cites no authority for the proposition that the victim of an extortion could not
8. also conspire with the extortioner and others to launder the proceeds. Moreover, that
9. Tymoshenko may also have been a victim of the defendant does not mean that she did not also
10. participate in the scheme to defraud – after all, her payments to the defendant resulted in
11. significant benefits for her and her company. Finally, the defendant contends that the statements
12. are inadmissible because the government has not "provided the text of any statement" it wishes
13. to offer. However, the government has provided the statements of the witnesses who would
14. testify about Tymoshenko's statements, including Vavilov's, Flieger's, Hoffmans's, Garber's,
15. Jurach's, as well as the deposition testimony of Shostak and Kleshnya. Thus, even if this were a
16. legal basis to exclude Tymoshenko's statements, it is factually unsupportable.

## CONCLUSION

For the foregoing reasons, and based on the record herein, the statements of Yulia Tymoshenko in furtherance of the conspiracy and scheme to defraud should be admitted.

DATED: February 9, 2004                    Respectfully submitted,

KEVIN V. RYAN
United States Attorney

MARTHA BOERSCH
JONATHAN HOWDEN
PETER AXELROD
Assistant United States Attorneys

HALLIE MITCHELL
Trial Attorney, U.S. Department of Justice

EXHIBIT 1

1  ROBERT S. MUELLER, III (CSBN 59775)
   United States Attorney
2
   DAVID W. SHAPIRO (NYSB)
3  Chief, Criminal Division

4  JONATHAN R. HOWDEN (CSBN 97022)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102
       Telephone: (415) 436-6814
7
   Attorneys for Plaintiff
8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12

13 UNITED STATES OF AMERICA,           )    No. CR 00- 00284 MJJ
                                       )
14         Plaintiff,                  )    AMENDED BILL OF PARTICULARS
                                       )
15     v.                              )
                                       )
16 PAVEL LAZARENKO,                    )
                                       )
17         Defendant.                  )
                                       )

18

19     Pursuant to this Court's order of October 12, 2000, plaintiff, the United States of America,

20 through Assistant United States Attorneys Martha Boersch and Jonathan Howden, hereby

21 submits this Amended Bill of Particulars:

22     1. The specified unlawful activity that serves as a predicate for the money laundering

23 offenses described in Counts 2 through 5 of the indictment are: receipt and transfer of property

24 that was stolen, unlawfully converted, and taken by fraud in violation of 18 U.S.C. §§ 2314 and

25 2315; extortion as specified in 18 U.S.C. § 1956(c)(7)(B)(ii); and wire fraud in violation of 18

26 U.S.C. § 1343.

27     2. As to Counts 2 through 8 of the indictment, the United States charges that the funds

28 involved in the financial transactions described in each of the counts represent the proceeds of

specified unlawful activity as described in Counts 6 through 8 in the indictment, and in Paragraph 1, above. That activity consisted of the following illegal conduct:

   a. Defendant Lazarenko, as a government official in Ukraine, would seek, demand and receive payment from individuals and entities as a condition of doing business in Ukraine.

   b. Defendant Lazarenko did not disclose to the people or the government of Ukraine that he was receiving payments from individuals and entities doing business in Ukraine.

   c. Defendant Lazarenko, beginning sometime in 1992, met with Peter Kiritchenko, who was doing business in Ukraine, and told Kiritchenko to give a relative of Lazarenko's 50% of the equity of Kiritchenko's business in Ukraine and to pay Lazarenko 50% of the profits of the business, and thereafter, Kiritchenko paid Lazarenko 50% of the profits of his business in Ukraine.

   d. Defendant Lazarenko received money from companies owned or controlled by Ukrainian business woman Yulia Tymoshenko, including United Energy Systems of Ukraine ("UESU") and Somolli Enterprises, Inc., in exchange for which Lazarenko exercised his official authority in favor of Tymoshenko's companies, and that Lazarenko failed to disclose to the people and government of Ukraine that he was receiving significant amounts of money from these companies.

   e. Defendant Lazarenko received money from Mykhola Agafonov, who was the chief administrator of Naukovy State Farm, in exchange for which Lazarenko exercised his official authority to grant Naukovy State Farm certain rights and privileges, and that Lazarenko failed to disclose to the people and government of Ukraine that he was receiving money from Agafonov and Naukovy State Farm.

   f. Beginning sometime in 1994, Defendant Lazarenko instructed Peter Kiritchenko to manage bank accounts Lazarenko established in Switzerland to receive and transfer the money Lazarenko received from Agafonov, UESU, Somolli, as well as other individuals and entities doing business in Ukraine.

   g. Defendant Lazarenko also instructed Peter Kiritchenko to open bank accounts in Poland, Switzerland, and other countries into which Kiritchenko and other individuals and

