1

2

3

4

5

6

7

8                                    IN THE UNITED STATES DISTRICT COURT

9                                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                          No. CR-00-0284 MJJ

12              Plaintiff,                              **ORDER GRANTING PETER
                                                        KIRITCHENKO'S REQUEST FOR
13       v.                                             RESTITUTION**

14   PAVEL LAZARENKO,

15              Defendant.
     _____/

16

17                                          **INTRODUCTION**

18        Before the Court is Peter Kiritchenko's request for restitution pursuant to 18 U.S.C. § 3663A

19   and 18 U.S.C. §  3663(a).  Kiritchenko contends that he was the victim of Lazarenko's extortion

20   demands, as alleged in the Second Superceding Indictment, and that he made payments to Lazarenko

21   in the amount of $30,000,000.00 (Thirty Million) and no less than $19,473,309.00, over the period

22   of the extortion.[1]  Defendant Pavel Lazarenko objects to Kiritchenko's request on a number of legal

23   and factual bases as more fully discussed below.

24   _____

25        [1]The minimum amount of restitution sought by Kiritchenko has changed during the pendency of this litigation.  In
     his initial filing, Kiritchenko sought restitution in the amount of $17,363,309.00, calculated as follows: $9,538,309.00, in
26   payments made by Kiritchenko to Lazarenko identified by the Office of General Prosecutor in its February 2002 Resolution
     Declining to Initiate a Criminal Action Against Kiritchenko (hereinafter "GPOU Resolution') and $7,825,000.00 in profits
27   paid to Lazarenko from Kiritchenko's partnership with Mitchum Associates.  *Declaration of Dan Ray and Supporting
     Exhibits dated June 16, 2006.*  On August 24, 2006, Kiritchenko submitted a letter brief to the Court seeking restitution in
28   the amount of $18,823,209.00.  The August 24th request identified an additional $1,460,000.00, in extortion payments made
     by Kiritchenko to Lazarenko.  Finally, on November 9,2006, Kiritchenko's counsel, George Niespolo, submitted a declaration
     seeking additional restitution in the amount of $650,000.00 for extortion payments made by Kiritchenko to Lazarenko.  The
     payments identified in the August 24th letter and the November 9th declaration were the subject of Kiritchenko's April 7, 2004
     trial testimony. *Declaration of George Niespolo in Support of Request for Restitution at Para.4-5.*

United States District Court
For the Northern District of California

1    George Niespolo, Esq. appeared on behalf of Peter Kiritchenko (hereinafter "Kiritchenko")

2  and Doron Weinberg, Esq. appeared on behalf of Defendant Pavel Lazarenko (hereinafter

3  "Lazarenko").[2]

4    The Court has reviewed the briefs submitted by the parties, the exhibits and testimony

5  offered at the evidentiary hearings in this matter and the arguments of counsel.  After careful

6  consideration of the record in this matter, the Court hereby **GRANTS** Kiritchenko's request for the

7  reasons set forth below.

8                                   **FACTUAL BACKGROUND**

9    Lazarenko was charged in the Second Superceding Indictment with: conspiracy to commit

10  Money Laundering, in violation of 18 U.S.C. 1956(h) (Count One); money laundering in violation of

11  18 U.S.C. §  1956(a)2 and (a)1(B) (Counts Two through Eight); wire fraud in violation of  18 U.S.C.

12  §§  1343 and 1346 (Counts Nine through Thirty); and illegal transportation of stolen property in

13  violation of 18 U.S.C. § 2314 (Counts Thirty One through Fifty Three).  The Government generally

14  asserted that Lazarenko, while a government official in the Ukraine, obtained property including

15  money and ownership interests in certain companies, from individuals and entities and, inter alia,

16  that he induced Kiritchenko, through threats, to transfer 50% of the profits from Kiritchenko's

17  businesses to Lazarenko. With respect to the money laundering counts, the Indictment also alleged

18  that Lazarenko conspired to and did, through the abuse of his public office, engage in money

19  laundering wherein the specified unlawful activity involved fraud, transportation of stolen property

20  and extortion of monies from Kiritchenko and others.

