United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES,

        Plaintiff,

   v.

PAVEL LAZARENKO,

        Defendant.

_____/

No. C 00-00284 CRB

**ORDER RE: SUMMARY JUDGMENT**

     This case compels the Court to delve into a complex and easily-misunderstood area of the law: the protection of third party rights in criminal forfeiture.  In their motion for summary judgment, claimant Eurofed contends that a third party may use the "ancillary proceeding" established by 21 U.S.C. § 853(n) to raise any argument whatsoever, and may thereby relitigate the forfeitability of the property seized.  Contrarily, the government argues in its motion for summary judgment that a third party is limited in an ancillary proceeding to establishing that he either: (1) had a legal right, title, or interest in the property seized at the time the defendant committed the acts that gave rise to the forfeiture; or (2) is a bona fide purchaser for value.  See 21 U.S.C. § 853(n)(6). The Court agrees with the government that Eurofed may not relitigate the "the forfeitability of the property," Fed. R. Crim. P. 32.2 advisory committee's note (2000), and because no reasonable juror could conclude that Eurofed has a superior interest in the seized funds, summary judgment must be granted to the

government.  However, that is not the end of the story.  Because this is a criminal forfeiture action, the government may seize only property in which Defendant Pavel Lazarenko has an interest.  Although neither the criminal forfeiture statutes nor Federal Rule of Criminal Procedure 32.2 set forth a procedure by which the Court can determine whether the defendant had an interest in the seized property, the Court concludes that such a procedure is necessary.  Accordingly, the government is ordered to submit by Friday, September 12, 2008 evidence sufficient to establish by a preponderance of the evidence that Defendant Pavel Lazarenko has an interest in the funds seized in this case.  A hearing on Lazarenko's interest – in which only the government is permitted to participate – will be held on Friday, September 26, 2008.

### BACKGROUND

The forfeiture dispute now before the Court arose out of the conviction of former Ukranian Prime Minister Pavel Lazarenko.  The evidence at Lazarenko's criminal trial established that Lazarenko used his political power – first as a regional governor and later as prime minister of Ukraine – to extort millions of dollars from local businesses operated by businessman Peter Kiritchenko.  Over the years, Kiritchenko paid Lazarenko approximately $30 million, or half of all Kiritchenko's profits.  Lazarenko initially received the extortion payments in four Swiss accounts, but by 1994 Lazarenko began to transfer his money to various institutions in an effort to hide the source of the funds.

By January 1997, Lazarenko believed his dismissal as Prime Minister to be imminent.  Around the same time, Lazarenko and Kiritchenko learned that Eurofed – an offshore bank domiciled in Antigua – was for sale, and agreed to buy it.  Lazarenko opened his own personal account at Eurofed, and in August of 1997, Lazarenko and Kiritchenko purchased a 67% interest in the bank.

By mid-1997, Lazarenko had been dismissed as Prime Minister and was under investigation in the Ukraine.  Concerned that his Swiss bank accounts might be frozen, Lazarenko closed the accounts – worth over $100 million – and used the funds to open an account at Banque SCS Alliance in the Bahamas.  In addition, Lazarenko made two wire

United States District Court
For the Northern District of California

1  transfers to Eurofed correspondent accounts in San Francisco at the Pacific Bank and

2  Commercial Bank.[1]  According to the government's theory, Lazarenko laundered his funds

3  through at least five and as many as eight different accounts before approximately

4  $1,379,000 in proceeds from Lazarenko's criminal operations ended up in Eurofed

5  correspondent account #W71-223433 at Bank of America in San Francisco.  See Tonna Decl.

6  Exh. 15.  The government also contends that Lazarenko's proceeds were deposited into

7  another Eurofed correspondent account, Bank of America account #W71-224464, which held

8  $327,317.85 in funds, and 923,000 Ukranian bonds.

9       In the fall of 1999, Antiguan governmental authorities began an investigation of

10  Eurofed for alleged money-laundering activities, and froze Eurofed's assets on October 29,

11  1999.  On November 15, 1999, Eurofed was put into receivership and an Antiguan court

12  appointed two PricewaterhouseCoopers partners as joint receivers, and later joint liquidators,

13  and ordered them to liquidate the bank.

14       In May of 2000, the United States government indicted Lazarenko on thirty-three

15  counts.  See Indictment (Docket # 1).  The indictment contained a forfeiture count with

16  general language requesting forfeiture of "all property, real and personal, involved" in the

17  alleged money laundering offenses "or any property traceable to such property," including

18  but not limited to, real property located in Novato and all funds in a Bank Boston Robertson

19  Stephens account valued at approximately $266,307.20.  See id. at ¶¶ 30-33.  In June of

20  2004, a jury convicted Lazarenko of one count of conspiracy to launder money, seven counts

21  of money laundering, five counts of wire fraud, and one count of interstate transportation of

22  stolen property.  See Special Verdict Form (Docket # 810).

23       In March of 2005, the government filed a complaint for forfeiture under the civil

24  forfeiture laws, directed at the two Bank of America correspondent accounts held in

25  Eurofed's name.  See United States v. $1,379,879.09 Seized from Bank of America, et. al,

26

27

28       [1] A "correspondent account" is an account established by a domestic banking institution to
receive deposits from, make payments on behalf of, or handle other financial transactions for a foreign
financial institution.  These accounts allow foreign banks to conduct business and provide services to
their clients without the expense of a physical presence.

