MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

PATRICIA J. KENNEY (CSBN 130238)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:  415.436.6857
    Facsimile::  415.436.7234
    Email:  patricia.kenney@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>PAVLO LAZARENKO,<br><br>    Defendant. | CASE NO.  00-CR-00284 CRB<br><br>OPPOSITION TO DEFENDANT'S<br>MOTION FOR RECONSIDERATION<br><br>Date:  TBD<br>Time: TBD |

       Defendant Pavel Lazarenko asks the Court to reconsider its issuance of the July 22, 2013 Preliminary Order Forfeiting 100 Obertz Lane and the issuance of the Writ of Entry to that property. The United States opposes Lazarenko's motion.

I.      **Background**

       Defendant Pavel Lazarenko has not paid any of the outstanding personal money judgment against him for $22,851,000 which represents the money involved in his criminal money laundering activities.  The United States sought to satisfy a small portion of that personal money judgment from the net proceeds of the sale of 100 Obertz Lane, Novato, California (APN 160-571-47, 160-010-83 and 160-

571-45) ("100 Obertz Lane" or "Novato Mansion"),[1] after any third party interests are resolved.  To this end, United States applied for an order forfeiting the Novato Mansion and beginning the process to resolve third party interests, if any, to that property.  *See* Application of the United States, etc., filed July 22, 2013 ("US App.").  The United States also applied for a writ of entry to inspect, secure, maintain, inventory and appraise the property.  *Id.*

On July 25, 2013, the Court granted the government's application, entered a preliminary order forfeiting 100 Obertz Lane and issued the writ of entry.  Early the following day, July 26, 2013, the United States Marshal's Service and the Federal Bureau of Investigation began executing the writ.[2]  Also, the government began publication of notice to third parties on July 26.

While the writ was being executed on July 26, Lazarenko filed a motion asking the Court to reconsider the preliminary order of forfeiture and the issuance of the writ.[3]  *See* [Lazarenko's] (1) Motion for Reconsideration, etc. ("Mot. Recon."), filed July 26, 2013.  Although Lazarenko has a valuable asset, 100 Obertz Lane,[4] Lazarenko argues in effect that he has no obligation to use it to pay

---

[1]  100 Obertz Lane has 20 rooms, nine bedrooms, 9.5 baths, pools which cascade into a Jacuzzi and a swimming pool and tennis courts situated on approximately 11 rural acres of land.  *See* Exhibit A attached; *see also* Application of the United States, etc., filed July 22, 2013, Exhibit B and Exhibit C.

[2]  On July 24, 2013, one of Lazarenko's attorneys, Doron Weinberg, called the undersigned.  Mr. Weinberg confirmed that no one in the past several years has lived at 100 Obertz Lane.  Mr. Weinberg also commented that no decision had been made to challenge the government's application for the order preliminarily forfeiting 100 Obertz Lane or for the writ at that time.  On July 25, 2013 after the Court entered the Preliminary Order Forfeiting 100 Obertz Lane and the Writ of Entry, the undersigned gave advance notice to Mr. Weinberg, by email, that the United States Marshal's Service planned to execute the Writ  the following day.

[3]  Although the owner of record for 100 Obertz Lane is listed as Dugsbury, Inc., evidence at Lazarenko's trial and his conviction on Count Seven demonstrated that Lazarenko is Dugsbery, Inc.  By filing the motion, Lazarenko agrees that he is Dugsbery, Inc.  (If Lazarenko claimed not to be Dugsbery, he would lack standing to bring the motion for reconsideration because he would have no ownership interest 100 Obertz Lane.  Conversely, if Dugsbery is not Lazarenko, then Dugsbery has a remedy by filing a petition asserting an ownership interest in 100 Obertz Lane which will commence an ancillary proceeding to resolve that claim under 21 U.S.C. § 853(n)(6) (as incorporated by 18 U.S.C. § 982(b)(1).)

[4]  A recent drive-by appraisal of 100 Obertz Lane valued the property at $6,800,900, albeit Lazarenko failed to pay at least $2,500,000 in property taxes.

any portion of the $23,851,000 personal money judgment which has been outstanding, unpaid, since September 2006.

## II.     Argument

Neither the law nor logic support Lazarenko's argument that, notwithstanding the $22,851,000 he owes to the United States, he is entitled to the newly found equity in his Novato Mansion and that he should not be compelled to use that new equity to pay down his considerable debt to the United States.

### A.     *Res Judicata* Does Not Bar the United States From Collecting on Lazarenko's Delinquent $22,851,000 Personal Money Judgment.

