1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   | USA,                          | Case No.  00-cr-00284-CRB-1

9   |              Plaintiff,        |

10  |       v.                       | **PRELIMINARY ORDER OF**
    |                                | **FORFEITURE OF ASSETS TO BE**
    |                                | **APPLIED TOWARD DEFENDANT'S**
11  | LAZARENKO,                     | **MONEY JUDGMENT**

12  |              Defendant.        |

13          In the 1990s, Defendant Pavel Lazarenko held various political positions in

14   Ukraine, including First Vice Prime Minister and Prime Minister.  During his "meteoric

15   rise" to power, Lazarenko "formed multiple business relationships and engaged in a

16   tangled series of business transactions that netted him millions of dollars."  United States

17   v. Lazarenko, 564 F.3d 1026, 1029 (9th Cir. 2009).  Eventually, Lazarenko was convicted

18   on eight counts of money laundering.  See id. at 1033–42; Amend. Judgment (dkt. 1574).

19   His sentence included a $22,851,000 forfeiture money judgment.  See Amend. Judgment.

20          Lazarenko has not paid most of that sum.  Although the parties dispute how much

21   Lazarenko owes on the money judgment, the parties agree that he owes at least

22   $13,362,491.88.  See Mot. (dkt. 1728) at 3; Opp. (dkt. 1731) at 12; Reply (dkt. 1732) at 1.

23   According to the government, Lazarenko owes north of $19 million.[1]

24          The government now moves for a preliminary order of forfeiture against all funds

25   on deposit in Lazarenko's Bank Julius Baer (BJB) Guernsey account and

26   Liechtensteinische Landesbank AG (NRKTO) account.  See Mot. at 1.  The government

27   _____

28   [1] The parties disagree regarding the amount that should be applied to the judgment based on the
     forfeiture and sale of Lazarenko's Novato, California mansion.

United States District Court
Northern District of California

represents that the total value of the BJB Guernsey and NRKTO funds is at least $2,010,000.  <u>See</u> Mot. at 4.  The government argues that these funds are forfeitable as "substitute property" under 21 U.S.C. § 853(p).  <u>Id.</u> at 5.[2]  The Court previously ruled that the government had not provided enough detail for the Court to decide its motion, ordered the government to provide supplemental briefing and evidence, and permitted Lazarenko to file a supplemental response.  <u>See</u> Order Re Supp. Br. (dkt. 1737) at 4 ("The BJB Guernsey and NRKTO funds may well be forfeitable as substitute property.  The government must show why.").  The Court now grants the government's motion and enters a preliminary order of forfeiture.

## I.    LEGAL STANDARD

Under the federal criminal forfeiture statute, any person convicted of certain offenses "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation."  21 U.S.C. § 853(a)(1).  Directly forfeitable property is often referred to as "tainted" property because it is connected to, and thus tainted by, the underlying criminal conduct.  <u>Honeycutt v. United States</u>, 137 S. Ct. 1626, 1634 (2017).

Congress also "contemplated situations where the tainted property itself would fall outside the Government's reach."  <u>Id.</u>  Those circumstances arise when, because of the defendant's conduct, certain tainted property

    **(A)**    cannot be located upon the exercise of due diligence;
    **(B)**    has been transferred or sold to, or deposited with, a third party;
    **(C)**    has been placed beyond the jurisdiction of the court;
    **(D)**    has been substantially diminished in value; or
    **(E)**    has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1); <u>Honeycutt</u>, 137 S. Ct. at 1634 (explaining that the government must prove that at least one of these conditions "was caused by the defendant").  If the government shows as much, the court "shall order the forfeiture" of "any other property"

---

[2] The government does not argue that these funds are tainted or assert any alternate basis for forfeiture.

United States District Court
Northern District of California

United States District Court
Northern District of California

belonging to the defendant, but only "up to the value" of the tainted property that has fallen beyond the government's reach for one or more of the enumerated reasons. 21 U.S.C. § 853(p)(2).

