LAW OFFICES OF DANIEL HOROWITZ
Daniel Horowitz
horowitz@whitecollar.us
P.O. Box 1547
Lafayette, CA  94549
Telephone:     (925) 283-1863

Attorneys for Defendant
PAVEL IVANOVICH LAZARENKO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>Pavel Ivanovich Lazarenko,<br><br>　　　　　　　Defendant,<br><br><br>Blank Rome LLP, Fox Rothschild LLP, the Law Offices of David B. Smith PLLC and the Law Office of Daniel Horowitz,<br><br>　　　　　　　Ancillary Petitioners. | Case No. 3:00-cr-00284-CRB-1<br><br><br>Date:<br>Time:<br>Place:<br>Judge:      Hon. Charles R. Breyer |

**OPPOSITION TO MOTION TO DISMISS AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

1

## <u>TABLE OF CONTENTS</u>

2
**Page**

3

BACKGROUND ....................................................................................................1

4

ARGUMENT .......................................................................................................5

5

    A.    The Government's motion must be dismissed and the Law Firms are entitled to

6

        summary judgment under § 853(n)(6)(B)................................................................6

7

        1.    The Law Firms have a legal interest in the BJR and NRKTO accounts......7

8

        2.    The Law Firms provided value. .................................................................8

9

        3.    The Law Firms were without reason to believe that the BJB and NRKTO
            accounts were subject to criminal forfeiture.................................................9

10

    B.    The Government's motion must be dismissed and the Law Firms are entitled to

11

        summary judgment under § 853(n)(6)(A) as well .................................................12

12

        1.    The Law Firms' interest in the BJB and NRKTO accounts vested before
            the Government's interest accrued.............................................................13

13

        2.    This Court's Preliminary Order mooted the Washington Proceeding with
            regard to the same assets and a formal dismissal of the civil forfeiture is

14

            not required .............................................................................................15

15

        3.    *McHan* and *Daugerdas* are not controlling ...............................................18

16

            a)    *United States v. McHan*, 345 F.3d 262 (4th Cir. 2003) .................18

17

            b)    *United States v. Daugerdas*, 892 F.3d 545, 556 (2d Cir. 2018) ....19

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Caplin & Drysdale v. United States,*
5
    491 U.S. 617 (1989)..............................................................................11

6

*Chamberlain. United States v. Marshall,*
7
    872 F.3d 213 (4th Cir. 2017) ...................................................18, 19

8

*District of Columbia Redevelopment Land Agency v. Dowdey,*
    618 A.2d 153 (D.C. App. 1992)...........................................................8, 14

9

*Ellis v. J-R-M Corp.,*
10
    324 F. Supp. 768 (D. Haw. 1971) ..........................................................16

11

*Friedman v. Harris,*
    158 F.2d 187 (D.C. Cir. 1946)...............................................................7, 13

12

*Honeycutt v. United States,*
13
    137 S. Ct. 1626,1635 (2017)...................................................................11

14

*Law Offices of Eric Honig, A.P.L.C. v. United States,*
    CV 09-7568..................................................................................................15

15

*Luis v. United States,*
16
    578 U.S. 5 (2016)........................................................................................17

17

*Martens v. Hadley Mem. Hosp.,*
18
    753 F. Supp. 371 (D.D.C. 1990)...........................................................8, 13

19

*Monarch Life Ins. Co. v. Elam,*
20
    918 F.2d 201 (D.C. Cir. 1990)...............................................................8, 13

21

*Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.,*
    841 F.2d 918 (9th Cir. 1988) .................................................................6

22

*Nunez v. Nunez (In re Nunez),*
23
    196 B.R. 150 (9th Cir. BAP 1996).........................................................16

24

*In re Priest,*
    712 F.2d 1326 (9th Cir. 1983) ...............................................................13

25

*Taylor v. List,*
26
    880 F.2d 1040 (9th Cir. 1989) ...............................................................6

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. $70,990,605,*
    Civ. No. 12-1905 (RDM), 2018 WL 4623568 (D.D.C. Sept. 25, 2018) ..............................15

*United States v. All Assets Held at Bank Julius,*
    244 F. Supp. 3d 188 (D.D.C. 2017) ....................................................................16, 18

*United States v. Church & Dwight Co., Inc.,*
    510 Fed. App'x. 55 (2d Cir. 2013) .............................................................................17

*United States v. Daugerdas,*
    892 F.3d 545 (2d Cir. 2018) ..................................................................17, 19, 20

*United States v. Erpenbeck,*
    682 F.3d 472 (6th Cir. 2012) ................................................................................15, 17

*United States v. Harvey,*
    814 F.2d 905 (4th Cir. 1987) ....................................................................................8

*United States v. Hooper,*
    229 F.3d 818 (9th Cir. 2000) ..................................................................................12

*United States v. Huntington Nat'l Bank,*
    682 F.3d 429 (6th Cir. 2012) ....................................................................................8

*United States v. Jarvis,*
    499 F.3d 1196 (10th Cir. 2007) ........................................................................15, 17

*United States v. Lavin,*
    942 F.2d 177 (3d Cir. 1991) ......................................................................................8

*United States v. Lazarenko,*
    575 F. Supp. 2d 1139 (N.D. Cal. 2008) ..............................................................5, 6

*United States v. Lester,*
    85 F.3d 1409 (9th Cir. 1996) ..................................................................................13

*United States v. Lester,*
    85 F.3d 1409 (9th Cir. 1996) ....................................................................13, 15, 18

*United States v. Liquidators of Eur. Fed. Credit Bank,*
    630 F.3d 1139 (9th Cir. 2011) ................................................................................16

*United States v. McHan,*
    345 F.3d 262 (4th Cir. 2003) ..................................................................17, 18, 19