1 entities deposited money that was corruptly and fraudulently paid for the benefit of Lazarenko. These accounts were used in part to conceal and disguise the nature, origin, location, source, ownership and control of the money that was paid for the benefit of Lazarenko and included: Accounts held by GHP Corporation at Banque SCS Alliance (Account 5452) and at Banque Populaire Suisse (Account 823896-2); accounts held by ORPHIN, SA at American Bank in Poland (Account 61310) and at Banque Populaire Suisse (Account 21383); an account held by Bainfield Company, Ltd. at Banque SCS Alliance (Account 5383); and account held by WILNORTH, Inc. at Banque SCS Alliance (Account 5451); and an account held by PADDOX INDUSTRIES at Credit Suisse (Account number 0251-875709-7).

    g. Defendant Lazarenko instructed Peter Kiritchenko to transfer money, which was first deposited into Kiritchenko's accounts, into accounts controlled by Lazarenko in Switzerland. These accounts were used in part to conceal and disguise the nature, origin, location, source, ownership and control of the money that was paid for the benefit of Lazarenko and included: and account called KATO-82 at Credit Lyonnais (Suisse)(Account 08-0578503); an account called CARPO-53 at Banque SCS Alliance (account 5353); and an account called NIHPRO at Banque Populaire Suisse (Account number 21768), and later at Credit Suisse (Account number 988882-52).

    3. The receipt and transfer of property that was stolen, unlawfully converted, and taken by fraud in violation of 18 U.S.C. §§ 2314 and 2315, occurred in the United States when the money stolen, converted and taken by fraud was transferred to financial institutions in the United States.

    4. The wire fraud in violation of 18 U.S.C. § 1343 occurred in the United States when wirings in furtherance of a scheme to defraud were made in the United States.

    5. The acts constituting the extortion under 18 U.S.C. § 1956(c)(7)(B)(ii); the theft, conversion, and fraud under 18 U.S.C. §§ 2314 and 2315; and a scheme to defraud under 18 U.S.C. § 1343, occurred primarily in Kiev and Dniepropetrovsk, Ukraine, as well as in Switzerland, Poland, Russia, Antigua, England, the Netherlands, the United States and

//

//

1 elsewhere.

2 DATED: November 6, 2000    Respectfully submitted,

ROBERT S. MUELLER, III
United States Attorney

MARTHA BOERSCH
JONATHAN HOWDEN
Assistant United States Attorney

AMENDED BILL OF PARTICULARS
[CR 00-0284] [MJJ]                                        4

| | |
|---|---|
| 1 | CERTIFICATE OF SERVICE |
| 2 | The undersigned hereby certifies that she is an employee of |
| 3 | the office of the United States Attorney, Criminal Division, |
| 4 | Northern District of California and is a person of such age and discretion to be competent to serve papers. The undersigned |
| 5 | further certifies that she caused a copy of the foregoing: |
| 6 | |
| 7 | **AMENDED BILL OF PARTICULARS** |
| 8 | <u>**UNITED STATES v. PAVEL LAZARENKO**</u>, No. CR 00-0284 MJJ, |
| 9 | |
| 10 | by placing a true copy thereof in a sealed envelope, addressed as follows which is the last known address: |
| 11 | |
| 12 | Cris Arguedas, Esq.<br>Ted W. Cassman, Esq. |
| 13 | Cooper, Arguedas & Cassman<br>5900 Hollis Street |
| 14 | Suite N<br>Emeryville, CA 94608 |
| 15 | I declare under penalty of perjury that the foregoing is true |
| 16 | and correct. |
| 17 | Dated: November 6, 2000 |
| 18 | Yolibeth Totah<br>Legal Technician |
| 19 | Strike Force Section |

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of California and is a person of such age and discretion to be competent to serve papers. The undersigned further certifies that she caused a copy of:

**UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO MOTION IN LIMINE TO ADMIT STATEMENTS OF YULIA TYMOSHENKO AS COCONSPIRATOR STATEMENTS**

**UNITED STATES REPLY RE MOTION TO ADMIT CERTIFIED FOREIGN BUSINESS RECORDS**

to be served this date on the party(ies) in this action,

**Via Facsimile**

**Doron Weinberg, Esq.**
**Attorney At Law**
**523 Octavia Street**
**San Francisco, CA 94102**
**Tele: (415) 431-3472**
**Fax: (415) 552-2703**

**Dennis P. Riordan, Esq.**
**Attorney At Law**
**523 Octavia Street**
**San Francisco, CA 94102**
**Tele: (415) 431-3472**
**Fax: (415) 552-2703**

**Daniel Horowitz, Esq.**
**120-11th Street**
**Oakland, CA 94607**
**Tele: 510-444-4888**
**Fax: 510-893-4451**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: February 9, 2004

Meghan Beardsley
Legal Assistant