21    Trial commenced in this matter on or about March 15, 2004.  In May 2004, at the close of the

22  Government's case in chief, the Court granted in part, and denied in part, Lazarenko's motion for

23  judgment of acquittal pursuant to Rule 29(a).  Accordingly, the Court dismissed Counts Nine

24  through Nineteen, Count Thirty and Counts Thirty-Two through Fourty-Two of the Indictment.  *See*

25

26

27

28    [2]Assistant Unites States Attorney, Peter Axelrod represented the United States in the criminal prosecution of Pavel Lazarenko.  Mr. Axelrod appeared at the status conferences and evidentiary hearing pertaining to Kiritchenko's request for restitution and took the position that the Government neither endorsed or objected to Kiritchenko's restitution request.

**United States District Court**

For the Northern District of California

**United States District Court**
For the Northern District of California

*Docket no.774.*[3]  Thereafter, on June 3, 2004, the jury returned verdicts on the remaining counts and entered factual findings as more fully set forth below:

 a. Guilty - conspiracy to commit money laundering and substantive money laundering (Counts One through Eight). The jury also made a factual finding that Lazarenko conspired to and did launder the proceeds of specified unlawful activity related to foreign extortion; *(See Special Verdict, Docket no. 812).*

b. Guilty - wire fraud (Counts Twenty through Twenty Nine).  The jury also made a factual finding that Lazarenko had engaged in a scheme to defraud Ukranian citizens of their right to honest services relating to Kiritchenko, *Id.*; and,

c. Guilty - transportation of stolen property, (Counts 31 and Forty-Three through Fifty Two). The jury also made a  factual finding that stolen property was derived from property extorted from Kiritchenko under threat of economic harm. *Id.*

Subsequent to his conviction, Lazarenko filed a renewed motion for judgment of acquittal pursuant to Rule 29(a) and a motion for new trial.  On or about May 20, 2005, the Court granted in part and denied in part Lazarenko's motion for judgment of acquittal dismissing Counts 20-24, the stolen property counts with the exception of Count 31 and denied his motion for new trial. *(Docket No. 877.)*

Counts One, Two through Eight, conspiracy to engage in and substantive money laundering, Counts Twenty Five through Twenty-Nine, wire fraud, and Count 31, transportation of stolen property survived the Court's Rule 29 rulings.

Sentencing in this matter required the resolution of a number of novel and complicated legal/factual issues and, as such, the hearing was continued for several months.  A sentencing hearing  was held on August 25, 2006.  Lazarenko filed his Sentencing Memorandum on or about August 4, 2006 (*Docket No. 991*) and the Government filed its Sentencing Memorandum on or about August 11, 2006 (*Docket No. 1031*.)  On or about August 15, 2006, Kiritchenko filed with the Court

---

[3]On May 7, 2004, the Court also granted Defendant's Rule 29 motion as to Count 53. *See Docket no. 777.*

**United States District Court**
For the Northern District of California

1    a memorandum in support of his request for restitution from Lazarenko.[4]

2         On August 25, 2006, after full consideration of all issues pertaining to sentencing in this

3    matter, the Court sentenced Lazarenko to a total term of 108 months in prison and a term of

4    supervised release.  The Court requested supplemental briefing regarding Kiritchenko's request for

5    restitution and continued the matter for restitution hearing.  Pursuant to the Court's request for

6    further briefing, on September 7, 2006, Lazarenko filed an opposition to Kiritchenko's August 15,

7    2006 request for restitution and, on September 14, 2006, Kiritchenko filed his reply *(Docket Nos.*

8    *1058 and 1064).*  On November 15, 2006, the Court conducted the first of several hearings regarding

9    Kiritchenko's request for restitution.  At the conclusion of the November 15, 2006 evidentiary

10   hearing, the Court informed the parties that it would rule on the legal challenges raised by Lazarenko

11   to the request for restitution and, depending upon the Court's ruling, conduct an evidentiary hearing

12   allowing the parties to present live witness testimony and exhibits relevant to Kiritchenko's

13   restitution request.     On or about December 8, 2006, the Court filed its Memorandum and Order

14   overruling several legal objections tendered by Lazarenko to Kiritchenko's request for restitution

15   *(Docket  No. 1109).*  Thereafter, on May 1, June 6, and November 15, 2007, the Court conducted

16   evidentiary hearings and heard final argument pertaining to Kiritchenko's request for restitution.