United States District Court
For the Northern District of California

05-0946 (Docket #1).  On October 25, 2005, Judge Jenkins granted summary judgment against the government after it conceded that the civil forfeiture complaint was time-barred under 19 U.S.C. § 1621.  See Order re Motion for Summary Judgment (Docket #48).  On that same day, the government effectuated a re-seizure of the forfeited funds pursuant to a federal criminal forfeiture statute, 18 U.S.C. § 982, which subjects a defendant to forfeiture of any property, real or personal, involved in or traceable to conduct supporting a conviction for wire fraud.  Id. § 982(a)(1).  The government submitted an affidavit contending that the Eurofed accounts were "traceable to" Lazarenko's criminal conduct.  Seizure Affidavit (Docket #896).

In January of 2006, Eurofed attempted to intervene in the criminal case by filing a motion for return of property, asserting that criminal forfeiture of funds and bonds in the two Bank of America accounts was barred by the civil statute of limitations, the doctrine of res judicata, and the act of state doctrine.  See Eurofed's Motion for Return of Illegally Seized Funds (Docket #909).  In April of 2006, Judge Jenkins ruled that Eurofed could not assert its interest in the funds and bonds until the court conducted the "ancillary proceeding" designated for adjudication of third party interests.  See 21 U.S.C. § 853(n).[2]  Eurofed appealed and the Ninth Circuit affirmed, concluding that "an ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property."  United States v. Lazarenko, 476 F.3d 642, 648 (9th Cir. 2007).

Three days after ruling that Eurofed could not intervene directly in the criminal proceeding, Judge Jenkins filed a Preliminary Order of Forfeiture, forfeiting all of Lazarenko's right, title, and interest in the two Bank of America accounts to the United States.  See Preliminary Order of Forfeiture (Docket #947).  After concluding that the government had established the requisite "nexus" between Lazarenko's criminal conduct and the Bank of America accounts, Judge Jenkins entered a final forfeiture order.  See Criminal Minutes re: Forfeiture issues (Docket #1077); Transcript of Proceedings Dated September

---

[2] Section 982 incorporates the provisions of 21 U.S.C. § 853, including § 853's ancillary proceeding procedure.  See 18 U.S.C. § 982(b)(1).

4

29, 2006 at 36.  Judge Jenkins' forfeiture order was incorporated into Lazarenko's sentence, thereby finalizing the order of forfeiture as to him.  See Fed. R. Crim. P. 32.2(b)(3) ("At sentencing–or at any time before sentencing if the defendant consents–the order of forfeiture becomes final as to the defendant and must be made a part of the sentence and be included in the judgment.").  Lazarenko did not challenge the underlying forfeiture of the two Bank of America accounts.

After remand from the Ninth Circuit, the ancillary proceeding went forward.  Two parties – the Liquidators of Eurofed and Universal Trading and Investment Co. – petitioned for an ancillary hearing to determine whether their interests in the forfeited funds and bonds were superior to Lazarenko's interest.  In support of their motion for return of illegally seized funds, Eurofed argued that: (1) the government's criminal forfeiture was barred by the loss of its case for civil forfeiture pursuant to principles of res judicata; (2) the criminal forfeiture was barred by the applicable statute of limitations; and (3) the act of state and comity doctrines counseled against intervention in Antiguan court proceedings.  See Docket #1188. In response, the government argued that Eurofed's arguments exceeded the scope of the ancillary proceeding, which was limited to resolving Eurofed's interest in the property seized, rather than the forfeitability of the property.  See Docket #1187.

By order dated August 15, 2007, Judge Jenkins held that due process requires that third parties have an opportunity to relitigate the forfeitability of the property, and moreover that legal defenses such as res judicata and statute of limitations can be properly considered part of a third party's attempt to claim a superior ownership interest.  United States v. Lazarenko, 504 F. Supp. 2d 791, 795, 795 n.3 (N.D. Cal. 2007).

However, in addressing the merits of Eurofed's arguments, the court rejected each in turn.  First, the court held that the government's criminal forfeiture was timely because the government validly sought criminal forfeiture in the original indictment, which was filed in 2000 and thus less than five years after commission of the relevant offenses.  See id. at 796 (citing 18 U.S.C. § 3282(a)).  Second, the court concluded that res judicata did not bar criminal forfeiture because the underlying rights in the two forfeiture actions were

significantly different, the right vindicated by resolution of the civil forfeiture action would not be impaired by allowing a criminal forfeiture process, and the criminal forfeiture claim could not have been brought as part of the separate civil forfeiture action.  See id. at 800. Third, the court held that neither the act of state doctrine nor comity principles operated as a bar to the criminal forfeiture because no orders issued by an Antiguan court were inconsistent with the court's determination that criminal forfeiture is appropriate.  See id. at 802.  The court concluded that ancillary proceedings would have to be conducted to resolve factual issues such as whether Eurofed has "superior title" to the Bank of America accounts either because such assets were never owned by Lazarenko or because some of the funds relate only to counts on which there were acquittals.  See id.

Eurofed and the United States then filed cross-motions for summary judgment.  In their motion, Eurofed reasserts the three arguments rejected by Judge Jenkins – statute of limitations, res judicata, and act of state doctrine – and contends that the government has failed to prove a sufficient factual connection between Lazarenko's criminal conduct and the forfeited funds.  In its opposition, the government argues that the law of the case doctrine precludes Eurofed from prevailing on the three arguments already rejected by Judge Jenkins, and that Eurofed's argument exceeds the scope of an ancillary proceeding under 21 U.S.C. § 853(n).