The United States is not seeking to re-litigate the $22,851,000 forfeiture, nor is the United States in this case attempting to change the amount of the outstanding $22,851,000 judgment.[5]  Rather, the United States obtained the July 25, 2013 preliminary order of forfeiture against Lazarenko's Novato Mansion to *collect* on the judgment.  After third party interests are cut off or resolved, the United States intends to sell the Novato Mansion, using the net proceeds from that sale to reduce a small portion of Lazarenko's delinquent, unpaid judgment.  Thus, Lazarenko is incorrect that *res judicata* applies, *inter alia,* because there is no identity of claims involving forfeiture and collection. Mot. Recon. at 2.

Congress authorized various means by which the government can collect on a personal money judgment.  *See* Stefan D. Cassella, Asset Forfeiture Law in the United States Second Edition (2013)("AF Law"), § 24-7, at 882 and § 22-2; Fed. R. Crim. P. 32.2(e); 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b)(1)).  The United States is free to use Rule 32.2(e)(1) to satisfy a judgment from assets which are directly forfeitable under an existing order of forfeiture.  *Id.*; Fed. R. Crim. P. 32.2(e)(1).  Or the United States can use Rule 32.2(e)(2) to satisfy a judgment from substitute assets.  AF Law, *supra*; Fed. R. Crim. P. 32.2(e)(2).  Another method for collecting a judgment debt owed to the United States is using the Federal Debt Collection Procedure Act also known as the FDCPA, 28 U.S.C. § 3001, *et seq.*

---

[5]  There is authority, however, that the United States can move to amend the judgment at any time on the basis of newly discovered assets.  *United States v. Kilbride,* 2007 WL 2528087 (D. Ariz. 2007).

1   Or, the United States can ask a court to appoint a receiver to collect, marshal and take custody of the

2   defendant's assets.  AF Law, *supra*.

3       In this case, the United States opted to collect a small portion of Lazarenko's unpaid debt by

4   selling his Novato Mansion which is authorized by both prongs of Rule 32.2(e) – as a direct forfeiture

5   under an existing order of forfeiture, or as a forfeiture of substitute assets.  Fed. R. Crim. P. 32.2(e)(1)

6   and (2).  The Court "may at any time" authorize collection on a money judgment under Rule 32.2(e).

7   Fed. R. Crim. P. 32.2(e).  Further, amending a forfeiture judgment to collect assets under Rule 32.2(e)

8   can properly be done as often as needed to include additional property until the judgment is satisfied.

9

10  *See, e.g., United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Bank of California*

11  *International),* 980 F. Supp. 522, 524 (D.D.C. 1997) (the order amended four times).

12      **B.    The United States Can Collect on its $22,851,000 Personal**
        **Money Judgment by Forfeiting 100 Obertz Lane Directly.**
13

14      Lazarenko's Novato Mansion is directly forfeitable under Rule 32.2(e)(1).  US Appl., at 2-4.  It

15  is undisputed that the Lazarenko was convicted of money laundering in Count Seven based on his use of

16  $6,745,000 in laundered funds to purchase his Novato Mansion, placing it in the name of Dugsbery, Inc.

17  Notwithstanding that he purchased the Mansion with laundered money, Lazarenko claims the United

18  States cannot directly forfeit it because Rule 32.2(e)(1) also requires the United State to have "identified

19  and located" that property *after* the forfeiture order was entered and the United States failed to do so.

20  Mot. Recon., at 3-4.  Lazarenko's argument lacks merit.  The United States has complied with all Rule

21  32.2(e)(1) requirements.

22

23      Lazarenko argues that, because the United States "identified and located" the Novato Mansion in

24  2000 in the original indictment as well as in superseding indictments, the United States cannot now

25  claim to have "identified and located" that property *after* the $22,851,000 judgment was entered in

26  September 2006.  *Id.*  Lazarenko ignores, however, that after the $22,851,000 judgment was entered, the

27  United States "identified and located" new equity that had been freed up in the Novato Mansion.

28

Specifically, at Lazarenko's September 2006 sentencing, the United States opted to have a $22,851,000 personal money judgment entered to include the value of the Novato Mansion because that property was encumbered by UTICo's *lis pendens*, by a $40,000,000 writ of attachment, by substantial Marin County property tax liens and by other liens. After the entry of the forfeiture in September 2006, however, the United States "identified and located" new equity in the Novato Mansion: The $40,000,000 writ of attachment was not renewed after February 2008, and the plaintiff who obtained that writ lost its civil case both in district court and on appeal in 2009. US App., at 3-4. Thus, the United States has satisfied the requirements of Rule 32.2(e)(1).