This other property is referred to as "substitute" property. Id.; Honeycutt, 137 S. Ct. at 1634. "A court may order forfeiture in the form of a personal money judgment against the defendant, and . . . the government may attempt to satisfy the judgment with any substitute property it locates in the future." United States v. Nejad, 933 F.3d 1162, 1165 (9th Cir. 2019).

## II.    DISCUSSION

Here, the government represents that the total value of the BJB Guernsey and NRKTO funds is at least $2,010,000. See Mot. at 4. So the Court must determine whether the government has shown that, because of Lazarenko's conduct, any tainted property matching or exceeding $2,010,000 has fallen beyond the government's reach for one of the reasons enumerated in § 853(p)(1).[3] The government argues that Lazarenko (1) substantially diminished the value of a directly forfeitable Novato, California mansion by approximately $4,020,596.30, and (2) dissipated $2,033,602.80 in directly forfeitable funds previously located in Lazarenko's BancBoston Robertson Stephens (BBRS) account. See Gov Supp. Br. (dkt. 1738) at 8. The Court addresses these bases for forfeiting substitute property in reverse order. The Court concludes that the government has shown that more than $2,010,000 has fallen beyond the government's reach for one of the reasons listed in § 853(p)(1).

### (A)    BBRS Account Funds

The government argues that Lazarenko commingled and then transferred $2,033,602.80 in directly forfeitable property previously located in Lazarenko's BBRS account, such that the funds cannot reasonably be located upon the exercise of due

---

[3] Contrary to Lazarenko, see Lazarenko Supp. Br. (dkt. 1741) at 2, the statute does not require the government to show that other tainted property that could satisfy the forfeiture money judgment is unavailable. For that reason, the parties' dispute about whether tainted funds located in Antigua and Lithuania are available for forfeiture is beside the point. See infra part II.C.1.

1    diligence.  See id.

2        One of Lazarenko's underlying convictions was based on the transfer of $2.3

3    million into the BBRS account in September 1998.  See Lazarenko, 564 F.3d at 1037,

4    1047.  An additional $200,000 deposit was made in October 1998; the funds were then

5    commingled and invested in securities.  Montemorra Decl. (dkt. 1738-5) ¶ 5; BBRS

6    Monthly Statements (dkt. 1738-2) at Appx. 367–417.  The account's value increased, but

7    by the time the United States seized all funds in the account, only $266,307.20 remained.

8    See Amended Judgment (dkt. 1555) at 10.  The rest of the money had been transferred out

9    of the account.  See BBRS Monthly Statements at Appx. 367–417.  $796,200 was

10   transferred to six third party accounts around the world.  Montemorra Decl. ¶ 6.  And

11   batches comprising another $2,150,000 had been transferred to a Wells Fargo account in

12   Sacramento (apparently owned by Lazarenko) from April through December 1999.  Id. ¶ 7.

13   At least $766,026.90 of those funds was, in turn, used to purchase cashier's checks;

14   another $826,254 was paid to third parties including law firms, schools, and insurance

15   companies.  Id. ¶ 11.

16       Based on this information, the government has shown that $2,033,602.80 from the

17   BBRS account is forfeitable as substitute property.  As an initial matter, the $2.3 million

18   was commingled with $200,000 before being invested and later dispersed via transfers to

19   various accounts.  Therefore, the full amount not already recovered by the government—

20   $2,033,602.80—was "commingled with other property" and cannot now be "divided

21   without difficulty."  21 U.S.C. § 853(p)(1)(E).

22       Even if that were not the case, $2,033,602.80 was placed beyond the government's

23   reach for other reasons listed in § 853(p)(1).  $1,622,454 was transferred to third parties

24   either directly from the BBRS account or indirectly via the Wells Fargo Sacramento

25   account, see id. § 853(p)(1)(B), and another $766,026.90 was used to purchase cashier's

26   checks and thus cannot be located upon the exercise of due diligence, see 21 U.S.C.

27   § 853(p)(1)(A).  These sums similarly indicate that $2,033,602.80 of the previously

28   directly forfeitable property fell beyond the government's reach for one or more of the

United States District Court
Northern District of California

4

1  listed reasons.