*United States v. Nejad,*
    933 F.3d 1162 (9th Cir. 2019) ....................................................................13, 15, 18

*United States v. Oregon*,
   671 F.3d 484 (4th Cir. 2012) ...............................................................19

*United States v. Rogers*,
   602 F. Supp. 1332 (D. Col. 1985), *aff'd in part, vacated in part* 960 F.2d 1501
   (1992)................................................................................................8

*United States v. Sodipo*,
   2008 WL 5101722 (D. Md. Nov. 25, 2008) ...........................................8

*United States v. Vampire Nation*,
   451 F.3d 189 (3d Cir. 2006)..............................................................18

**Statutes**

18 U.S.C. § 981...................................................................................9

18 U.S.C. § 982...................................................................................9

21 U.S.C. § 853..................................................................................18

21 U.S.C. § 853(e)..............................................................................18

21 U.S.C. § 853(g).........................................................................14, 17

21 U.S.C. § 853(n)(6)(A)..........................................1, 5, 12, 16, 17, 19, 20

21 U.S.C. § 853(n)(6)(B)............................................1, 5, 6, 7, 9, 11, 20

21 U.S.C. § 853(o)..............................................................................11

21 U.S.C. § 853(p)..............................................................................18

**Federal Rules**

Fed. R. Civ. P. 12(b)(6).........................................................................5

Fed. R. Civ. P. 56................................................................................1

Fed. R. Civ. P. 56(c).............................................................................6

Fed. R. Civ. P. 56(e).............................................................................6

Fed. R. Crim. P. 29..............................................................................2

Fed. R. Crim. P. 32.2............................................................................1

Fed. R. Crim. P. 32.2(c).........................................................................5

**Other Authorities**

Restatement (Second) Judgments, § 24(1)........................................................................11

Pursuant to Fed. R. Crim. P. 32.2 & Fed. R. Civ. P. 56, Blank Rome LLP, Fox Rothschild LLP, the law offices of David B. Smith PLLC and the law offices of Daniel Horowitz, ("Petitioners" or the "Law Firms") file this opposition to the Government's motion to dismiss and a cross-motion for summary judgment on their ancillary petition for the Bank Julius Baer (Guernsey) account (the "BJB account") and the NRKTO account at Landesbank in Liechtenstein.

Under the Law Firms' 2014 agreement with Mr. Lazarenko, they have a charging lien on any property which is not subject to forfeiture in his civil forfeiture proceeding.  Since the property sought to be forfeited as substitute property here will not be forfeited in the civil forfeiture proceeding, the Law Firms' ancillary petition should be granted.

As set forth more fully below, Petitioners' interest in this substitute property arose in July 2014 – before the Government's interest, which arose on August 6, 2021.  Further, Petitioners are bona fide purchasers for value who were without reason to believe that the property was subject to criminal forfeiture until April 9, 2021.  Additional discovery is not warranted.  The Court should enter judgment in Petitioners' favor and dismiss the Government's forfeiture claim in part.  The Law Firms request that this Court release $2,382,226.56 under § 853(n)(6)(A).  This represents the amount that the Law Firms were owed in costs as of August 20, 2021, the date the Government's interest fully vested, as well as a contingency recovery.  Alternatively, they seek $2,357,579.40 under § 853(n)(6)(B), which represents the amount that they were owed in costs as of April 9, 2021, the date on which the Law Firms had reason to believe that these accounts were subject to forfeiture "under this statute," as well as a contingency recovery.

## BACKGROUND

On July 19, 2001, the grand jury returned a second superseding indictment ("SSI") against Pavel Lazarenko.  Dkt. 143.  Trial commenced on March 15, 2004.  On May 7, 2004, this Court entered a judgment of acquittal with respect to many of the allegations.  Dkt. 774.  On June 3,

2004, the jury returned a guilty verdict on the remaining counts.  Dkt. 812.  After an additional ruling under Fed. R. Crim. P. 29 by this Court and an opinion from the Ninth Circuit, Mr. Lazarenko remained convicted of one count of money laundering conspiracy and seven substantive counts of money laundering.  The 45 remaining counts were dismissed due to insufficient evidence.

Separately, on May 14, 2004, the Government filed a civil forfeiture lawsuit in the District Court for the District of Columbia (the "Washington proceeding") seeking to forfeit, among other things, Mr. Lazarenko's BJB account.  Dkt. 1735-1 at 1-38.  The civil forfeiture lawsuit contained allegations that were virtually identical to those contained in the SSI.  The 2005 amended complaint added the NRKTO account as an *in rem* defendant.  Dkt. 1735-1 at 48-96.  Consistent with Supplemental Rule G of the Federal Rules of Civil Procedure, Mr. Lazarenko claimed the BJB and NRKTO accounts in the Washington proceeding.  Dkt. 1735-1 at 105-09.

In March 2014, Mr. Lazarenko entered into a fee agreement with all of the Law Firms except Fox Rothschild LLP.  Declaration of Jed M. Silversmith ("Silversmith Decl.") & Exhibit A (Exhibits A & B are attached to the Government's motion to dismiss; Exhibit C is attached to this Opposition/cross-motion).  The fee agreement was modified twice since that time.  *Id.* at ¶¶ 2-5 & Exhibits B & C.  First, in 2016, it was modified to include Fox Rothschild LLP.  Exhibit C.  In 2018, a separate agreement was executed with Mr. Lazarenko's children.  Exhibit B.  All three documents are collectively referred to as the "Fee Agreement."