17   The matter is now ripe for resolution.

18                                        **LEGAL STANDARD**

19        Kiritchenko's request for restitution is governed by two statutory enactments.  18 U.S.C §

20   3663A (hereinafter "MVRA") mandates that the court shall order ...  the defendant make restitution

21   to the victim of the offense.  18 U.S.C. §  3663A (a)1.  The MVRA includes within its definition of

22   the term victim, those persons directly or proximately harmed as a result of the commission of an

23   offense including, in the case of an offense that involves as **an element a scheme, conspiracy or**

24   **pattern of activity, any person directly harmed** by defendant's criminal conduct in the course of

25   the scheme, conspiracy or pattern ... .  18 U.S.C. § 3663A(a)2 (emphasis added).  The MVRA

26   

27        _____
            [4]Lazarenko filed with this Court letter briefs dated August 15, 22 and 24, 2006, addressing, in part,  issues
28   pertaining to Kiritchenko's request for restitution.  Kiritchenko submitted a letter brief dated August 24, 2007, in response
     to Lazarenko's letter briefs. The Court has also considered each of these filings in resolving the issues raised by Kiritchenko's
     request for restitution.

applies in all sentencing proceedings for convictions of ... an offense against property under this title
.. . including any offense committed by fraud or deceit.  Alternatively, 18 U.S.C § 3663 (a) (1) (A)
(hereinafter "VWPA") affords the Court discretion to enter an order of restitution for offenses under
Title 18 that are not offenses against property or committed by fraud or deceit.  However the  VWPA
requires that the court consider the financial resources of the defendant, the financial needs and
earning ability of the defendant and the defendant's dependants and other factors as the court deems
appropriate.  18 U.S.C. §  3663(a)(1) (B). With this legal framework in mind, the Court now turns to
the question of what, if any, restitution Kiritchenko is due.

## ANALYSIS

As indicated above, Lazarenko raised a number of legal challenges to Kiritchenko's request
for restitution.  The Court ruled on these challenges in its Memorandum and Order dated
December 8, 2006, but summarizes its previous rulings here.  First, the Court rejected Lazarenko's
contention that the trial record establishes that Kiritchenko is not a victim within the meaning of
MVRA and/or the VWPA.  The Court also rejected Lazarenko's assertion that Kiritchenko's
restitution claim was limited to the counts of conviction and, as such, no claim could be made for
monies transferred from Paddox Industries' accounts for the benefit of Lazarenko.  Finally, the
Court ruled that the determination of restitution was not of such complexity that the need to provide
restitution was outweighed by the burden associated with determining restitution in the context of
the sentencing process.  *(See Memorandum and Order, dated December 8, 2006, Docket No. 1109.)*
In rejecting Lazarenko's legal challenges, the Court specifically reserved ruling on credibility and
reliability challenges raised by Lazarenko and afforded both parties a chance to augment the record
at the evidentiary hearing.  The Court conducted several evidentiary hearings and admitted exhibits
tendered by Kiritchenko and Lazarenko.

Having reviewed the record and exhibits tendered by the parties, the Court first addresses
Kiritchenko's request for restitution in the amount of $30,000,000.00.  The Court finds that
Kiritchenko has not established, by specific and reliable evidence that he is entitled to an award of
$30,000,000.00.  The Court reaches this conclusion for several reasons.  First, while Kiritchenko
testified at trial that the total amount of payments made to Lazarenko, as a result of the extortion,

United States District Court

For the Northern District of California

1   was approximately $30,000,000.00, he has failed to submitted sufficient evidence (i.e., bank records

2   or the like) that support an award of restitution in this amount.  The record does not disclose the

3   specific amounts nor the dates of transfer to substantiate his claim for $30,000,000.00.  Moreover,

4   Kiritchenko's reliance on the jury verdict to establish a restitution award of this stature is misplaced

5   as the jury did not make a specific finding as to the **amount** of money involved in Lazarenko's

6   extortion of Kiritchenko. *United States v. Swanson*, 394 F.3d 520, 525-526 (7th Cir. 2005).