In its motion for summary judgment, the government argues that summary judgment is appropriate because there is no triable issue as to whether Eurofed either: (1) had a legal right, title, or interest in the funds at the time Lazarenko committed the acts that gave rise to the forfeiture; or (2) is a bona fide purchase for value of the right, title, or interest in the forfeited funds.  See 21 U.S.C. § 853(n)(6).  In its opposition, Eurofed contends that the government's forfeiture effort is unlawful because it has failed to prove the requisite nexus between Lazarenko's criminal conduct and the forfeited funds, and because the seized funds do not belong to Lazarenko.

///

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1

STANDARD OF REVIEW

2       Summary judgment is appropriate "if the pleadings, depositions, answers to

3 interrogatories, and admissions on file, together with the affidavits, if any, show that there is

4 no genuine issue as to any material fact and that the moving party is entitled to a judgment as

5 a matter of law." Fed. R. Civ. P. 56(c). A fact issue is "material" only if it could affect the

6 outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

7 248 (1986). A fact issue is genuine if the evidence is such that a reasonable jury could return

8 a verdict for the nonmoving party. Id.

9       A principal purpose of the summary judgment procedure is to isolate and dispose of

10 factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The

11 party moving for summary judgment has the burden to show initially the absence of a

12 genuine issue concerning any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144,

13 159 (1970). This can be done by either producing evidence negating an essential element of

14 the plaintiff's claim, or by showing that plaintiff does not have enough evidence of an

15 essential element to carry its ultimate burden at trial. See Nissan Fire & Marine Ins. Co. v.

16 Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). Once the moving party has met

17 its initial burden, the burden shifts to the nonmoving party to establish the existence of an

18 element essential to that party's case, and on which that party will bear the burden of proof at

19 trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden,

20 the nonmoving party cannot rely on its pleadings, but instead must have evidence showing

21 that there is a genuine issue for trial. See id. at 324.

22       Special rules of construction apply to evaluating summary judgment motions: (1) all

23 reasonable doubts as to the existence of genuine issues of material fact should be resolved

24 against the moving party; and (2) all inferences to be drawn from the underlying facts must

25 be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac.

26 Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

27 ///

28

7

1

**DISCUSSION**

2          At root, the dispute between the United States and Eurofed boils down to whether a

3   third party who cannot establish a valid interest in property seized in a criminal case – that is,

4   has failed to establish standing – may nevertheless invalidate a criminal forfeiture by

5   challenging the forfeitability of the property seized.  To better understand why the

6   government's position that a third party with no interest in the seized property cannot

7   relitigate the issue of forfeitability is more faithful to the text of the criminal forfeiture

8   statute, the text of  relevant rule of criminal procedure, and to common sense, the Court

9   begins by reviewing the legal framework governing criminal forfeitures.

10          I. Legal Framework

11          Working in tandem, 18 U.S.C. § 982, 21 U.S.C. § 853, and Federal Rule of Criminal

12   Procedure 32.2 set forth the framework for adjudicating the validity of a criminal forfeiture

13   of property that has a nexus to wire fraud.  When a defendant is convicted of wire fraud, 18

14   U.S.C. § 982(a)(1) authorizes the government to seize "any property, real or personal,

15   involved in such offense, or any property traceable to such property."  Section 982(b)(1)

16   provides that the forfeiture of property under this section "shall be governed by the

17   provisions" of 21 U.S.C. § 853.

18          In turn, § 853 paints in broad strokes the proper standards and procedures governing

19   seizure of property of any person convicted of a specified drug offense.  Of particular

20   relevance here, § 853(n) addresses the method for adjudicating a third party's interest in

21   seized property.  Section 853(n) provides the exclusive proceeding in which third parties may

22   claim interests in property subject to criminal forfeiture, as third parties are barred by §

23   853(k) from intervening in the trial or the appeal of a criminal case to assert their interests, or

24   from bringing independent suits against the United States once an indictment alleging that

25   the property is subject to forfeiture has been filed.  See United States v. Lazarenko, 476 F.3d

26   642, 648 (9th Cir. 2007).

27          According to § 853, the district court must first enter a preliminary order of forfeiture

28   as part of the defendant's sentence, and the United States must then publish notice of the

1    order.  See 21 U.S.C. § 853(n)(1).  Federal Rule of Criminal Procedure 32.2, which sets

2    forth the procedure governing criminal forfeiture in greater detail, clarifies that as soon as

3    practicable after a verdict or finding of guilty, the court must determine what property is

4    subject to forfeiture under the applicable statute.  Fed. R. Crim. P. 32.2(b)(1).  A preliminary

5    order of forfeiture is appropriate where the government establishes "the requisite nexus

6    between the property [to be seized] and the offense."  Id.; see also Fed. R. Crim. P. 32.2

7    advisory committee's note ("As provided in (b)(1), the court, as soon as practicable after the

8    verdict or finding of guilty in the criminal case, would determine if the property was subject

9    to forfeiture in accordance with the applicable statute, e.g., whether the property represented

10   the proceeds of the offense, was used to facilitate the offense, or was involved in the offense

11   in some other way.").