### C.   The United States is Not Barred by the Statute of Limitations from Using Lazarenko's Novato Mansion to Satisfy a Portion of the Outstanding Judgment.

Lazarenko argues the United States waited too long to forfeit his Novato Mansion, and is therefore barred by the statute of limitations in 19 U.S.C. § 1621. This argument lacks merit because money judgments can be enforced until satisfied and Rule 32.2(e) expressly authorizes amending a forfeiture judgment to forfeit assets that are either directly forfeitable or forfeitable as substitute assets "at any time." Fed. R. Crim. P. 32.2(e); Advisory Committee Notes 2000 to Subsection (e).

The longstanding rule is that judgments can be enforced until satisfied. *See, e.g., Smith v. United States,* 143 F.2d 228, 229 (9th Cir. 1944). "It has always been assumed that there is no time limitation for the enforcement of a judgment, whether of fine or imprisonment, rendered upon conviction for crime." *Id.*; *see United States v. Summerlin,* 310 U.S. 414,416 (1940) ("It is well-settled that the United States is not bound by state statute of limitations or subject to the defense of laches in enforcing its rights.").

Similarly, forfeiture in the form of a personal money judgment remains in effect until satisfied. *United States v. Casey,* 444 F.3d 1071, 1074 (9th Cir. 2006) (If defendant is insolvent at the time of sentencing, the court must impose a money judgment that remains in effect until it is satisfied when the defendant acquires assets); *United States v. Navarrete,* 667 F.3d 886, 887-88 (Like a restitution order, a

forfeiture order is an *in personam* judgment that remains in effect until satisfied); *United States v. Fogg,* 666 F.3d 13, 19 (1st Cir. 2011) (A money judgment allows the government to collect on a forfeiture order in the same way a successful plaintiff in a civil suit collects a money judgment from a defendant.).

In *Casey,* the Ninth Circuit discussed the rationale for imposing a mandatory money judgment on a defendant without assets at sentencing.  *Casey,* 444 F.3d at 1073-74.  A criminal "who dissipates the profits or proceeds of his racketeering activity on wine, women, and song has profited from . . . crime to the same extent as if he had put the money in his bank account."  Congress intended criminal forfeiture provisions to take the profit out of crimes.  *Id.*  In this case, Lazarenko purchased an asset with laundered funds – the Novato Mansion – the value of which dissipated pre-sentencing because of encumbrances, but has since acquired considerable value.  Lazarenko should not be able to profit from his money laundering activities or to insulate an asset from paying his debt to the United States.

In addition, Rule 32.2(e)(1) expressly provides that the Court "may at any time" enter an order to forfeit property which is subject to an existing order of forfeiture, but which was located and identified after the entry of that order.  Fed. R. Crim. P. 32.2(e)(1)(A).  The rule expressly authorizes even repeated amendment of forfeiture orders at any time which includes post-entry of a judgment.  *See, e.g., BCCI Holdings,* 980 F. Supp. at 524 (the order amended four times).

### D.  The United States Can Forfeit Lazarenko's Novato Mansion As Substitute Property to Satisfy a Portion of the Outstanding Judgment.

Lazarenko's Novato Mansion is also forfeitable as a substitute asset under Rule 32.2(e)(2) based on the applicability of 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b)(1)).[6]  US App., at 4-5;

---

[6]  Section 853(p)(1) provides for forfeiture of substitute assets up to the value of the forfeited asset if the forfeited asset:
. . . as a result of any act or omission of the defendant –
    (A)  cannot be located upon the exercise of due diligence;
    (B)  has been transferred or sold to, or deposited with a third party;
    (C)  has been placed beyond the jurisdiction of the court;
    (D)  has been substantially diminished in value; or
    (E)  has been commingled with other property which cannot be divided without difficulty.
21  U.S.C. § 853(p)(1).

*see also United States v. Alamoudi,* 452 F.3d 310 (4th Cir. 2006) (government properly sought substitute assets post-conviction).   Lazarenko, however, argues that Section 853(p) does not apply because Lazarenko committed no act or omission which "led to the government's decision not to seek the forfeiture of 100 Obertz Lane in the final forfeiture order but instead to seek a personal money judgment against him." Mot. Recon., at 5.  The United States disagrees with Lazarenko's logic.