2      Therefore, based on Lazarenko's conduct with respect to the BBRS account funds,

3  the government has shown that it is entitled to $2,033,602.80 of "any other" property

4  belonging to Lazarenko.  21 U.S.C. § 853(p)(2).[4]

5      **(B)    Novato Mansion**

6      The government argues that Lazarenko diminished the value of the Novato Mansion

7  by over $4 million, "including past due taxes and penalties of $1,848,035.06, the cost of

8  necessary repairs of $1,010,900, sales expenses and third party payments at settlement of

9  $1,056,324.64, and U.S. Marshals Service costs of $105,336.60."  Gov Supp. Br. at 8.

10      In 1998, Lazarenko purchased the Novato mansion for $6,45,000 with the proceeds

11  of money laundering activities underlying one of Lazarenko's convictions.  See Order re

12  Mot. for Forfeiture (dkt. 1737) at 3 n.4.  The mansion was thus directly forfeitable.  See 21

13  U.S.C. § 853(a)(1).  At Lazarenko's 2006 sentencing, the government obtained a money

14  judgment of forfeiture for the appreciated value of the property—$7,900,000.  Opp. at 13;

15  Reply at 2.  The government obtained a final order of forfeiture for the property in 2013.

16  See Final Judgment of Forfeiture (dkt. 1626) at 1.  Up until then, Lazarenko remained the

17  owner of the property.

18      The government realized only $2,799,023.10 in net forfeiture from the sale of the

19  property.  See Return on Final Order of Forfeiture (dkt. 1674).  One reason was the state of

20  the mansion.  When the U.S. Marshals Service was preparing to sell the property, it

21  obtained an appraisal that detailed the property's maintenance issues and valued the

22  property at $4.8 million.  See Appraisal (dkt. 1738-1) at Appx. 121.  The mansion needed

23

24  [4] Lazarenko argues that the government cannot show that Lazarenko dissipated these assets
because other individuals (namely Michael Menko and Peter Kiritchenko) controlled Lazarenko's
25  funds in the BBRS account.  See Lazarenko Supp. Br. at 12.  But if Lazarenko lacked control over
these funds, it is because, at some point, he transferred that control to Menko and Kiritchenko.
26  And if Lazarenko transferred the funds to third parties who then transferred them again, the funds
were placed beyond the reach of the government because of Lazarenko's conduct.  See 21 U.S.C.
27  § 853(p)(1)(B).  The § 853(p)(1)(B) transfer may have occurred earlier, but it still happened.
Furthermore, given the multiple alternate bases for determining that the BBRS funds satisfy
28  § 853(p)(1), the Court concludes that any delay by the government in seeking substitute forfeiture
based on those funds did not prejudice Lazarenko.  See Lazarenko Supp. Br. at 15–16.

United States District Court
Northern District of California

5

1   repairs to its roof, windows, tennis court, electrical system, pool, landscaping, and other

2   features. Id. at Appx. 126–27.  Indeed, the appraisal determined that a buyer would have

3   to spend "between $2 and $3 million dollars" on repairs.  Id. at Appx. 127.

4       These issues were likely caused by Lazarenko's failure to maintain the mansion.  In

5   2012, a newspaper described the mansion as abandoned, and at least one group of roughly

6   100 teenagers threw a party inside the neglected home.  See Article (dkt. 1738-1) at Appx.

7   141–44.  The U.S. Marshals Service spent $1,010,900 on repairs, but the home still sold

8   for just $5,050,000.  See Return on Final Order of Forfeiture.[5]

9       Therefore, because of Lazarenko's conduct, the Novato mansion was "substantially

10  diminished in value" by at least the value attributable to the repairs performed by the U.S.