Under the terms of the Fee Agreement, the Law Firms have a charging lien on any *in rem* defendant that is not forfeited in the civil forfeiture case.  *See* Exhibit A at § 12 (placing lien on all claims or causes of action) and Exhibit B at § 4 (placing lien on the funds at issue in the Washington proceeding as well as any sums recovered).  Further, the Fee Agreement provides that the Law

Firms' costs would be paid before the Lazarenko family received any funds.  Exhibit A at §§ 4, 6 and 12.  The Fee Agreement is governed by the laws of the District of Columbia.  Exhibit A at § 17.  The Fee Agreement further provides that the Law Firms have a lien on any property claimed by Mr. Lazarenko or his children which is not forfeited in the civil forfeiture lawsuit. *See* Exhibit A at § 12 and Exhibit B at § 4.

Under the Fee Agreement, each month the Law Firms incur a cost or costs, they issue an invoice to Mr. Lazarenko.  Exhibit A at § 7.  Mr. Lazarenko has fifteen (15) days to object to the costs.  If he does not object, the costs are owed under the Fee Agreement. *Id.*  The 2018 agreement also permits Kateryna Lazarenko to object to costs in the same manner.  Exhibit B at § 9.  No Lazarenko family member has objected to a cost incurred by the Law Firms.  Silversmith Decl., ¶ 14; Declaration of William H. Stassen ("Stassen Decl."), ¶ 7.

Around the time that the Law Firms entered their appearance in the Washington proceeding, they offered, on behalf of Mr. Lazarenko, to transfer assets from the civil forfeiture case to satisfy the forfeiture money judgment.  The Government rebuffed those offers.  Silversmith Decl., ¶¶ 15-16 & Exhibit F.  For example, in a brief filed before this Court in 2014, the Government wrote:

> Lazarenko suggests that the United States could – instead of proceeding with the forfeiture action in the District of Columbia – simply give Lazarenko $29,000,000 to pay his personal debts, his criminal fine and his personal money judgment. … Moreover, *Lazarenko fails to recognize the important governmental interests involved in forfeiting funds connected to criminal activities*. The Supreme Court has repeatedly recognized a strong governmental interest in obtaining *full recovery of all forfeitable assets*.

Dkt. 1644 at 3 (internal quotations omitted) (emphasis added).  Another offer, made in November 2015, involved taking money from Guernsey to pay the forfeiture money judgment.  Exhibit F.  This offer was rejected as well.  Silversmith Decl., ¶ 16.  Thus, the Government previously

disclaimed an intent to apply the funds in the BJB and NRKTO accounts to the forfeiture money judgment.  Ancillary Petition at ¶ 7.

Since the Government refused those offers in 2014 and 2015, the Law Firms have conducted a substantial amount of legal work on behalf of Mr. Lazarenko and his family to prevent the forfeiture of the accounts in the Washington proceeding.  After all, since the Government would not dismiss the funds and apply them to the forfeiture money judgment, Mr. Lazarenko could only satisfy the forfeiture money judgment if he prevailed in the civil forfeiture lawsuit.  By way of example, the Law Firms filed two summary judgment motions against the United States pertaining to the BJB account.  Dkt. 1735-2 at 340-47 (copy of one motion which discusses the second motion).  Those motions are pending with the district court.  It was only after these motions for summary judgment were filed that the Government moved to forfeit the accounts in this proceeding, under a substitute asset theory.  Indeed, counsel for the Government in the Washington proceeding is the same counsel appearing before this Court.  As part of the legal work in the Washington proceeding, which involved hiring experts and foreign travel, the Law Firms have incurred over $2 million in costs.  *See generally* Silversmith Decl., ¶¶ 7-14 & Exhibits D & E; Stassen Decl., ¶¶ 2-5 & Exhibits H & I.

The Law Firms provided value to Mr. Lazarenko in the form of legal services and the advancement of costs.  Ancillary Petition at ¶ 7.  To claim these costs under the Fee Agreement, Blank Rome LLP and Fox Rothschild LLP issued numerous invoices.  As of September 2021, Blank Rome LLP had issued approximately 88 invoices, totaling $1,380,225.72; and Fox Rothschild LLP had issued approximately 60 invoices, totaling $756,637.92.  A list of the amount of costs billed is attached hereto.  Exhibits D, E, H & I.  Neither Mr. Lazarenko nor his children has ever objected to a cost. Silversmith Decl., ¶ 14; Stassen Decl., ¶ 7.

On April 9, 2021, the Government filed an application for a preliminary order of forfeiture for the BJB and NRKTO accounts as substitute property.  The Government's application was granted on August 6, 2021, and modified on August 20, 2021.  Dkts. 1728, 1743, 1748. This Court's order is currently on appeal.  Dkts. 1738 & 1744.

The Government has reported that the value of the BJB account is approximately $2,784,502.80, while the NRKTO account holds approximately $10,000.  In filings with this Court, the Government stated that it "will" dismiss these funds from the Washington proceeding, if this Court entered a final judgment of forfeiture.  Dkt. 1728 at 6; Dkt. 1732 at 5 n.1.  This Court's preliminary orders of forfeiture divested Mr. Lazarenko of his interest in the BJB and NRKTO accounts.  Mr. Lazarenko is the only claimant for those two accounts in the Washington proceeding.  Therefore, upon entry of the preliminary order, those accounts are *per se* removed from potential forfeiture in the Washington proceeding.[1]

On October 6, 2021, the Law Firms filed an ancillary petition.  Dkt. 1752.  On December 21, 2021, the Government moved to dismiss the Law Firms' petition.  The Law Firms now respond and cross-move for summary judgment.  They ask that a total of $2,382,226.56 be released under § 853(n)(6)(A).  In the alternative, they seek $2,357,579.40 under § 853(n)(6)(B).

## ARGUMENT

An ancillary petition is conducted under the Federal Rules of Civil Procedure.  Fed. R. Crim. P. 32.2(c).  A petitioner can prevail under either § 853(n)(6)(A) or § 853(n)(6)(B).  *United States v. Lazarenko*, 575 F. Supp. 2d 1139, 1150-51 (N.D. Cal. 2008).