7   Therefore, on this record, the Court finds that an award in the amount of $30,000,000.00 has not

8   been established by a preponderance of the evidence.

9        Having rejected Kiritchenko's request for an award of $30,000,000.00, the Court now turns

10  to evaluate the record  regarding his request for an award of $19,473,309.00.   Here, unlike

11  Kiritchenko's request for $30,000,000.00, the record supports his request for $19,473,309.00, based

12  upon his submission of specific and credible evidence namely; his testimony given during the course

13  of the evidentiary hearings, his testimony given at trial in April 2004, the GPOU Resolution,

14  prepared by the Office of the General Prosecutor of the Ukraine dated February 14, 2002, summaries

15  of disbursements from and into various accounts prepared by FBI Special Agent Tonna (See

16  *Kiritchenko Restitution Hearing Exhibits 1-5* ) and the affidavits of Dan Ray, George Niespolo and

17  Kiritchenko.  The totality of the evidence before the Court is more than sufficient to provide a

18  credible and reliable basis to support Kiritchenko's request.  For example, Dan Ray, a certified

19  public accountant, former FBI Agent and Forensic Consultant, reviewed each of financial

20  transactions identified by Kiritchenko during the latter's interview before the GPOU in February

21  2002, and located corresponding disbursements from Kiritchenko's accounts to accounts held for the

22  benefit of Lazarenko in the amount of **$9,538,309.00.**   Dan Ray, also reviewed bank records with

23  Kiritchenko and documented transfers from Mitchum Associates to Paddox Industries to accounts

24  held for the benefit of Lazarenko in the sum of $16,650,000.00, half of which **($7,825,000.00)**

25  Kiritchenko testified was remitted to Lazarenko as a result of extortion demands. *(See Affidavit of*

26  *Dan Ray, dated June 16, 2006, Exhibits C, D and E.)*  The GPOU's Resolution also provides an

27  additional measure of reliability in support of Kiritchenko's claim.  *(Affidavit of Dan Ray, dated*

28  *June 16, 2006, Exhibit B*.)  Moreover, Kiritchenko submitted excerpts of his trial testimony, given

United States District Court

For the Northern District of California

on April 2004, wherein he identified transfers in the amount of **$1,460,000.00 and $650,000.00**, as profits from his business enterprises that he deposited into accounts maintained for the benefit of Lazarenko. *(See Decl. of George Niespolo and Exhs. A and B, attached thereto).*

Therefore, there is ample evidentiary support for Kiritchenko's request for restitution in the amount of $19,473,309.00.

Lazarenko's fact based challenges focus largely on Kiritchenko's credibility. For example, Lazarenko argues that the February 2002, GPOU Resolution does not reference payments from Paddox Industries to Lazarenko controlled accounts and the absence of these references establishes that Kiritchenko never made payments from Paddox Industries' accounts as a result of extortion demands. Lazarenko also draws the Court's attention to Kiritchenko's deposition testimony, given in the matter of *Universal Trading & Investment Company v. Petro Kiritchenko, United States District Court No: 99-3073*, wherein Kiritchenko testified that he did not recall making transfers from Paddox Industries accounts to Lazarenko's daughter, Tamara Lazarenko; that he did not recall making monetary transfers from his Orphin account into his Paddox account; that he did not know who owned Mitchum Associates and was equivocal with respect to the types of goods Paddox sold to Mitchum Associates, the existence of contractual agreements between Paddox and Mitchum Associates and his recollection of money being transferred from Mitchum Associates to Paddox Industries. *(Def's Exh. F.)*