12         The preliminary order becomes final as to the defendant at sentencing, and must be

13   made a part of the sentence and included in the judgment.  Fed. R. Crim. P. 32.2(b)(3).  The

14   preliminary order may be entered without a "determination of the extent of the defendant's

15   interest" in the property, Fed. R. Crim. P. 32.2 advisory committee's note, even though a

16   criminal forfeiture is valid only to the extent the property seized belongs to the defendant,

17   rather than innocent parties, United States v. Nava, 404 F.3d 1119, 1124 (9th Cir. 2005).  The

18   preliminary order also may be – indeed must be – entered without regard to whether a third

19   party has a valid interest in all or part of the property, as third party claims must be

20   adjudicated in a subsequent ancillary proceeding.  Fed. R. Crim. P. 32.2(b)(2).

21         The ancillary proceeding is triggered when a third party asserts a legal interest in

22   property by petitioning the court for a hearing within thirty days of the government's filing of

23   notice.  See 21 U.S.C. § 853(n)(2).  The third party petition must "set forth the nature and

24   extent of the petitioner's right, title, or interest in the property, the time and circumstances of

25   the petitioner's acquisition of the right, title, or interest in the property, any additional facts

26   supporting the petitioner's claim, and the relief sought."  Id. § 853(n)(3).  To the extent

27   possible, the court must hold a hearing on the petition within thirty days of the filing of the

28   petition.  Id. § 853(n)(4).

United States District Court
For the Northern District of California

The district court shall amend the preliminary order of forfeiture if, after the hearing, the court concludes that the petitioner has established that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6).  The petitioner bears the burden of proving his right, title, or interest under § 853(n)(6) by a preponderance of the evidence.  Id.  "Congress chose to place the burden of proof on the third-party during the ancillary proceeding, since the government would necessarily have carried its burden of proving that the defendant's interest in the property was subject to forfeiture during the criminal trial."  United States v. Gilbert, 244 F.3d 888, 911 (11th Cir. 2001) (citation omitted), quoted in United States v. Nava, 404 F.3d 1119, 1125 (9th Cir. 2005).

When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights.  See Fed. R. Crim. P. 32.2(c)(2).  Rule 32.2 provides that if no third party files a timely petition, the preliminary order becomes final if the court finds that the defendant had an interest in the property that is forfeitable under the applicable statute.  Id.  Oddly, when a third party does file a timely petition, "the Rule does not provide a procedure by which the court can determine whether the defendant had an interest in the property and, if so, what the extent of that interest is."  David B. Smith, Prosecution and Defense of Forfeiture Cases § 14.08(2)(a) (Matthew Bender & Co., Inc. 2008).  "Not surprisingly, most judges simply ignore the important safeguard that they must find that the defendant had an interest in the property."  Id.

## II. Scope of Ancillary Proceeding

In light of the structure identified above, the Court must determine the proper process for adjudicating a third party's alleged interest in seized property.  The precise question

United States District Court
For the Northern District of California

1   presented by the cross-motions for summary judgment is whether a third party petitioner is

2   limited in the arguments that may be forwarded in the ancillary proceeding, or whether – as

3   Eurofed contends – the ancillary proceeding provides an opportunity to challenge the

4   forfeiture on any basis.

5          The government's basic position is that in enacting § 853, Congress designed a

6   comprehensive scheme for adjudicating the propriety of a forfeiture and that questions

7   relating to the forfeitability of property cannot be addressed in the ancillary proceeding

8   because the ancillary proceeding is limited to resolving third party ownership interests in the

9   forfeited assets.  Eurofed contrarily argues that Congress has placed no limits on the kinds of

10  arguments that may be forwarded in an ancillary proceeding.  See Eurofed. Supp. Br. at 15.

11  Under Eurofed's conception, a third party may challenge the legality of a forfeiture order on

12  any ground, including that the government failed to sustain its burden of proving a nexus

13  between the forfeited property and the defendant's criminal conduct.[3]  The Court finds that

14  the government has the better reading of the statutory framework.

15         Put simply, "the criminal forfeiture statutes do not afford the third party any right to

16  challenge the underlying basis of the forfeiture."  David B. Smith, Prosecution and Defense

17  of Forfeiture Cases § 14.08(4) (Matthew Bender & Co., Inc. 2008).  Section 853 provides

18  that a petitioner may obtain relief only by demonstrating superior title.  This is evident from

19  the plain text of § 853(n)(6), which provides that the preliminary order of forfeiture may be

20  amended if the petitioner establishes that he has a legal interest in seized property that

21  renders the seizure invalid "because the right, title, or interest was vested in the petitioner

22  rather than the defendant or was superior to any right, title, or interest of the defendant at the

23

24         [3] In his August 15, 2007 order, Judge Jenkins concluded that  third parties may challenge the

25  validity of the underlying forfeiture and relitigate the forfeitability of the seized property.  Lazarenko,
    504 F. Supp. 2d at 795.  This Court agrees with Judge Jenkins' first conclusion; as § 853(n)(6)(A) states,

26  a third party petitioner is entitled to put forward evidence that would "render[] the order of forfeiture
    invalid in whole or in part."   However, the Court does not agree with Judge Jenkins' inference that

27  therefore, a third party plaintiff can relitigate the issue of forfeitability.  Section § 853(n) provides that
    the petitioner can prove that the forfeiture is invalid "because" the petitioner has a superior interest.  To

28  conflate the two concepts is a mistake that the Court will not remake out of allegiance to the law of the
    case doctrine, as doing so would result in manifest injustice.  See United States v. Lynch, 437 F.3d 902,
    911 n.5 (9th Cir. 2006).