Unquestionably, Lazarenko's Novato Mansion – which was paid for with his laundered money – was subject to forfeiture.  Because of his criminal money laundering activities, Lazarenko and others were sued by UTICo.  UTICo filed a *lis pendens,* and obtained a court-issued $40,000,000 writ of attachment against the Novato Mansion.  Thus, Lazarenko's criminal money laundering activities were the reason his Novato Mansion had no equity at the time of his sentencing.  21 U.S.C. § 853(p)(1)(D). As a result of this, the United States sought a personal money judgment in the amount of Lazarenko's criminal money laundering which included the original purchase price of the Novato Mansion. Subsequently, the Novato Mansion was no longer encumbered following the dismissal of the civil case in which the writ of attachment was issued and the Ninth Circuit's affirmance of that dismissal.  In a recent drive-by appraisal, it was appraised at $6,800,9000, albeit as Lazarenko points out there are outstanding property taxes of as much as $2,500,000.  Mot. Recon., at n. 1.

**E.      There is No Reason to Delay the Resolution of Third Party Claims, if Any, by the Reconsideration of the Preliminary Order of Forfeiture and the Writ of Entry.**

Lazarenko urges the Court to order additional briefing on the foregoing issues to determine whether to "estop" the government from forfeiting his Novato Mansion.  Although he claims he will be severely prejudiced, Lazarenko has already briefed the issues in his motion for reconsideration.[7]  Mot. Recon.  The United State respectfully submits no further briefing is necessary.

---

[7]  A party seeking to estop the government bears a heavy burden.  In addition to proof of the traditional elements of estoppel, that party must prove affirmative misconduct on the part of the government going beyond mere negligence and that the public interest will not be harmed by imposing the estoppel. *Morgan v. Gonzales,* 495 F.3d 1048, 1091-92 (9th Cir. 2007), *citing United States v. Watkins,* 875 F.2d 699, 707 (9th Cir. 1989) (en banc).

**F.      The Court Properly Issued the Writ and the United States has Already Incurred Considerable Expense in Securing and Maintaining 100 Obertz Lane.**

Contrary to Lazarenko, the Court has the authority to issue a writ of entry under 21 U.S.C. § 853(g) (as incorporated by 18 U.S.C. § 982(b)(1)).  US App., at 6-7; Mot. Recon., at 6-7.  The Court's Preliminary Order Forfeiting 100 Obertz Lane is final as to Lazarenko, and preliminary only as to any third party claiming an ownership interest.  Fed. R. Crim. P. 32.2(b) and (c).  Further, Section 853(g) makes clear the Court has authority to issue not only writs of entry, but other orders to protect the interest of the United States in the property.  21 U.S.C. § 853(g).

Following a courtesy notice to Lazarenko's attorney on July 25, 2013 from the undersigned, the United States Marshal's Service and the Federal Bureau of Investigation began to execute the writ of entry on Friday, July 26, 2013, taking initial steps to inspect, secure, maintain, inventory and appraise the premises, including all structures.  Lazarenko's attorney had previously informed the undersigned that no one had lived at, or was currently living at, 100 Obertz Lane.  This was confirmed by the USMS. The USMS has already invested considerable time and resources on, for example, securing and maintaining the premises, including the use of security consultants, contracting for a security system, changing and installing locks and taking other essential steps to secure and maintain the Mansion.  The USMS efforts are continuing as it seeks to contract and has contracted for a variety of services. Accordingly, the United States would oppose rescinding the Court's writ of entry.

**G.      Lazarenko Lacks Standing to Make Requests on Behalf of Third Parties.**

Lazarenko makes two additional arguments.  Mot. Recon., at 7-8.  First, he asks to be allowed to remove any personal belongings that he may have at the Novato Mansion.  Second, he asks that other third parties – "his first wife, children, relatives, acquaintances, friends etc." – be allowed to remove their personal property.  Lazarenko's assertion that the "government refused to consent that anyone enter 100 Obertz Lane to remove personal property" reflects a misunderstanding.

1    In the ordinary course, the United States Marshal's Service allows anyone legally living on

2    forfeited real property, such as the owner or tenants, to vacate the premises in 30 days with their

3    personal property.  If no one is living on the property, as in this case, the USMS enters and secures the

4    property, but does not work with third parties to remove personal property until after any third party

5    interests in the real property are resolved.

6         The USMS could not allow any third parties to enter during the initial execution of the writ of

7    entry consistent with their duties.  Although the undersigned is informed that relatively little personal

8    property was observed during the execution of the writ, the undersigned is willing to discuss with

9    Lazarenko and third parties removal of personal property.

10

11   **III.    Conclusion**

12        For the foregoing reasons, the United States requests the Court to deny Lazarenko's motion for

13   reconsideration.

14

15                                                   MELINDA HAAG
                                                     United States Attorney

16

17                                                   _____/s/_____
                                                     PATRICIA J. KENNEY

18                                                   Assistant United States Attorney
                                                     Attorneys for the United States

19

20

21

22

23

24

25

26

27

28