11  Marshals Service—$250,000, the gap between the appraised value before any repairs and

12  the sale price of the home.  See 21 U.S.C. § 853(p)(1)(D).[6]

13      The Court need not consider whether Lazarenko diminished the value of the

14  mansion by the full amount spent on repairs, or whether Lazarenko's additional conduct

15  (such as his failure to pay taxes on the home) resulted in further diminished value.  The

16  government represents that the total value of the BJB Guernsey and NRKTO funds is at

17  least $2,010,000.  See Mot. at 4.  Based on the BBRS account funds and the value of

18  repairs performed at the Novato Mansion, the government has shown that, because of

19  Lazarenko's conduct, at least $2,283,602.80 has fallen beyond the government's reach for

20  one of the reasons enumerated in § 853(p)(1).[7]

21

22  [5] The Court rejects Lazarenko's argument that he should necessarily have received credit for
    $7,900,000 when the government forfeited the Novato mansion.  See Opp. (dkt. 1731) at 13.
23  Lazarenko owed the government $7,900,000 pursuant to a portion of the forfeiture money
    judgment based on Lazarenko's criminal activity in connection with the mansion.  Lazarenko
24  remains responsible for paying the leftover sum, at least to the extent that he caused the mansion
    to diminish in value.
25  [6] The Court thus assumes without deciding that the government is not entitled to cost of repairs
    that did not (as it turned out) enhance the value of the property.  See Lazarenko Supp. Br. at 8.
26  But the Court finds that the difference between the appraisal value and the sale price was
    attributable to repairs performed by the government.
27  [7] The Court rejects Lazarenko's argument that he could not have been responsible for the property
    because, for two significant chunks of time during his ownership of the property, he was in federal
28  custody.  See Lazarenko Supp. Br. at 9.  The government was not obligated to move to forfeit the
    property earlier.  See id. at 10–11.  And in the meantime, as the true owner of the property,

United States District Court
Northern District of California

United States District Court
Northern District of California

**(C)     Additional Issues**

Lazarenko argues that the Court should deny the government's motion because other forfeitable funds are available in certain foreign bank accounts.  See Opp. at 12.  He also argues that forfeiture of the BJB Guernsey and NRKTO accounts is barred by "numerous" equitable doctrines.  Opp. at 14.  And he requests a hearing regarding the validity of a restraint on some of his assets.  Opp. at 21.  The Court addresses these points in turn.

### 1.     Other Funds

Lazarenko argues that Lazarenko has forfeitable funds available in Antiguan and Lithuanian bank accounts, such that "substitution is not warranted."  Opp. (dkt. 1731) at 12.  The government argues that these funds are unavailable.  See Reply (dkt. 1732) at 4–5.  The Court need not resolve this dispute, which is irrelevant to the issue whether the government has shown that tainted property equaling or exceeding the amount that the government seeks as substitute property has been placed beyond the government's reach for one of the reasons listed in § 853(p)(1).  See Nejad, 933 F.3d at 1165 (explaining that the government may satisfy a money judgment with "any substitute property it locates in the future"); 21 U.S.C. § 853(p)(2) (explaining that if the government identifies tainted property that has fallen beyond its reach for one of the listed reasons, the government can obtain "any other property" belonging to the defendant) (emphasis added); supra note 3.

### 2.     Equitable Doctrines

Lazarenko argues that forfeiture of the BJB Guernsey and NRKTO accounts is barred by judicial estoppel and the election of remedies doctrine—and that, in the alternative, the Court should stay the government's motion under the first-to-file rule.

#### a.     Judicial Estoppel

In 2004, the government initiated civil forfeiture proceedings in the U.S. District Court for the District of Columbia against the BJB Guernsey account, asserting that funds

---

Lazarenko was responsible for its diminished value.  Lazarenko acknowledges that the property had a caretaker, but does not explain why this caretaker failed to maintain the property.  The Court thus finds that Lazarenko could have taken steps to maintain the property but did not.

in the account were traceable to the same unlawful activities described in the Second Superseding Indictment in the criminal case before this Court. <u>See</u> Opp. at 6. In June 2005, the government filed an amended complaint that also sought forfeiture of the NRKTO account funds. <u>See id.</u> These accounts have since been under court-ordered restraint. <u>See id.</u> at 6–7. For years, Lazarenko has been challenging the restraint, arguing that the government cannot show that the funds in the accounts are tainted. <u>See</u> Opp. at 7–8. That challenge remains pending in the D.D.C. proceedings. <u>Id.</u>