---

[1] The Government served the parties who filed claims in the Washington proceeding.  Dkt. 1751. With the exception of Alexei Ditiatkovsky, no other claimant in the Washington proceeding filed a claim in this proceeding.

As the Government states, a motion to dismiss filed in an ancillary proceeding is treated in a manner similar to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and all material allegations in the Law Firms' Ancillary Claim must be taken as true and construed in the light most favorable to the Law Firms. *See* Dkt. 1760 at 4 (citing *United States v. Preston*, 123 F. Supp. 3d 117, 123 (D.D.C. 2015) and *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996)).

With respect to the cross-motion, a court should grant summary judgment when all of the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989); Fed. R. Civ. P. 56(c). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). "[S]ummary judgment is appropriate [in contract interpretation cases] only if the contract or the contract provision in question is unambiguous." *See Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 920 (9th Cir. 1988). The terms of the Fee Agreement are not ambiguous and not in dispute, and summary judgment is warranted. The three documents that comprise the Fee Agreement and the relevant billing records are attached to the parties' filing, so there is no need for additional discovery.

### A.    The Government's motion must be dismissed and the Law Firms are entitled to summary judgment under § 853(n)(6)(B)

The Law Firms prevail as bona fide purchasers for value, so the Government's motion should be denied. Summary judgment is warranted under this subsection, under which a petitioner must show that: (1) it has a legal interest in the forfeited assets; (2) it was a *bona fide* purchaser for value of the forfeited assets; and (3) it was reasonably without cause to believe that the forfeited

funds were subject to criminal forfeiture until April 9, 2021. *Lazarenko*, 575 F. Supp. 2d at 1146. The Law Firms are bona fide purchasers for value who were without notice to believe that the funds in these two bank accounts would be forfeited in this case, so they prevail under § 853(n)(6)(B).

The Law Firms only received notice of the Government's plan to seek substitute asset forfeiture for the NRKTO and BJB accounts on April 9, 2021. *See* Dkt. 1728. Any cost that they incurred on or before April 9, 2021 is recoverable under their lien. Those amounts are:

| | |
|---|---|
| Blank Rome's costs through March 31, 2021 | $1,374,247.91 |
| Blank Rome's costs from April 1, 2021 to April 9, 2021 | $18.48 |
| Fox Rothschild's costs through March 31, 2021 | $729,985.09 |
| Fox Rothschild's costs from April 1, 2021 to April 9, 2021 | $0 |
| Fox Rothschild's unbilled costs | $103,776.96 |
| **Total Costs** | **$2,208,028.44** |

The Law Firms are also entitled to a contingency fee recovery of $149,550.96, *i.e.*, 25.5% of $2,794,502.80-$2,208,028.44. This yields a claim of $2,357,579.40.

       **1.**       **The Law Firms have a legal interest in the BJR and NRKTO accounts.**

The Fee Agreement gives the Law Firms a lien interest in the property because a charging lien is a legal interest. Petitioners placed a lien on the BJB and NRKTO accounts in 2014, so their vested interest is superior. Exhibit A; Exhibit C.

The identity of the lienor is clear (the Law Firms); the property subject to the lien was established by the Fee Agreement (the funds involved in the civil forfeiture proceeding); and the amount of the lien was established as each cost was incurred. The D.C. Circuit has held that a charging lien under the laws of the District of Columbia arises out of the underlying action and

relates back to the inception of the action.  *Friedman v. Harris*, 158 F.2d 187, 188 (D.C. Cir. 1946)

("the lien * * * relates back and takes effect from the time of the commencement of the suit.")

(internal quotation omitted).  *See also Martens v. Hadley Mem. Hosp.*, 753 F. Supp. 371, 372

(D.D.C. 1990).  A charging lien attaches to the recovery and operates like a mechanic's lien.

*Monarch Life Ins. Co. v. Elam*, 918 F.2d 201, 205 (D.C. Cir. 1990).

   "This right is a contract lien and even if, as has been suggested, the lien is inchoate before

judgment, it relates back and takes effect from the time of the commencement of the suit and is,

therefore, *superior to rights of set off which arise subsequently*."  *District of Columbia

Redevelopment Land Agency v. Dowdey*, 618 A.2d 153, 159 (D.C. App. 1992) (emphasis added)

("*Dowdey*").  The Law Firms have a lien interest dating back to July 2014.  Their interest became

choate whenever they incurred costs.

### 2.  The Law Firms provided value.

   "An attorney who receives fees for services rendered pays value."  *United States v. Rogers*,

602 F. Supp. 1332, 1346 (D. Col. 1985), *aff'd in part, vacated in part*, 960 F.2d 1501 (1992).

Courts recognize that the purpose of the statute was to protect arm's-length transactions.  *United

States v. Harvey*, 814 F.2d 905, 914 (4th Cir. 1987) (citing S. Rep. 98-225, at 200 n.28, 1984

U.S.C.C.A.N. at 3383).  *Accord United States v. Huntington Nat'l Bank*, 682 F.3d 429, 436 (6th

Cir. 2012) ("a party who takes a security interest in property, tangible or intangible, in exchange

for value, can be a BFP"); *United States v. Lavin*, 942 F.2d 177, 178 (3d Cir. 1991) ("petitioner

must acquire its interest in the forfeited assets through an advertent, contractual transaction"); *id.*

at 184 ("we are obliged to construe the term 'bona fide purchaser for value' liberally"); *Rogers*,

602 F. Supp. at 1347 ("The attorney who receives funds for bona fide services rendered engages

in neither a fraud nor a sham.").  *See also United States v. Sodipo*, 2008 WL 5101722, at *2 (D.

Md. Nov. 25, 2008) ("Ms. Obot's property interest was exclusively hers from the moment of its creation, it was separate and distinct from any recovery to the defendants or the Government.").