The Court has reviewed each of Lazarenko's challenges to Kiritchenko's credibility but finds that the evidence supporting Kiritchenko's request for restitution is reliable for several reasons. First, Lazarenko's evidence does little to undermine the payments identified by the GPOU's Report of February 2002, which were corroborated by Daniel Ray's review of the relevant bank records. Moreover, while it is true that Kiritchenko was equivocal with respect to his knowledge of the ownership of Mitchum Associates, and several specific payments flowing from Mitchum into Paddox accounts and ultimately to Lazarenko, Kiritchenko also testified at that same deposition that he (Kiritchenko) had a business relationship with Mr. Grigorishin of Mitchum Associates. As importantly, Kiritchenko also testified during the same deposition that he and Mr. Grigorishin joined forces, through Mitchum Associates to supply energy to enterprises and thereafter would take goods,

7

United States District Court

For the Northern District of California

1  sell them and split the profit from these transactions in half.  *(Defendant's Exhibit F.)*  Additionally,

2  during the evidentiary hearing in this matter, Kiritchenko testified that in 1994-1995 time frame he

3  was involved in the acquisition of energy from nuclear waste plants and, at some point, he joined

4  forces with Mr. Grigorishin in the acquisition of energy to sell to power plants in return for the

5  receipt of metals.  The metals received in return for supplying energy to power plants would be sold

6  through Kiritchenko's Orphin account with the assistance of Mitchum Associates.  Kiritchenko

7  further testified that the deals involving the acquisition and sales of energy were in the tens of

8  millions of dollars and that he (Kiritchenko) paid half of the profits realized on these sales to

9  Lazarenko.  *(Defendant's Exhibit F.)*  In the Court's view, while Kiritchenko may not have been

10 fluent with respect to the ownership of Mitchum or the scope of it's business endeavors he has

11 consistently and credibly identified the source of the amounts paid to Lazarenko from his energy

12 supply business and the Court finds him credible.

13      Lazarenko also points to a disbursement from the Paddox account to Tamara Lazarenko that

14 exceeds 50% extortion demand make by Lazarenko and he posits that transfers out of the Paddox

15 account total 11.8 million dollars, a figure inconsistent with Kiritchenko's claim that 15 million

16 dollars of profit were deposited into the Paddox account.  Lazarenko contends that the evidence

17 establishes that Kiritchenko was, in fact, involved in a partnership with Lazarenko and that the

18 deposits into the Paddox account for the benefit of Lazarenko were the proceeds of legitimate

19 business activities.  The Court disagrees.  As Kiritchenko testified during the restitution hearing, he

20 employed the "pocket theory" in making extortion payments to Lazarenko and accordingly,

21 Kiritchenko would make payments out of several accounts to meet the 50% extortion threshold.

22 Therefore, Kiritchenko's inability to trace every dollar deposited, withdrawn and/or payments made

23 to third parties from the Paddox accounts does not undermine the reliability of the amount of

24 restitution sought here.

25      Finally, the Court also notes that the jury in this matter found Kiritchenko credible in

26 rendering it's verdict of guilt with respect to the counts of conviction for money laundering and

27 made specific findings that Lazarenko engaged in foreign extortion and transportation of stolen

28 property with a specific finding that the stolen property was derived from property extorted from

1  Kiritchenko.  This finding, while not dispositive of the credibility issues now before this Court,

2  supports the Court's finding that Kiritchenko is entitled to restitution in this matter.  Therefore, the

3  Court finds that Kiritchenko has satisfied his burden of establishing by a preponderance of the

4  evidence his entitlement to restitution in the amount of $19,473,309.00.[5]

5                                              **CONCLUSION**

6          For the foregoing reasons, and pursuant to 18 U.S.C. § 3663A and 18 U.S.C § 3663(a), the

7  Court **GRANTS** Kiritchenko's request for restitution in the amount of $19,473,309.00.

8  **IT IS SO ORDERED.**

9

10

11  Dated: April 3, 2008                    _____
                                            MARTIN J. JENKINS
12                                          UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[5]The record evidence does not support a finding that Mr. Lazarenko lacks the requisite financial ability to preclude an order of restitution under VWPA and no objection has been tendered to the Court on this ground.

9