United States District Court
For the Northern District of California

1  time of the commission of the acts which gave rise to the forfeiture of the property," or

2  because he is a bona fide purchaser.  Because Congress specifically designated two bases for

3  amending a preliminary forfeiture order, all omissions of other bases – including the

4  forfeitability of the property – should be understood as exclusions.  See Boudette v. Barnette,

5  923 F.2d 754, 756-57 (9th Cir. 1991); cf. United States v. Hooper, 229 F.3d 818, 822 (9th

6  Cir. 2000) (internal citation omitted) (Section 853 "protects only two types of transferees of

7  forfeitable property: bona fide purchasers and those whose interest in the property antedated

8  the crime.  In the face of that clear direction, we are not at liberty to create other categories of

9  transferee interests that are protected from forfeiture.").[4]  Hence, "a third party has no right to

10 challenge the preliminary order's finding of forfeitability"; the third party is limited to

11 asserting a superior ownership interest.  United States v. Andrews, 530 F.3d 1232, 1236-37

12 (10th Cir. 2008); see also United States v. Porchay, 533 F.3d 704, 710 (8th Cir. 2008)

13 ("Section 853(n) does not give a third party the right to challenge the legality of the seizure;

14 the plain language of the subsection indicates that its purpose is to ensure that the property is

15 not taken from someone with a right to the property that is superior to the defendant.").

16      Even if § 853 were not plain on its face, Rule 32.2 closes the door on Eurofed's

17 position, as the advisory committee's note confirms that an ancillary proceeding "does not

18 involve relitigation of the forfeitability of the property; its only purpose is to determine

19 whether any third party has a legal interest in the forfeited property."  The advisory

20 committee's note must guide the Court's interpretation of Rule 32.2, see Waters v. Young,

23 ─────────────
24   [4] Because § 853(n)(6) unambiguously establishes that the ancillary proceeding is limited to the issue of superior interest, reference to legislative history is inappropriate.  See Dep't of Housing &
25 Urban Development v. Rucker, 535 U.S. 125, 132 (2002).  Even if the Court were to go beyond the statutory language, the legislative history of RICO's forfeiture provision, 18 U.S.C. § 1963 – which bears on the "substantially identical" provisions of § 853, see United States v. Ripinsky, 20 F.3d 359,
26 362 n.3 (9th Cir. 1994) – reveals only that Congress created the ancillary proceeding in order to provide third parties who assert claims to criminal forfeited property the opportunity to "challenge[] the validity
27 of the order of forfeiture" in court.  S. Rep. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182, 3390-91 (1984).  In the past, third parties were required to petition the Attorney General directly to assert their
28 property rights.  Although the legislative history dictates what a third party may do – challenge the validity of a criminal forfeiture order in court – it does not disclose how a third party may do so.

1    100 F.3d 1437, 1441 (9th Cir. 1996), and are "of weight" in interpreting the rule, see

2    Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444 (1946).

3         The Court recognizes that other courts have permitted third party claimants to

4    relitigate whether the property was properly subject to forfeiture in the first place.  See, e.g.,

5    United States v. Reckmeyer, 836 F.2d 200 (4th Cir. 1987).  However, these decisions –

6    which predate the drafting of Rule 32.2 advisory committee's note – rest on due process

7    arguments that are unconvincing.  In Reckmeyer, the Fourth Circuit held that "[s]erious due

8    process questions would be raised . . . if third parties asserting an interest in forfeited assets

9    were barred from challenging the validity of the forfeiture. The determination made at the

10   defendant's criminal trial that the property was subject to forfeiture cannot be considered

11   binding on persons who were not only not parties to the criminal action but were specifically

12   barred from intervening."  Id. at 206. Although it is generally a violation of due process for a

13   judgment to be binding on a litigant who was not a party or a privy and therefore has never

14   had an opportunity to be heard, see Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 327

15   n.7 (1979), a third party has no constitutional right to challenge a court's criminal forfeiture

16   order if he has no superior interest in the property seized, as such a third party has no

17   property interest that is protected for purposes of the due process clause.

18        Further, § 853(n) provides the third party with all the due process required by

19   allowing the claimant to recover his property by establishing a superior interest.  To

20   determine whether Eurofed  received the process it was due, the Court must consider: (1) the

21   private interest at stake; (2) the risk of an erroneous deprivation of that interest through the

22   procedures used and the probable value (if any) of alternative procedures; (3) the

23   government's interest, including the possible burdens of alternative procedures.  See

24   Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  As to the first element, forfeiture results in

25   the deprivation of property, but the private interest of the third party is less weighty where, as

26   here, a court has already concluded that the property at issue was used in a crime and

27   therefore forfeitable under the relation-back doctrine.  Second, the risk of erroneous

28   deprivation to the third party is minimal because § 853(n) provides claimants with a

13

1   meaningful opportunity to recover their property by proving superior title.  In reality, the

2   primary risk Eurofed seeks to reduce is the risk that a <u>defendant</u> will be erroneously deprived

3   of his property as the result of an unlawful forfeiture.  Third, the government has a

4   substantial interest in not relitigating the issue of forfeitability repeatedly, particularly since