Lazarenko argues that the government is judicially estopped from obtaining the BJB Guernsey and NRKTO funds as substitute property because (1) the government's position that the funds constitute substitute property is inconsistent with its long-held position in the D.D.C. proceedings that the BJB Guernsey and NRKTO funds are directly forfeitable; (2) the government persuaded the D.D.C. court that the BJB Guernsey and NRKTO funds were tainted and obtained restraining orders to that effect; and (3) allowing the government to obtain the BJB Guernsey and NRKTO funds would give the government an unfair advantage because had these funds not been restrained as tainted property, Lazarenko could have used them to pay for his defense and other outstanding bills. <u>See</u> Opp. at 18.

The parties agree that the applicable test is whether (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party's prior position was successful; and (3) allowing the inconsistent position would result in an "unfair advantage" or impose an "unfair detriment" on the opposing party. Opp. at 17 (citing <u>United States v. Liquidators of European Fed. Credit Bank</u>, 630 F.3d 1139, 1148 (9th Cir. 2011)); Reply at 8 (citing <u>United States v. Kim</u>, 806 F.3d 1161, 1167 (9th Cir. 2015)).

Forfeiture of the BJB Guernsey and NRKTO accounts is not barred by judicial estoppel because the government's position that the funds are forfeitable as substitute property is not inconsistent with the government's position in the D.D.C. proceedings. Under § 853(p), if "any" directly forfeitable property is placed beyond the reach of the government due to the defendant's conduct for one of the listed reasons, then the court shall order the forfeiture of "any other property" of the defendant up to the value of the

United States District Court
Northern District of California

1    property placed beyond the reach of the government.  18 U.S.C. § 853(p)(1), (2).  The

2    phrase "any other property" is most naturally read to mean any property of the defendant

3    that has not been placed beyond the government's reach for one of the reasons enumerated

4    in § 853(p)(1).  Accordingly, the statute does not preclude courts from ordering the

5    forfeiture of other tainted property as substitute property.  The Court thus agrees with the

6    First Circuit that "it makes no difference that this property could perhaps have been

7    forfeited . . . as comprising or derived from the proceeds of the illegal activity.  Because it

8    was not forfeited, and there is still an unfulfilled judgment . . . this property may be

9    forfeited in substitution." United States v. Saccoccia, 564 F.3d 502, 506 (1st Cir. 2009).[8]

10         Because tainted property can be forfeited as substitute property under the statute,

11   the government's position in the D.D.C. litigation is not inconsistent with the position that

12   the government has taken here, and Lazarenko's judicial estoppel argument fails.[9]

                              **b.    Election of Remedies**

14         Lazarenko argues that the government may not obtain the BJB Guernsey and

15   NRKTO funds as substitute property because the government chose to pursue those funds

16   via civil forfeiture proceedings in the D.D.C. litigation.  See Opp. at 18 (citing Teutscher v.

17   Woodson, 835 F.3d 936, 955 (9th Cir. 2016)).

18         This argument fails as well.  "A party is bound by his election of remedies if three

---

[8] Property cannot be simultaneously tainted and untainted.  But that does not contradict the
Court's reading of § 853(p), which permits both tainted and untainted property to be forfeited as
substitute property.  See Saccoccia, 564 F.3d at 506–507 ("[A]n asset cannot both be 'proceeds
initially subject to forfeiture' and 'not proceeds initially subject to forfeiture' since on proposition
is the negative of the other; but in our view assets in either category can be used as substitute
assets . . . .").  To the extent the Tenth Circuit has held that an asset "cannot logically be both
forfeitable and a substitute asset," see United States v. Bornfield, 145 F.3d 1123, 1139 (10th Cir.
1998), the Court disagrees.  The Court also notes that Bornfield's broad language came in a
unique context.  The Tenth Circuit held that there was no "valid initial award of forfeiture," such
that "the district court could not grant forfeiture pursuant to the substitute assets provision."  145
F.3d at 1139.  Here, unlike in Bornfield, "there is no question that the monetary forfeiture
judgment . . . is sound."  United States v. Smith, 770 F.3d 628, 642 n.39 (7th Cir. 2014).
[9] Lazarenko's argument that the doctrine of corporate standing must apply here based on a
position that the government apparently took in the D.D.C. litigation, see Lazarenko Supp. Br. at
16–17, also fails to establish the elements of judicial estoppel because the argument does not
address the government's success in advancing the position or whether the government has gained
an unfair advantage.