The Law Firms provided legal services and advanced costs which constituted value to Mr. Lazarenko.  They served as counsel for seven years in the civil forfeiture lawsuit.  They meet the criteria of being bona fide purchasers under the statute.  The Government, in its motion, cites no authority to the contrary.

### 3. The Law Firms were without reason to believe that the BJB and NRKTO accounts were <u>subject to criminal forfeiture</u>.

The Law Firms were without cause to believe that the funds would be forfeited *under 18 U.S.C. § 982*.  In its brief, the Government passes over the requirement that the petitioner be on notice that the property will be forfeited *in a criminal forfeiture proceeding*.  Dkt. 1760 at 11.  However, the statute is clear:  the petitioner must be "without cause to believe that the property was subject to forfeiture *under this section*."  21 U.S.C. § 853(n)(6)(B) (emphasis added).

The Government glibly argues that because the money might be forfeited in the Washington proceeding, the Law Firms had notice.  *Id.* ("nine years had already passed since the Substitute Assets were frozen for potential forfeiture in the Civil Action;" "the Law Firms were [not without notice because they were] retained by Lazarenko specifically to challenge the forfeitability of the Substitute Assets and other property in the Civil Action.").  However, in the civil case, the Government is seeking forfeiture under 18 U.S.C. § 981, which is a different statute involving a different burden of proof, and for which there were competing claimants.

The Government had the option of seeking forfeiture of the BJB and NRKTO accounts between 2006 and 2014, yet it decided against forfeiting these assets under 18 U.S.C. § 982.  In 2014 and 2015, the Government rejected offers to use this money to satisfy the forfeiture money judgment claiming that it was against public policy to forfeit the BJB and NRKTO accounts in this

case.  Dkt. 1644 at 3; Exhibit F and Silversmith Decl., ¶¶ 15-16.  The Law Firms were without notice to believe that these funds were subject to criminal forfeiture until April 9, 2021, when the Government filed its application for a preliminary order.  Before April 9, 2021, the Government argued it could not and would not forfeit this money in a criminal proceeding.

The Government also argues in its brief that the Law Firms knew about Mr. Lazarenko's forfeiture money judgment, which was entered in 2006 and affirmed in 2009.  Dkt. 1760 at 13. This judgment, it argues, should have informed the Law Firms that these two bank accounts might be subject to criminal forfeiture.  *Id.*  However, in 2009, the Government argued that Mr. Lazarenko had other assets with which to pay his fine and forfeiture money judgment.  Dkt. 1535 at 24.[2]  Given the ratio of Mr. Lazarenko's wealth (alleged, restrained or otherwise) to the forfeiture money judgment, the Law Firms were reasonable to assume that the BJB and NRKTO accounts would not be forfeited in the criminal case.  Hence, they were without notice.

The Government further argues that the Law Firms should have known that some funds from Count Seven, the purchase of 100 Obertz Lane, were purportedly dissipated in 2013, so Petitioners should have known the Government would be seeking forfeiture of substitute property.[3]

---

[2] The Government wrote:

> Moreover, the civil forfeiture complaint filed in the District of Columbia alleges that Lazarenko received $326,000,000 in criminal proceeds between 1993-1997 and, according to the Department of Justice attorney pursuing that case, only approximately $255,000,000 of those assets have been located and restrained. That leaves over $70,000,000 unaccounted.

Dkt. 1535 at 24.

[3] The Law Firms incorporate herein Mr. Lazarenko's objections to this forfeiture, including, but not limited to, the application of judicial estoppel and the election of remedies doctrine.  *See* Dkt. 1731 at 21-24.

However, the Fee Agreement with Mr. Lazarenko was entered into in July 2014.  Exhibit A.  The Government filed its notice citing possible dissipation of 100 Obertz Lane on December 24, 2015. *See* Dkt. 1674.

This Court's August 6 and 20, 2021 opinions cited moneys expended by the U.S. Marshals Service as the evidence of dissipation.  Those funds were not itemized until July 2, 2021 – those expenses were not identified in the Return on Forfeiture.  *See* Dkt. 1738-4 (Declaration of Michael Armstrong).  Even if the Law Firms knew that the Government would be claiming possible dissipation of 100 Obertz Lane, they were plainly without reason to believe that the Government would be raising those issues eight years later against the BJB and NRTKO accounts.[4]

Finally, the Government suggests that it should prevail on some equitable basis, writing that "Congress mandated that the criminal forfeiture statute 'be liberally construed to effectuate its remedial purposes.' 21 U.S.C. § 853(o)."  The Supreme Court, however, cautioned that despite this subsection, "the Court cannot construe a statute in a way that negates its plain text."  *Honeycutt v. United States*, 137 S. Ct. 1626,1635 n.2 (2017).  The language of § 853(n)(6)(B) provides that a petitioner must have notice that the property is subject to forfeiture *under this section*.  "[T]he requirement that any assets which the Government wishes to have forfeited must be specified in the indictment."  *Caplin & Drysdale v. United States*, 491 U.S. 617, 632 n.10 (1989).  These two bank accounts were known to the Government at least 18 years ago and never identified in any

---

[4] Given that the Government had one judgment which merged with the counts, it was not reasonable to assume that this Court would go back and relitigate issues from the trial.  Such a result was not consistent with the doctrine of merger of judgments.  *See* Restatement (Second) of Judgments, § 24(1) ("When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.").

pleading in this case until 2021. The Law Firms were without notice and must prevail as a matter of law, regardless of the liberal construction of the criminal forfeiture statute.