5   proving forfeitability even once can be a burdensome and complex task.  Considering that

6   third parties with a legally-recognized interest in the property will recover that property with

7   a showing of superior interest, the Court does not believe that any process in addition to that

8   provided by § 853(n) is mandated by the Constitution.  As the Tenth Circuit recently

9   recognized, "if the property really belongs to the third party[,] . . . he will prevail and recover

10   his property whether there were defects in the criminal trial or the forfeiture process or not;

11   and if the property does not belong to the third party, such defects in the finding of

12   forfeitability are no concern of his."  <u>United States v. Andrews</u>, 530 F.3d 1232, 1237 (10th

13   Cir. 2008).

14          Contrary to Eurofed's contention, the Court believes that its reading of § 853(n) and

15   Rule 32.2 not only rigorously adheres to the language of the forfeiture laws, but also heeds

16   Ninth Circuit precedent.  To be sure, the Ninth Circuit has not yet addressed the issues

17   presented in this case head-on in a published opinion, but the court has suggested in the past

18   that the ancillary proceeding should be limited to issues of superior interest.  Thus, in <u>United</u>

19   <u>States v. Nava</u>, 404 F.3d 1119 (9th Cir. 2005), the court clarified that a third party petitioner

20   "may prevail <u>only upon showing</u>, by a preponderance of the evidence, that he possessed a

21   vested or superior legal right, title, or interest in the property at the time the criminal acts

22   took place, or that he was a bona fide purchaser for value."  <u>Id.</u> at 1125.  To press the point

23   home, the court reiterated that a district court should amend the preliminary order of

24   forfeiture "<u>only</u> upon the petitioner's showing, by a preponderance of the evidence," of a

25   superior interest.  The Ninth Circuit was even more direct in an unpublished memorandum,

26   holding that "[w]hether the criminal forfeiture of . . . property was proper is not an issue

27   subject to litigation by third parties in an ancillary proceeding."  <u>United States v. Dejanu</u>, 163

28   Fed. Appx. 493, 498 (9th Cir. 2006).  While <u>Dejanu</u> is not binding precedent, the court's

holding is consistent with the Ninth Circuit's view that the "<u>sole</u> legal issue before the court [in an ancillary proceeding] is the ownership interests of the competing parties." <u>Nava</u>, 404 F.3d at 1124 (quoting <u>United States v. McHan</u>, 345 F.3d 262, 281 (4th Cir. 2003) (Luttig, J., concurring in part and concurring in the judgment in part)) (emphasis added).

Eurofed contends that the Ninth Circuit changed course from <u>Nava</u> when, on appeal from this Court's determination that Eurofed could not intervene in the criminal proceeding, the Ninth Circuit ordered this Court to allow Eurofed to challenge the forfeitability of the seized funds. In its opinion holding that Eurofed lacked standing to intervene in Lazarenko's criminal trial other than by way of the ancillary proceeding, the Ninth Circuit stated:

> In the proceedings that we understand the district court will promptly commence below, Liquidators may present all arguments and defenses to defeat the government's forfeiture, including those raised in their seizure motion and on appeal. We express no opinion on the merits of those arguments, and the district court may freely apply the law to the facts as it finds them during the ancillary proceedings.

<u>Lazarenko</u>, 476 F.3d at 650-51 (footnote omitted). The court dropped a footnote to clarify that such arguments include, among other things, res judicata and the act of state doctrine. <u>Id.</u> at 650 n.2. According to Eurofed, this portion of <u>Lazarenko</u> precludes the Court from limiting Eurofed to arguments pertaining to superior title. Ever mindful of the obligation to faithfully follow binding Ninth Circuit precedent, the Court is nevertheless reluctant to read too much into the Ninth Circuit's direction.

Because the preceding quote from <u>Lazarenko</u> was "not necessary to the decision," it has no binding or precedential impact. <u>See</u> <u>Export Group v. Reef Industries, Inc.</u>, 54 F.3d 1466, 1472 (9th Cir. 1995). Out of an abundance of caution, this Court would typically heed Ninth Circuit dicta, but there is good reason to be cautious about interpreting <u>Lazarenko</u> as Eurofed proposes. Because the parties were focused on the issue of standing, neither briefed the proper scope of an ancillary proceeding before the Ninth Circuit rendered its judgment. Section 853(n) and Rule 32.2 were not analyzed by either party at oral argument.[5]  Reading

_____

[5] Without addressing the language of § 853 or Rule 32.2, the Ninth Circuit panel – and Judge Graber in particular – asked the parties about their respective positions on the scope of the ancillary proceeding. Eurofed contends that in answering Judge Graber's questions, the government took the

**United States District Court**
For the Northern District of California

1   <u>Lazarenko</u> as resolving a complex and important issue of statutory interpretation in direct

2   conflict with Rule 32.2 <u>sub silentio</u> – and at least substantial tension with <u>United States v.</u>

3   <u>Nava</u>, 404 F.3d 1119 (9th Cir. 2005) – and without the benefit of adequate briefing is beyond

4   the Court's zone of comfort.