conditions are met: (1) two or more remedies existed at the time of the election, (2) these remedies are repugnant and inconsistent with each other, and (3) the party to be bound affirmatively chose, or elected, between the available remedies." <u>Teutscher</u>, 835 F.3d at 956 (cleaned up).  The election of remedies doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent" and "operates to prevent a party from obtaining double redress for a single wrong." <u>Id.</u> at 955 (cleaned up).

The doctrine does not apply here.  Lazarenko acknowledges that the government "may bring civil forfeiture and criminal forfeiture cases involving the same property." Opp. at 19.  And here, the government has stated that it will dismiss the BJB Guernsey and NRKTO funds from the civil forfeiture case if those funds are ultimately forfeited via the proceedings here. <u>See</u> Reply at 11.  That means (i) the government's pursuit of the BJB Guernsey and NRKTO funds in this criminal forfeiture proceeding is not "legally or factually inconsistent" with its pursuit of the same funds via civil forfeiture proceedings in the D.D.C. litigation, and (ii) the government will not obtain "double redress for a single wrong." <u>Teutscher</u>, 835 F.3d at 955.  Lazarenko argues that the D.D.C. proceedings have involved extensive discovery, Opp. at 19, but the doctrine does not apply when there is no inconsistency between the remedies pursued, <u>see</u> <u>Teutscher</u>, 835 F.3d at 955.

### c.   First-to-File Rule

Lazarenko next argues that this Court should stay this motion because the D.D.C. proceedings involve similar issues and have been pending for seventeen years. <u>See</u> Opp. at 20.  Lazarenko relies on <u>Kohn Law Group, Inc. v. Auto Parts Manufacturing Mississippi, Inc.</u>, which explains that application of the first to file rule is discretionary. <u>See</u> 787 F.3d 1237, 1239 (9th Cir. 2015).  Although the rule "should not be disregarded lightly," it should be applied only when doing so will "maximize economy, consistency, and comity." <u>Id.</u> (quotations omitted).  "The first-to-file rule may be applied when a complaint involving the same parties and issues has already been filed in another district.  Thus, a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." <u>Id.</u> at 1240 (cleaned up).

1    Here, the Court declines to apply the first-to-file rule. For starters, the rule is not a

2    natural fit given that proceedings here commenced years before the D.D.C. proceedings,

3    even if the civil forfeiture complaint in the D.D.C. proceedings came before the forfeiture

4    litigation at issue here. And here, it is more efficient for the Court to rule on the instant

5    motion (after which the government will dismiss the subject property from the D.D.C.

6    action if the subject funds are ultimately forfeited) than for the Court to wait an unknown

7    length of time for potentially relevant rulings in the D.D.C. action.

8    It has been many years since this Court sentenced Lazarenko, and he still owes

9    many millions of dollars on the forfeiture money judgment. The Court declines to

10   facilitate any further unnecessary delay.

### 3.    Restrained Assets

12   Finally, Lazarenko argues that this Court should hold an evidentiary hearing to

13   determine damages resulting from the restraint of the BJB Guernsey and NRKTO funds in

14   the D.D.C. proceedings. See Opp. at 21–22. Lazarenko asserts that (i) the government

15   restrained these assets by arguing that they were tainted, and (ii) by now arguing that the

16   assets are substitute property, the government implicitly concedes that the assets should

17   not have been restrained in the D.D.C. proceedings. See Opp. at 6–9, 21–23. But as the

18   Court has explained, under § 853(p), substitute property can be tainted. See supra part

19   II.C.2.A; Saccoccia, 564 F.3d at 506–07. Therefore, the Court denies Lazarenko's request

20   for an evidentiary hearing.