**B.      The Government's motion must be dismissed and the Law Firms are entitled to summary judgment under § 853(n)(6)(A) as well**

To prevail on its Motion to Dismiss, the Government must show that the Law Firms have not successfully pled in their ancillary petition that they have an interest in the forfeited property. To prevail on the Law Firms' cross-motion, under § 853(n)(6)(A), the Law Firms must show that their interest in the BJB and NRKTO accounts is superior to the interest of the Government. *United States v. Hooper*, 229 F.3d 818, 821 (9th Cir. 2000). The Law Firms have an interest in the funds that were not forfeited in the civil forfeiture action and that interest vested first.

Under § 853(n)(6)(A), the Law Firms are entitled to the following:

| | |
|---|---|
| Blank Rome's costs through July 31, 2021 | $1,380,225.72 |
| Blank Rome's costs from August 1 through August 20, 2021 | $1,110.36 |
| Fox Rothschild's costs through July 31, 2021 | $755,998.84 |
| Fox Rothschild's costs from August 1 through August 20, 2021 | $0 |
| Fox Rothschild's unbilled costs | $103,776.96 |
| **Total Costs** | **$2,241,111.88** |

The Law Firms also entitled to a contingency fee recovery of $141,114.68, *i.e.*, 25.5% of $2,794,502.80-$2,241,111.88. This yields a claim of $2,382,226.56.

1. **The Law Firms' interest in the BJB and NRKTO accounts vested before the Government's interest accrued.**

The Law Firms' interest in these two accounts vested first.[5]  Indeed, the Law Firms' interest vested as they incurred costs during their engagement.  Because this is a legal issue governed by the Fee Agreement, summary judgment is warranted in favor of the Law Firms.

A state lien is perfected "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established."  *In re Priest*, 712 F.2d 1326, 1328 (9th Cir. 1983) (internal quotation omitted).  A lien is not choate unless "there is nothing more to be done" and "the amount of the lien" is established.  *Id.*

The Ninth Circuit has analogized a forfeiture money judgment to a personal money judgment.  *United States v. Nejad*, 933 F.3d 1162, 1164-65 (9th Cir. 2019); *United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996).  The Government stands in the shoes of an unsecured creditor whose right to the property vests when it obtains its preliminary order of forfeiture.

Petitioners placed a lien on the BJB and NRKTO accounts in 2014, so their vested interest is superior.  Exhibit A.  A charging lien arises out of the underlying action and relates back to the inception of the action.  *Friedman*, 158 F.2d at 188.  As noted, a charging lien is akin to a mechanic's lien.  *Monarch Life Ins. Co.*, 918 F.2d at 205.  This right "relates back and takes effect from the time of the commencement of the suit and is, therefore, superior to rights of set off which arise subsequently."  *Dowdey*, 618 A.2d at 159.  In *Dowdey*, the D.C. Court of Appeals found that

---

[5]  The relation-back doctrine is inapplicable for substitute property.  *See United States v. Lester*, 85 F.3d 1409, 1411 n.3 (9th Cir. 1996) ("substitute property[] by its very nature is not connected to the underlying crime.") (quoting *United States v. Ripinsky*, 20 F.3d 359, 362 (9th Cir. 1994)).  As a factual matter, this money is not tainted.  According to the Government's tracing report, the BJB account is traceable to the funds from a company named Nakosta.  Silversmith Decl., ¶ 17 & Exhibit H.  Mr. Lazarenko was acquitted of all wrongdoing with respect to this company.  Dkt. 774 at 5.  The NRKTO account contains funds which were labeled as "other" meaning not traceable to unlawful activity.  Silversmith Decl., ¶ 17 & Exhibit H; Dkt. 1731-2 at 69 (¶ 14).

13

the attorneys' charging lien related back to the time of the commencement of the action and it attached ahead of the Government's condemnation action. *Id.* at 161-164.  Accordingly, the Law Firms' lien relates back to 2014.  The lien became choate, in part, each month that the Law Firms incurred costs.  The lien attaches ahead of the Government's substitute property claim which vested on August 6, 2021 as to $2,283,602.80 and the remaining funds, $510,900, on August 20, 2021.

The Government argues that the Fee Agreement only applies if the funds are returned to Mr. Lazarenko and deposited into the Law Firms' escrow account.  Dkt. 1760 at 7 n.5. The Government's argument fails because no funds will be "returned" to Mr. Lazarenko in the Washington proceeding.  Title to the funds never changed.  Instead, the Government secured a restraining order to prevent Mr. Lazarenko from transferring his assets while the Washington proceeding was pending.  That restraining order is now superfluous and the Government is free to restrain the money under 21 U.S.C § 853(g) and Fed. R. Crim. P. 32.2(b)(3).

The Government misconstrues the term "recovery" in the Fee Agreement suggesting that title to the funds actually transferred to the Government and that the Law Firms were trying to get the funds back.  However, the Law Firms are successful if any funds are not forfeited in the civil proceeding.  The forfeiture of substitute assets in this criminal proceeding is expressly for the purpose of satisfying Mr. Lazarenko's criminal judgment.  Since the Government would not make those funds available in 2014 or 2015, the Government's application for forfeiture in this Court is a concession and constitutes a recovery for Petitioners' client's benefit.  Finally, the Law Firms successfully prevented the forfeiture of the accounts in the Washington proceeding, which sought forfeiture under the relation-back doctrine.  In essence, the Government threw in the proverbial

towel and moved in this Court to forfeit the accounts as substitute assets because it was certain it would not prevail in the Washington proceeding.