5       In sum, the Court interprets § 853(n) and Rule 32.2 as barring Eurofed from

6   relitigating the forfeitability of the seized funds.  The Court will therefore limit its inquiry to

7   whether there is a genuine dispute that Eurofed has a superior interest in the seized Bank of

8   America funds, an inquiry to which the Court now turns.

9       III. Superior Interest

10      Pursuant to the "relation back" provision of § 853(c), all rights and interests in

11  property that shares the appropriate nexus with criminal conduct vests in the United States

12  immediately upon commission of the act giving rise to forfeiture.  The government has an

13  unperfected property interest, therefore, in certain assets from the time the defendant

14  commits qualifying crimes.  The government's unperfected property interest extends to assets

15  which have been transferred to third parties "unless the transferee establishes in a hearing

16  pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such

17  property who at the time of purchase was reasonably without cause to believe that the

18  property was subject to forfeiture under this section."  21 U.S.C. § 853(c).  In addition to

19  showing that a transferee is a good faith purchaser for value, a transferee may show that his

20  or her interests were acquired prior to the commission of prohibited acts by the defendant.

21  21 U.S.C. § 853(n)(6)(A).  Summary judgment to the government is appropriate in this case,

22  because a reasonable juror could not conclude that Eurofed meets either standard.

23  ///

24

25  _____

26  position that Eurofed could relitigate forfeitability in the ancillary proceeding, and should therefore be
    estopped from maintaining a contradictory position now.  A review of the oral argument transcript

27  reveals that the government provided vague and uncertain answers to Judge Graber's questions, but
    nevertheless satisfactorily preserved its argument that Eurofed is limited to establishing superior interest.

28  In all likelihood, the government's inability to coherently and comprehensively address the court's
    questions resulted from a lack of preparation on the issue, which only further reinforces this Court's
    opinion that treating the Ninth Circuit's dicta as binding authority would be misguided.

### A. Prior Vested Interest (21 U.S.C. § 853(n)(6)(A))

Eurofed has submitted no facts that would justify the conclusion that it had a vested right or interest in the funds that now compose the Bank of America accounts at the time Lazarenko committed the acts of wire fraud for which he was convicted.

A third party can never have a successful claim under § 853(n)(6)(A) if the property constitutes the proceeds of an offense.  See United States v. Hooper, 229 F.3d 818, 821-22 (9th Cir. 2000).  As the court in Hooper explained, the proceeds of an offense do not exist before the offense is committed, and when they come into existence, the government's interest under the relation-back doctrine immediately vests.  Id.  For that reason, § 853(n)(6)(A) is "far better designed to deal with instrumentalities of the crime" than with the proceeds of the crime.  Id. at 822.

Here, there can be no doubt that the funds that make up the two Bank of America accounts represent the proceeds – rather than the instrumentalities – of Lazarenko's criminal conduct.  Accordingly, Eurofed cannot prove, as a matter of law, that it has a superior interest under § 853(n)(6)(A).

What is more, Eurofed has proffered no evidence that would allow the Court to conclude that the funds seized by the government were in Eurofed's control at the time that Lazarenko committed the underlying crimes.  There are no bank statements, no financial records proving that at the time Lazarenko committed his unlawful acts, Eurofed had an interest in the funds that the government seized.  Rather, Eurofed simply rehashes its argument that the government has failed to establish that the seized funds "are actually Lazarenko's property."  Eurofed's bears the burden not of proving that the funds belong to someone other than Lazarenko, but of proving that the seized funds belonged to it at the time of Lazarenko's conduct.  This Eurofed has plainly failed to do.

### B. Bona Fide Purchaser (21 U.S.C. § 853(n)(6)(B))

Section 853(n)(6)(B), which provides the second possible ground to prevail at an ancillary hearing, is an exception to the relation-back doctrine.  It provides that a person who acquired an interest in the forfeited property after the government's interest vested may

**United States District Court**
For the Northern District of California

1    nevertheless prevail in the ancillary proceeding if he was a "bona fide purchaser for value."

2    This defense consists of the following three elements: (1) the claimant has a legal interest in

3    the forfeited property; (2) the interest was acquired as a bona fide purchaser for value; and

4    (3) the interest was acquired at a time when the claimant was reasonably without cause to

5    believe that the property was subject to forfeiture.  See 21 U.S.C. § 853(n)(6)(B).

6         As the government notes, Eurofed has failed to proffer any evidence demonstrating

7    that Eurofed gave anything of value to Lazarenko in exchange for the money being deposited

8    gratuitously into its correspondent accounts.  Thus, there is a lack of evidence showing a

9    genuine issue on the applicability of § 853(n)(6)(B).

10         IV. Alternate Res Judicata, Statute of Limitations, & Act of State Arguments

11         In addition to arguing that the government failed to carry its burden of proving that

12    Lazarenko has an interest in the seized funds, Eurofed also renews its arguments that the

13    funds in the Bank of America accounts must be immediately returned to Eurofed because: (1)

14    the criminal forfeiture is barred by res judicata because of dismissal of the government's civil

15    case attempting to forfeit the same assets; (2) the forfeiture is barred by the statute of

16    limitations; and (3) the Court should defer to pre-existing liquidation proceedings in Antigua.