## III.   CONCLUSION

22   For the foregoing reasons, the Court grants the government's motion for a

23   preliminary order of forfeiture. The government has now established by a preponderance

24   of the evidence that all funds frozen in:

25       a.    Bank Julius Baer & Company, Ltd., Guernsey Branch in Guernsey, Channel

26             Islands (identified by its number ending in -3445) held in the name of or for

27             the benefit of Pavel Lazarenko (the BJB Funds); and

28       b.    Liechtensteinische Landesbank AG in Liechtenstein (identified by its

United States District Court
Northern District of California

1    number ending in NRKTO 7541) held in the name of or for the benefit of

2    Pavel Lazarenko (the NRKTO Funds);

3  (the subject property) is the defendant's property, and, as a result, the subject property (up

4  to $2,283,602.80) can be forfeited as substitute property and applied against the

5  $22,851,000 money judgment.

6    Accordingly, for the foregoing reasons and pursuant to Rule 32.2(e) of the Federal

7  Rules of Criminal Procedure,

8    IT IS HEREBY ORDERED that the Money Judgment and Supplemental

9  Preliminary Order of Forfeiture entered on September 29, 2006 (dkt. 1080), is amended to

10 include the subject property;

11    IT IS FURTHER ORDERED that the government may conduct discovery in order

12 to identify, locate, or dispose of property subject to forfeiture in accordance with Rule

13 32.2(b)(3) of the Federal Rules of Criminal Procedure;

14    IT IS FURTHER ORDERED that the defendant, Pavel Lazarenko, shall execute

15 such documents and take such steps as may be necessary to facilitate the transfer of the

16 BJB Funds and the NRKTO Funds to the United States, or the seizure or restraint of these

17 assets, including through the withdrawal of any objections in foreign proceedings and the

18 execution of any documents as the United States may direct that may facilitate the

19 continued restraint, seizure, or transfer of these assets to the United States;

20    IT IS FURTHER ORDERED that the United States, through its appropriate agency,

21 shall publish on www.forfeiture.gov, a government website, for at least thirty days, notice

22 of this Order and notice of the government's intent to dispose of the property in such

23 manner as the Attorney General may direct, and shall provide notice that any person, other

24 than the defendant, having or claiming a legal interest in the property, must file a petition

25 with the Court and serve a copy on government counsel within (30) days of the final

26 publication of notice or of receipt of actual notice, whichever is earlier. This notice shall

27 state that the petition shall be for a hearing to adjudicate the validity of the petitioner's

28 alleged interest in the property, shall be signed by the petitioner under penalty of perjury

United States District Court
Northern District of California

12

1  and shall set forth the nature and extent of the petitioner's right, title or interest in the

2  forfeited property and any additional facts supporting the petitioner's claim and the relief

3  sought. The United States may also, to the extent practicable, provide direct written notice

4  to any person known to have alleged an interest in the Subject Property, as a substitute for

5  published notice as to those persons so notified;

6  　　　IT IS FURTHER ORDERED that the court maintain jurisdiction to enforce the

7  Preliminary Order of Forfeiture, and to amend it as necessary, pursuant to Rule 32.2(e) of

8  the Federal Rules of Criminal Procedure; and

9  　　　IT IS FURTHER ORDERED that, pursuant to Rule 32.2(b)(4) of the Federal

10 Criminal Rules of Procedure, this Preliminary Order of Forfeiture is final as to the

11 defendant upon entry.

12 　　　**IT IS SO ORDERED.**

13 　　　Dated: August 6, 2021

14 　　　　　　　　　　　　　　　　　　　CHARLES R. BREYER
　　　　　　　　　　　　　　　　　　　United States District Judge