The Government cites *United States v. $70,990,605*, Civ. No. 12-1905 (RDM), 2018 WL 4623568 (D.D.C. Sept. 25, 2018), in which a law firm moved to intervene in a civil forfeiture lawsuit to protect its charging lien. Dkt. 1760 at 10 n.8. In that case, the law firm asserted an interest in untainted property and the district court granted the law firm leave to intervene because its rights in untainted property may have vested. The Government states that the case is distinguishable because Mr. Lazarenko's rights in the substitute property were extinguished by this Court's August 6, 2021 order. *Id.* However, the Government misses a key point – the Government's rights *in substitute property* are not superior to those parties who have a vested interest. *United States v. Erpenbeck*, 682 F.3d 472, 477–478 (6th Cir. 2012); *United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007). *See also Nejad*, 933 F.3d at 164-65; *Lester*, 85 F.3d at 1413. By analogy, the IRS's interest is not superior to an attorney's lien which arose after prevailing in a civil forfeiture lawsuit. *Law Offices of Eric Honig, A.P.L.C. v. United States*, CV 09-7568 ABC (PLAx), 2010 WL 11597287 (C.D. Cal. July 19, 2010) (client prevailed in civil forfeiture action; attorney's charging lien was superior to IRS levy).

> **2.      This Court's Preliminary Order mooted the Washington proceeding with regard to the same assets and a formal dismissal of the civil forfeiture is not required.**

The Government argues that because it has not yet filed a motion to dismiss the forfeited substitute assets from the civil proceeding that the Law Firms have not successfully prevented the forfeiture of the assets in the civil proceeding. The Government has stated that it "will" dismiss the civil forfeiture lawsuit once this Court rules. Dkt. 1728 at 6; Dkt. 1732 at 5 n.1. This Court accepted that representation in rejecting Mr. Lazarenko's arguments. Dkt. 1743 at 10. However, having forfeited the accounts is this criminal proceeding, the Government may not forfeit the same

property in the Washington proceeding. *United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1148 (9th Cir. 2011) (property can only be forfeited once either civilly or criminally). The accounts have been forfeited as to Mr. Lazarenko. In the Washington proceeding, Mr. Lazarenko is the sole claimant and the funds will not be forfeited in that forum. Put another way, the funds are no longer available to be forfeited in the civil proceeding – regardless of the timing of a dismissal.

"There is a maxim of equity that: 'Equity regards as done that which ought to be done; acts directed, agreed, or intended to be done.'" *Ellis v. J-R-M Corp.*, 324 F. Supp. 768, 776 (D. Haw. 1971) (quoting 27 Am. Jur. 2d, Equity, 653-655, Sec. 126). *See also Nunez v. Nunez (In re Nunez)*, 196 B.R. 150, 153 & n.1 (9th Cir. BAP 1996) (holding that where an equitable lien is created either by an express agreement or by the conduct of the parties, equity requires that the lien relate back to when the implied agreement took place) (citing California law). As a matter of equity, the Government is not permitted to delay its actions (filing a formal notice of dismissal in the civil proceeding) simply to ensure that it prevails in the ancillary proceeding. The Law Firms' interest is already vested and its interest is superior to the Government.

The Government purports to continue to restrain this money under § 983(j)(1)(A), which is a statute that allows a district court to enter an *ex parte* restraining order where the Government represents that the property is subject to civil forfeiture. The accounts are no longer subject to civil forfeiture and, therefore, should not be subject to the civil forfeiture restraining order. This Court should not countenance the Government's misuse of an *ex parte* statute, which is now being used solely to ensure forfeitability in this proceeding under a different statute.[6]

---

[6] Under the Washington restraining order, Mr. Lazarenko is prohibited from using the *in rem* assets to pay his forfeiture money judgment. *United States v. All Assets Held at Bank Julius*, 244 F. Supp. 3d 188, 191-93 (D.D.C. 2017).

The Government may restrain these two accounts under 21 U.S.C § 853(g) and Fed. R. Crim. P. 32.2(b)(3), which allow for third parties to assert their rights.  Besides maxims of equity, the Government is not permitted to restrain assets solely to advance an inconsistent legal theory.  Section 983(j)(1)(A) can only be used to restrain tainted funds.  Substitute property cannot be restrained.  *See Luis v. United States*, 578 U.S. 5, 12-13 (2016).  Yet, the Government applies that theory here.

The Government analogizes this case to *United States v. Church & Dwight Co., Inc.*, 510 Fed. App'x. 55, 58 (2d Cir. 2013) ("Because the condition precedent to Church & Dwight receiving the proceeds – the Government signing a written directive—has not been, and never will be, fulfilled, we hold that Church & Dwight has not demonstrated a *prima facie* entitlement to relief").  In that case, the defendant had engaged in trafficking in counterfeit goods.  The Government restrained $300,000.  In a separate civil suit, the defendant agreed to pay these funds to the owner of the trademark, Church & Dwight Co., if the trademark owner could reach a settlement with the Government.  Ultimately, the Second Circuit concluded that since the Government was not required to enter into a settlement agreement with the trademark owner, the trademark owner's interest was too speculative to assert a claim in the forfeiture proceeding.  *Id.* at 57-58.  The Government's actions in this Court rendered the civil forfeiture moot.  Unlike *Church & Dwight Co.*, there is no contingency in which  the Bank Julius Baer and NRKTO accounts will not be dismissed.  The funds have been preliminarily forfeited and there is no other claimant in the Washington proceeding.  There can only be one forfeiture judgment, *Liquidators of Eur. Fed. Credit Bank*, 630 F.3d at 1148, and that judgment will now be entered before this Court.  The law and equity treat the *in rem* defendants as dismissed from the civil proceeding.