17         Because the arguments forwarded by Eurofed are simply variations on its argument

18    that the government unlawfully seized the Bank of America funds in the first instance, the

19    Court finds that such arguments are improper in an ancillary proceeding.   The Court

20    recognizes that Judge Jenkins previously permitted Eurofed to forward such arguments on

21    the ground that the ancillary proceeding is analogous to a quiet title action, and that defenses

22    like res judicata and statute of limitations are permitted in a quiet title action.  To be sure, res

23    judicata and statute of limitations arguments are permitted in the quiet title context, see

24    Powelson v. United States, 150 F.3d 1103, 1004 (9th Cir. 1998) (res judicata); Park County,

25    Mont. v. United States, 626 F.2d 718, 720 (9th Cir. 1980) (statute of limitations), but the

26    Court believes that the analogy is inapposite.  An ancillary proceeding is like a quiet title

27    action in the sense that both proceedings are "a competition over ownership priority with the

28    court determining the superior title."  United States v. McHan, 345 F.3d 262, 275 (4th Cir.

18

2003).  However, in a quiet title action, there is no justification for barring the defendant from challenging the plaintiff's underlying interest in the land.  By contrast, the plain language of § 853(n) and Rule 32.2 make clear that a third party may not use the ancillary proceeding to relitigate the forfeitability of the property.

In any event, if the Court addressed Eurofed's arguments on the merits, it would dispose of them for the reasons provided in Judge Jenkins' opinion.  As to res judicata, the court's dismissal of the government's civil forfeiture action should have no binding effect because the earlier civil suit did not involve the same "claim" or cause of action as the criminal forfeiture.  See Tahoe-Sierra Preservation Council v. Tahoe Reg. Planning, 322 F.3d 1064, 1077 (9th Cir. 2003) (holding that res judicata acts as bar only where earlier suit involved same claim as later suit).

As to the statute of limitations argument, the government sought criminal forfeiture in the indictment filed in 2000, which was less than five years after Lazarenko's commission of the underlying offenses.  See 18 U.S.C. 3282(a) (establishing five-year period of limitations for criminal charges brought against Lazarenko).  Thus, the government timely sought criminal forfeiture in the indictment, and the fact that the government did not specifically list the Bank of America accounts is of no moment because the government is not required to describe the property subject to forfeiture in detail.  See Fed. R. Crim. P. 32.2 advisory committee's note (2000).

As to the act of state doctrine argument, Judge Jenkins properly found that because there is no order from an Antiguan court giving specific directions as to the Bank of America accounts, and because permitting forfeiture would not invalidate or force Eurofed to contravene any Antiguan order, the act of state doctrine is inapposite.

V. Lazarenko's Interst in the Property

Although the government would perhaps prefer if the Court were to stop here, it cannot do so.  It is axiomatic that a criminal forfeiture – as opposed to a civil forfeiture – is an in personam proceeding, and therefore the government may seize only that property or portion of property in which the defendant has an interest.

**United States District Court**
For the Northern District of California

1    If no third party files an ancillary petition, Rule 32.2(c)(2) requires that prior to

2    entering a final order, the court find that the defendant had an interest in the forfeited

3    property "[i]f no third party files a timely [ancillary] petition." Fed. R. Crim. P. 32.2(c)(2).

4    For reasons unclear to this Court, the drafters of Rule 32.2 did not expressly impose the same

5    requirement where, as here, a third party <u>does</u> file a timely ancillary petition.  Nonetheless, it

6    would be highly improper to allow the government to seize the funds at issue without putting

7    them to the test of establishing that Lazarenko had an interest in the property seized.

8    Because Judge Jenkins found <u>only</u> that the nexus requirement had been established before

9    entering the preliminary order of forfeiture, there has been no finding that Lazarenko had an

10   interest in the seized funds.

11   Although neither § 853 nor Rule 32.2 expressly sets forth the procedure by which the

12   court can determine whether Lazarenko had an interest in the seized funds, Rule 32.2(c)(2)

13   does limit the parties who may participate by providing that "[t]he defendant may not object

14   to the entry of the final order on the ground that the property belongs, in whole or in part, to a

15   codefendant or third party; nor may a third party object to the final order on the ground that

16   the third party had an interest in the property."  "As a practical matter, then, the only party

17   that can assist the court in determining whether the defendant had an interest in the property

18   is the government. . . ."  David B. Smith, Prosecution and Defense of Forfeiture Cases §

19   14.08(2)(a) (Matthew Bender & Co., Inc. 2008).

20   To ensure that the government does not forfeit property beyond its reach, the Court

21   will hold a hearing on Friday, September 26, 2008 on the extent of Lazarenko's interest in

22   the forfeited funds. The government shall submit any evidence that the Court should consider

23   by  Friday, September 12, 2008.  Pursuant to Rule 32.2(c)(2), only the government will be

24   permitted to appear and present evidence.

25                                   **CONCLUSION**

26   Because there is no triable issue whether Eurofed has a superior interest in the seized

27   Bank of America accounts, summary judgment is GRANTED to the government.  Eurofed's

28   argument that the government failed to bear its burden of proving that Lazarenko had an

interest in the property cannot be considered in the ancillary proceeding; the ancillary

1  proceeding is not an opportunity to relitigate the forfeitability of the property.  Eurofed's

2  arguments based on res judicata, statute of limitations, and the act of state doctrine fail

3  because they too exceed the scope of the ancillary proceeding.  Accordingly, summary

4  judgment to Eurofed is DENIED.  The Court will hold a hearing on September 26, 2008 to

5  determine the extent of Defendant Lazarenko's interest in the forfeited funds.

6         **IT IS SO ORDERED.**

7

8  

   Dated:  August 22, 2008             _____
9                                      CHARLES  R. BREYER
                                       UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California