### 3.    *McHan* and *Daugerdas* are not controlling.

The Government suggests that its interest vested in 1998 under the relation-back doctrine. The Government refers this Court to a Circuit split, but notably does not comment on the Ninth Circuit's position.  The Sixth and Tenth Circuits have held that substitute property vests when a preliminary order is entered.  *Erpenbeck*, 682 F.3d at 477; *Jarvis*, 499 F.3d at 1204.  This case arises in the Ninth Circuit.  Precedent in this Circuit treats forfeiture judgments as "personal money judgments" and there is no authority to suggest that these types of judgments are broader than ordinary personal money judgments.  *Nejad*, 933 F.3d at 1164-65; *Lester*, 85 F.3d at 1411 n.3.  In fact, the Ninth Circuit's decision in *Nejad* cites favorably to *United States v. Vampire Nation*, 451 F.3d 189, 202 (3d Cir. 2006), which describes forfeiture money judgments as "limited."  "Limited" means less than.  The judgment would not be "limited" if the Government's interest retroactively vested back in time by 23 years.

Application of the relation-back doctrine would yield an absurd result here, as it would suggest that the Government has an inchoate interest in *all* of Mr. Lazarenko's property, which includes the *in rem* defendants whose value vastly exceeds the amount of the forfeiture money judgment.  It cannot be that the Government can tie up untainted money indefinitely and argue that its interest has vested as of the time of conviction.

### a)    *United States v. McHan*, 345 F.3d 262 (4th Cir. 2003)

The Government cites to *United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003), which stands for the proposition that the "forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) relates back to the date of the acts giving rise to the forfeiture under 21 U.S.C. § 853."  However, in 2019, the Fourth Circuit determined that substitute property could not be restrained pretrial because substitute assets "belong to the defendant, pure and simple."  *Chamberlain*, 868 F.3d at 295-296 (quoting *Luis*, 578 U.S. at 12).

*Chamberlain* analyzed 21 U.S.C. § 853(e), the restraining order provision. The Government, of course, would have no need to restrain substitute property before trial because it would only have a pre-trial interest in substitute assets if its interest related back. Thus, it is impossible to reconcile the En Banc decision of *Chamberlain* with *McHan*. The Fourth Circuit itself has suggested that *McHan* may no longer be good law as a result of *Chamberlain*. *United States v. Marshall*, 872 F.3d 213, 220 n.13 (4th Cir. 2017). Even before *Chamberlain*, *McHan* was limited by a prior Fourth Circuit decision which the Government does not cite.[7]

### b) *United States v. Daugerdas,* 892 F.3d 545, 556 (2d Cir. 2018)

The Government also cites to *United States v. Daugerdas*, 892 F.3d 545, 556 (2d Cir. 2018), which like *McHan* held that the relation-back doctrine applied to forfeiture of substitute property. In *Daugerdas*, the Second Circuit reasoned that § 853(n)(6)(A) "does not distinguish between third-party claims against proceeds and such claims against substitute assets." *Id.* Therefore, it reasoned that the Government's interest in substitute property also relates back to the commission of the underlying offense.

*Daugerdas* is an outlier in light of the above-referenced authorities. A leading forfeiture treatise is critical of the Second Circuit's analysis:

> The Second Circuit's analysis is flawed, however, because it did not realize that the substitute asset provision, § 853(p), was not enacted until 1986, two years after the rest of § 853. That is why § 853(n)(6)(A) "does not distinguish between" tainted and untainted property – because untainted, substitute property was not yet subject to forfeiture in 1984 when § 853(n) was enacted. Congress simply failed to amend § 853(n) when it enacted § 853(p).

---

[7] *United States v. Oregon*, 671 F.3d 484, 492 (4th Cir. 2012) (holding that the inquiry whether a third party's interest was superior to that of the defendant involves equitable considerations; the question whether the third party's interest was vested at the time of the illegal acts is merely one factor for the court to consider in balancing the equities). Equity would strongly protect a defendant/claimant's right to counsel in a quasi-criminal proceeding.

David B. Smith, 2 Prosecution and Defense of Forfeiture Cases ¶ 13.02 (2021).

Another problem with applying *Daugerdas* is that the Second Circuit permitted the ancillary petition to re-litigate certain facts from the criminal proceeding. *Id.* at 557. The Second Circuit recognized that applying the relation-back doctrine to third parties raises significant due process issues. *Id.* If the Court is inclined to follow *Daugerdas* (and reject Ninth Circuit precedent), the Law Firms have a right to challenge the underlying conviction and other bases for forfeiture.

WHEREFORE, Petitioners request that this Court deny the Government's motion to dismiss and enter summary judgment in their favor. They request that the Court enter judgment under § 853(n)(6)(A) in the amount of $2,382,226.56, or in the alternative, judgment under § 853(n)(6)(B) in the amount of $2,357,579.40. A proposed final order of forfeiture is attached.

Dated:  January 20, 2022

Respectfully submitted,

/s/ Dan Horowitz
Daniel Horowitz, Esquire
LAW OFFICES OF DANIEL HOROWITZ
horowitz@whitecollar.us
P.O. Box 1547
Lafayette, CA  94549
Telephone:     (925) 283-1863
Facsimile:      (925) 299-6765

**Of Counsel:**

BLANK ROME LLP
Jed M. Silversmith
One Logan Square, 130 North 18th Street
Philadelphia, PA  19103
(215) 569-5500
(215) 569-5555 (fax)
jsilversmith@blankrome.com

FOX ROTHSCHILD LLP
Ian M. Comisky
William H. Stassen
2000 Market Street, 20th Floor
Philadelphia, PA  19103
(215) 299-2000
(215) 299-2150 (fax)
icomisky@foxrothschild.com
wstassen@foxrothschild.com

DAVID B. SMITH, PLLC
David B. Smith (D.C. Bar No. 403068)
Nicholas D. Smith (D.C. Bar No. 1029802)
108 N. Alfred St.
Alexandria, VA 22314
(703) 548-8911
(703) 548-8935 (fax)
dbs@davidbsmithpllc.com
nds@davidbsmithpllc.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the Northern District of California, using the electronic case filing system of the court under seal.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.  I also certify that parties not so noticed have been served in accordance with Fed. R. Civ. P. 5(d).

/s/ Dan Horowitz